# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE HIGHLEVEL, INC.,

*Petitioner*

---

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2025-00234, IPR2025-00235

---

## PETITION FOR A WRIT OF MANDAMUS WITH SUPPORTING APPENDIX

ROBERT F. SHAFFER
JONATHAN D. HACKER
WILLIAM FINK
KHANH LEON
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

*Attorneys for Petitioner HighLevel, Inc.*

August 28, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25- |
| **Short Case Caption** | In re HighLevel, Inc. |
| **Filing Party/Entity** | HighLevel, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/28/2025

Signature: /s/ Robert F. Shaffer

Name: Robert F. Shaffer

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| HighLevel, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| Robert F. Shaffer | Benjamin M. Haber | |
| Jonathan D. Hacker | Khanh Leon | |
| William Fink | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑    Yes (file separate notice; see below)    ☐    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................. I

STATEMENT OF RELATED CASES .................................................. IV

INTRODUCTION ................................................................................... 1

JURISDICTION ...................................................................................... 2

RELIEF SOUGHT .................................................................................. 3

ISSUES PRESENTED ............................................................................ 3

BACKGROUND .................................................................................... 3

WHY WRIT OF MANDAMUS IS NECESSARY .................................. 7

      A.    Mandamus Is the Only Adequate Remedy ................................. 7

      B.    The *Hulu* Rule Exceeds USPTO Authority and
           Contravenes the AIA .................................................................. 8

      C.    USPTO's Retroactive Application of the *Hulu* Rule
           Violated HighLevel's Due Process Rights and the APA ........12

           1.    USPTO's Action Was Arbitrary and Capricious ..........12

           2.    The AIA Is Silent on Retroactive Rulemaking ............13

      D.    The *Hulu* Rule Contravenes AIA's Statutory Framework
           and This Court's Precedent .......................................................18

CONCLUSION .......................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
 573 U.S. 208 (2014)...................................................................3

*Arkema Inc. v. EPA*,
 618 F.3d 1 (D.C. Cir. 2010)....................................................14

*Bowen v. Georgetown Univ. Hosp.*,
 488 U.S. 204 (1988)......................................................... 13, 16

*Cemex Inc. v. Dep't of the Interior*,
 560 F. Supp. 3d 268 (D.D.C. 2021)........................................17

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*,
 464 F.3d 1306 (Fed. Cir. 2006) ..............................................10

*Cuozzo Speed Techs. v. Com. for Intell. Prop.*,
 579 U.S. 261 (2016)...................................................................9

*De Niz Robles v. Lynch*,
 803 F.3d 1165 (10th Cir. 2015) ..............................................13

*Durr v. Nicholson*,
 400 F.3d 1375 (Fed. Cir. 2005) ....................................... 16, 17

*Facebook, Inc. v. Windy City Innovations, LLC*,
 973 F.3d 1321 (Fed. Cir. 2020) ..............................................10

*Gen. Elec. Co. v. EPA*,
 290 F.3d 377 (D.C. Cir. 2002).................................................10

*Hulu, LLC v. Piranha Media Distrib., LLC*,
 IPR2024-01252, Paper 27 (P.T.A.B. Apr. 17, 2025) ............... passim

*In re Palo Alto Networks, Inc.*,
 44 F.4th 1369 (Fed. Cir. 2022) .................................................3

*Ingenico Inc. v. IOENGINE, LLC*,
 136 F.4th 1354 (Fed. Cir. 2025) ....................................... 9, 19

*Landgraf v. USI Film Prods.*,
 511 U.S. 244 (1994)......................................................... 14, 16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
  989 F.3d 1375 (Fed. Cir. 2021) ................................................ 2, 7, 8

*NetworkIP, LLC v. FCC*,
  548 F.3d 116 (D.C. Cir. 2008) ...............................................17

*PHH Corp. v. CFPB*,
  839 F.3d 1 (D.C. Cir. 2016) ...................................................12

*SAS Inst., Inc. v. Iancu*,
  584 U.S. 357 (2018) ...............................................................10

*Stolz v. FCC*,
  882 F.3d 234 (D.C. Cir. 2018) ...............................................17

*Volvo Penta of the Ams., LLC v. Brunswick Corp.*,
  IPR2022-01366 (P.T.A.B. May 2, 2023)................................12

**Statutes**

28 U.S.C. § 1295(a)(4)(A) .........................................................2

28 U.S.C. § 1651 ........................................................................2

28 U.S.C. § 1651(a) ...................................................................2

35 U.S.C. § 102 ..........................................................................6

35 U.S.C. § 103 ..........................................................................6

35 U.S.C. § 141(c) .....................................................................2

35 U.S.C. § 311(c)(1).................................................................18

35 U.S.C. § 316(a) .....................................................................10

35 U.S.C. § 319 ..........................................................................2

35 U.S.C. § 321(c) .....................................................................18

5 U.S.C. § 553 ............................................................................10

5 U.S.C. § 706(2)(D)..................................................................10

**Regulations**

37 C.F.R. § 42.15(a)(1) ..............................................................10

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceedings in the Patent Trial and Appeal Board was previously before this or any other appellate court.

This case is related to *Etison LLC d/b/a ClickFunnels v. HighLevel, Inc.*, 24-cv-00502 (D. Del.), in which ClickFunnels asserts the challenged patents—the '357 and '047 Patents—against HighLevel. An appeal from the district court proceeding is pending before this court: *Etison LLC v. HighLevel, Inc.*, Case No. 25-1711 (Fed. Cir.).

# INTRODUCTION

HighLevel, Inc. respectfully petitions for a writ of mandamus to remedy the USPTO's *ultra vires* and retroactive application of a new policy—announced in the Acting Director's *Hulu* decision and implemented by the Patent Trial and Appeal Board (PTAB)—that categorically denies institution of *inter partes* review (IPR) where a district court, in a pending parallel action, has found patent claims invalid under 35 U.S.C. § 101.

When HighLevel's IPR petitions were filed, binding USPTO guidance promulgated in the form of Director Vidal's June 21, 2022, Memorandum ("Vidal Memo") assured the public that an IPR petition would not be discretionarily denied based on parallel litigation when, *inter alia*, the petition presented compelling evidence of nonpatentability. But since the petitions were filed, the PTAB has reversed course 180 degrees, ruling in *Hulu* that IPR petitions *must* be denied when there is parallel litigation and the district court finds the asserted claims invalid. And the PTAB has not just announced that new rule on a going-forward basis—it has made the rule applicable to already-pending petitions filed with the expectation that a district court ruling would not categorically foreclose IPR review. And in applying that rule here, the USPTO made clear that IPR review would be *permanently* foreclosed, *even if* the district court's invalidity finding were reversed. HighLevel thus will be denied any opportunity to challenge patent validity under the distinct

standards and administrative process Congress enacted in the America Invents Act (AIA).

The retroactive application of the new *Hulu* rule to HighLevel's petitions exceeded the agency's statutory authority, violated due process, and undermined the integrity of the patent system Congress designed. Mandamus is warranted to (1) vacate the PTAB's denial of institution, (2) require the USPTO to apply the rules and guidance in effect at the time HighLevel filed its petition, and (3) prevent further *ultra vires* and retroactive rulemaking that undermines the statutory framework for patent review.

## JURISDICTION

While 35 U.S.C. § 314(d) bars direct appeal of institution denials, the Federal Circuit retains jurisdiction to review petitions for writ of mandamus in extraordinary circumstances, particularly where constitutional claims or *ultra vires* agency action are at issue. *See Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021); 28 U.S.C. § 1651(a). This Court has exclusive jurisdiction over PTAB decisions to the extent they are appealable, and mandamus is available to protect the Court's prospective jurisdiction and to address agency actions that exceed statutory authority or violate constitutional rights. *See* 28 U.S.C. §§ 1295(a)(4)(A), 1651; 35 U.S.C. §§ 141(c), 319; *In re Palo Alto Networks, Inc.*,

44 F.4th 1369, 1374 (Fed. Cir. 2022) (reviewing constitutional claim relating to institution denial upon petition for a writ of mandamus).

## RELIEF SOUGHT

HighLevel respectfully requests that the Court issue a writ of mandamus:

1.      Directing the USPTO and its Acting Director to vacate the denial of institution in IPR Nos. 2025-00234 and 2025-00235;

2.      Ordering the USPTO to apply the rules and "binding agency guidance" in effect at the time of HighLevel's IPR filing, including the Vidal Memo, and not to apply the *Hulu* rule retroactively to HighLevel's IPR petitions;

3.      Alternatively, ordering the USPTO to hold the HighLevel's institution decision in abeyance pending final resolution of the related Federal Circuit appeal on § 101 invalidity, to avoid irreparable prejudice, unnecessary parallel proceedings in the district court, and maintain the integrity of the patent system.

## ISSUES PRESENTED

1.      Whether the USPTO exceeded its authority and contravened the America Invents Act and this Court's precedent with the *Hulu* decision.

2.      Whether the USPTO's retroactive application of the *Hulu* decision violated due process rights and the Administrative Procedure Act.

## BACKGROUND

In April 2024, ClickFunnels sued HighLevel in the U.S. District Court for the District of Delaware, asserting infringement of at least claim 1 of U.S. Patent

Nos. 10,846,357 ("the '357 Patent") and 11,361,047 ("the '047 Patent"). HighLevel moved to dismiss the Complaint based on 35 USC § 101, arguing that the claims-at-issue were patent ineligible under the two-step test articulated by the Supreme Court in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). ClickFunnels responded with an Amended Complaint, and HighLevel filed a renewed motion to dismiss. ClickFunnels opposed.

In December 2024, shortly after HighLevel moved to dismiss the Amended Complaint, it also filed timely IPR petitions challenging all claims of both asserted patents. At the time of filing, the USPTO's binding guidance—the Vidal Memo—assured petitioners that institution would not be discretionarily denied based on parallel district court litigation if compelling evidence of unpatentability was presented. *See* Appx22–30. More specifically, the Vidal Memo provided guidance on when the PTAB could discretionarily deny IPRs under the *Fintiv* framework, especially when there was parallel district court litigation involving the same patent. The Vidal Memo aimed to limit the PTAB's discretionary denials and provide greater certainty to petitioners by identifying specific situations where institution should generally *not* be denied, even in the presence of parallel proceedings. One of those specific situations included compelling evidence of unpatentability like that presented by HighLevel in its petitions. The Vidal Memo significantly impacted the landscape of PTAB discretionary denials, leading to a decline in their number.

HighLevel relied on this binding guidance and the statutory dual-track system established by the AIA, investing significant resources in preparing and filing its meritorious IPR petitions.

Then in late February 2025, while HighLevel's IPR petitions were pending, the USPTO abruptly rescinded the Vidal Memo, thereby removing the bright line rules the Memo provided and expanding the circumstances under which the PTAB would discretionarily deny IPRs in cases with parallel district court litigation. *See* Appx39. The USPTO also announced that the rescission would apply *retroactively* to all pending petitions, where the PTAB had not yet issued an institution decision. Recission of the Vidal Memo thus purported to give PTAB greater discretion in determining whether to deny institution of post-grant proceedings based on parallel litigation. Appx41–42.

But then the *Hulu* decision established a new and different categorical rule: IPR institution *must* be denied whenever a district court has found the challenged claims invalid under § 101, regardless of the status of appeal or the petitioner's reliance on prior Director guidance. *See Hulu, LLC v. Piranha Media Distrib., LLC*, IPR2024-01252, Paper 27 at 2–3 (P.T.A.B. Apr. 17, 2025) (informative). On May 7, 2025, the Acting Director made the *Hulu* decision "informative," which is defined as "not binding authority on the Board," but rather "set[s] forth Board norms that should be followed in most cases." *See* Appx37.

Turning back to the instant proceeding and the parallel district court case, in March 2025, the district court granted HighLevel's Rule 12 motion and dismissed ClickFunnels' Amended Complaint after carefully considering the claim language, the specification, and the relevant authority. *See* Appx111. It concluded that all claims were directed to patent-ineligible subject matter under § 101. That case is now on appeal. *See* Appx126.

Shortly thereafter, in June 2025, the PTAB discretionarily denied institution of HighLevel's IPR petitions based on the new *Hulu* rule, despite the fact that the district court's § 101 decision is not yet final (and nonappealable), despite HighLevel's full compliance with all IPR statutory and regulatory requirements, and despite the limited nature of IPRs under § 311(b) (35 U.S.C. §§ 102, 103). *See* Appx7, Appx15. The PTAB relied squarely on the *Hulu* rule to ignore the meritorious petitions and deny institution, not just now but forever: if "the Federal Circuit reverses the district court's decision," and finds a triable dispute over invalidity, the PTAB ruled, "Petitioner may raise such invalidity arguments in the district court on remand." Appx11–13 (quoting *Hulu* at 2–3); Appx18–20 (same). But the district court will be the *only* option: if this Court reverses the district court's § 101 decision, HighLevel will be statutorily time-barred from filing further IPR petitions on these patents asserted against it. This consequence leaves petitioners like HighLevel with not only a higher burden of proof for invalidity, but also a higher

bill—district court proceedings are much more costly than an IPR. *See* AIPLA, Report of the Economic Survey 62–63 (2023) (Electrical/Computer PGR/IPR costs $350,000 versus $3,875,000 for NPE litigation with more than $25 MM at risk); CRS Report No. R48016 ("[IPRs and PGRs are] more streamlined than civil litigation, with average legal costs typically in the hundreds of thousands of dollars (as opposed to millions).").

HighLevel followed the discretionary denial with a Request for Director Review explaining that the PTAB's discretionary denial prejudices HighLevel based on its retroactive recission of the Vidal Memo and the *ultra vires* application of the *Hulu* rule. HighLevel also reasonably suggested that the Acting Director could hold its Request in abeyance—*i.e.*, do nothing—until this Court decides the pending § 101 appeal, which could render the IPR petitions moot. In a summary Order without opinion, the Acting Director *denied* HighLevel's Director Review Request, and the instant Petition for Writ of Mandamus follows.

## WHY WRIT OF MANDAMUS IS NECESSARY

### A.    Mandamus Is the Only Adequate Remedy

To obtain mandamus, a petitioner must: (1) show a clear and indisputable legal right; (2) show it does not have any other adequate method of obtaining relief; and (3) convince the court that the writ is appropriate under the circumstances. *Mylan*, 989 F.3d at 1382.

While § 314(d) bars direct appeal of institution denials, and the APA limits review to final agency actions, this Court has recognized that mandamus is an appropriate mechanism for review of institution denials in extraordinary circumstances, especially where constitutional or *ultra vires* claims are raised. *See Palo Alto Networks*, 44 F.4th at 1374.

HighLevel's petition fully satisfies the requirements for mandamus. As explained in detail in the next section, the USPTO's retractive application of the new *Hulu* rule will permanently deprive HighLevel of its clear and indisputable right to IPR under the AIA and APA. HighLevel has no alternative means of securing relief, since "there is no avenue for direct appeal of decisions denying institution." *Id*. at 1379. Issuance of the writ is particularly warranted here because parties appearing before the USPTO must be able to rely on the agency's binding guidance without fear of penalty, such as forfeiture of rights. To hold otherwise would undermine the integrity of the administrative process and unfairly disadvantage those who act in good faith reliance on official binding directives.

## B.    The *Hulu* Rule Exceeds USPTO Authority and Contravenes the AIA

The PTAB's application of the *Hulu* rule—which categorically denies institution of IPRs where a district court has found claims invalid under § 101—represents a clear overreach of its authority granted by Congress. The AIA was enacted to provide a streamlined, cost-effective alternative to district court litigation

for challenging the validity of issued patents, but Congress was explicit in limiting the scope of IPRs to challenges based solely on prior art patents and printed publications under 35 U.S.C. §§ 102 and 103.

Section 311(b) of the statute unambiguously states: "A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." Congress deliberately excluded challenges under §§ 101 and 112 from IPRs, reserving those defenses for district courts or post-grant review. Legislative history and Federal Circuit precedent confirm that IPRs were never intended to be a wholesale substitute for all district court defenses, but rather a targeted mechanism to address the most common and objectively verifiable grounds of invalidity—anticipation and obviousness. *See, e.g., Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1365 (Fed. Cir. 2025). Precluding IPR institution based on statutory defenses outside the scope of IPRs (§§ 102, 103) is not contemplated by the IPR statute and therefore outside the USPTO's legal authority.

Despite this clear statutory limitation, the *Hulu* rule effectively forces petitioners, like HighLevel, to forgo early case dispositive defenses, such as patent ineligibility under § 101, if they want to assert viable §§ 102 and 103 challenges in IPR proceedings as Congress intended. This result is unsupported by the AIA,

contrary to congressional intent, and has been criticized by both courts and lawmakers. *See, e.g.*, Oversight of the U.S. Patent and Trademark Office: Hearing before the Subcommittee on Courts, Intellectual Property and the Internet Committee of the Judiciary at 6, 13, 16 (Apr. 27, 2023). The Supreme Court has repeatedly cautioned against agency "shenanigans" that exceed statutory limits, as in *Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 275 (2016) and has held that practices such as partial institution exceed the "statutory limits" set by Congress. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018). This Court has likewise recognized that Congress did not delegate broad substantive rulemaking authority to the Director to interpret statutory provisions through precedential opinions or to engage in rulemaking outside the prescribed regulatory process. *See Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1353 (Fed. Cir. 2020).

The USPTO's rescission of the Vidal Memo was a substantive rule because it "effected a change in existing law or policy or . . . affect[s] individual rights and obligations." *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317 (Fed. Cir. 2006). Thus, the rescission should have been subject to notice-and-comment rulemaking. 35 U.S.C. § 316(a); 5 U.S.C. §§ 553, 706(2)(D); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 385 (D.C. Cir. 2002) (vacating EPA guidance document for failure to follow notice-and-comment procedures). Because the USPTO's rescission of the Vidal Memo was improperly promulgated,

10

institution decisions based on the rescission (and subsequent rules) should be vacated.

The *ultra vires* nature of the *Hulu* rule is further underscored by bipartisan congressional criticism of even more modest regulatory proposals by the USPTO, with lawmakers emphasizing that it is Congress—not the USPTO—that writes the statute and defines the agency's authority. *See, e.g.*, Oversight of the U.S. Patent and Trademark Office: Hearing before the Subcommittee on Courts, Intellectual Property and the Internet Committee of the Judiciary at 6, 13, 16 (Apr. 27, 2023).

Critically, the *Hulu* decision was designated merely as an "informative" decision rather than as "precedential." Under PTAB Standard Operating Procedure 2 (Rev. 11) § II.D, only precedential decisions "constitute binding authority on the Board in subsequent matters involving similar facts or issues." Appx37. Because an informative decision lacks binding force, the Board's retroactive—and markedly punitive—reliance on *Hulu* contravenes the USPTO's own procedural framework.

By imposing a procedural hurdle that frustrates access to IPRs, the *Hulu* rule undermines the AIA's purpose of providing an efficient, focused alternative to litigation for §§ 102 and 103 issues, and threatens to irreparably harm not only individual parties but also the integrity of the patent system as a whole.

### C.    USPTO's Retroactive Application of the *Hulu* Rule Violated HighLevel's Due Process Rights and the APA

#### 1.    USPTO's Action Was Arbitrary and Capricious

The abrupt, retroactive rescission of the Vidal Memo and the imposition of the *Hulu* rule deprived HighLevel—and similarly situated parties—of fair notice and upended settled expectations. This is precisely the type of arbitrary agency action that due process forbids. As the D.C. Circuit has explained, due process requires that parties receive "fair notice of what conduct is prohibited" before being deprived of property or liberty by governmental action. *PHH Corp. v. CFPB*, 839 F.3d 1, 41 (D.C. Cir. 2016), *reinstated in relevant part*, 881 F.3d 75, 83 (D.C. Cir. 2018) (en banc).

Petitioners like HighLevel expended costs and fees incurred in preparing and filing IPR petitions, *see* 37 C.F.R. § 42.15(a)(1), with the aim of effective resolution and reducing litigation costs—only to have the legal landscape upended due to the USPTO's retroactive application of the *Hulu* rule. There was no notice that pursuing early resolution at the district court based on a different statutory ground (§ 101) and obtaining a non-final resolution would impact an institution decision under the Vidal Memo. Conversely, Director Vidal herself said exactly the opposite. *See Volvo Penta of the Ams., LLC v. Brunswick Corp.*, IPR2022-01366, Paper 15 at 6 (P.T.A.B. May 2, 2023) (Director Vidal) (remanding to the Board: "[T]hese claims [held invalid

12

under § 101] are subject to further judicial review and, therefore, are not finally adjudicated").

Here, HighLevel was prejudiced by reasonably relying on the Vidal Memo and strategically filed IPR petitions, with the expectation of (1) quick resolution (2) before technically-trained judges (3) with a particular standard of review and (4) no impact from its § 101 argument in the parallel district court proceeding. The USPTO's proffered alternative in the event of remand, *see* Appx11–13, Appx18–20, is a shallow alternative that results in a more time-consuming, expensive, and disadvantageous proceeding before the district court.

### 2.    The AIA Is Silent on Retroactive Rulemaking

USPTO's retroactive application of the new *Hulu* rule is fundamentally at odds with core principles of due process and administrative law. The Supreme Court has repeatedly emphasized that retroactive rulemaking by agencies is disfavored and, absent clear congressional authorization, is impermissible. In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), the Court held unequivocally: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." The AIA contains no express authorization for retroactive rulemaking by the USPTO.

13

The APA further prohibits agencies from engaging in retroactive rulemaking unless Congress has clearly authorized such action. Courts have consistently held that agency rules and guidance must be applied prospectively unless Congress has spoken with unmistakable clarity. *See Bowen*, 488 U.S. at 208; *De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."). The AIA is silent on retroactive rulemaking,[1] and thus, USPTO's retroactive application of the *Hulu* rule is *ultra vires*.

The controlling standard for retroactivity is "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994). The USPTO's application of the *Hulu* rule to HighLevel's IPR petitions is indisputably retroactive—it attached new, adverse legal consequences to HighLevel's prior conduct—specifically, HighLevel's reliance on the Vidal Memo in its strategic decision regarding the timing of filing its IPR petition in parallel with its Rule 12 motion to dismiss based on § 101 in district court.[2] *See Arkema Inc. v. EPA*, 618

---

[1] The only sections of the Patent Act that mention retroactivity are sections 184 and 375. Thus, Congress knows how to grant retroactive powers to the USPTO.

[2] Had HighLevel been operating under the *Hulu* rule instead of the binding Vidal Guidance, it could have—indeed would have—strategically waited to file its § 101

F.3d 1, 7 (D.C. Cir. 2010) ("If a new rule is 'substantively inconsistent' with a prior agency practice and attaches new legal consequences to events completed before its enactment, it operates retroactively." (citation omitted)).

Permitting the USPTO to retroactively apply the *Hulu* rule of wholesale discretionary denials not only violates the statutory text and legislative intent of the AIA but also undermines the fundamental purpose of the patent system: to incentivize efficiency and economy by providing clear, notice of the USPTO's policies and procedures before the PTAB. Retroactive rulemaking would convert the patent system from a tool for rational planning and counseling clients accused of patent infringement into a minefield, penalizing defendants for failing to anticipate Rules that did not exist at the time they made their decision to file a motion to dismiss and, in parallel, a petition for IPR.

The result here, however—discretionary denial with a half-baked sentiment that "102/103 defenses can be raised later in district court"—is contrary to the statute, fundamentally unfair to defendants, and disruptive to the patent system.

---

motion, instead moving forward expeditiously with IPR petitions and once instituted, filing for a motion to stay the Delaware district court case in its entirety pending the outcome of the IPRs. If for some reason the district court case were to continue (e.g., after an unsuccessful IPR based on the merits), then HighLevel would have filed a § 101 motion under Fed. R. Civ. P. 12(c). At least under that operative scenario, HighLevel would not have suffered the prejudice that it has now by not having its petitions addressed on the merits even when the patents asserted against it are not finally invalid.

Indeed, the AIA was enacted to provide a clear, efficient, and predictable framework for challenging patents in parallel with district courts, thereby promoting efficiencies and reducing unnecessary litigation costs. *See* H. R. Rep. No. 112-98, at 48 (IPRs are a "quick and cost effective alternativ[e] to litigation"); *id.* at 46–47 ("The Act converts inter partes reexamination from an examinational to an adjudicative proceeding"); *see also* S. Rep. No. 110-259 at 20 (2008) (IPRs are "a quick, inexpensive, and reliable alternative to district court litigation"); 157 Cong. Rec. 3429–3430 (2011) (remarks of Sen. Kyl) ("Among the reforms that are expected to expedite these proceedings [is] the shift from an examinational to an adjudicative model"); H.R. Rep. No. 96-1307, 96th Cong., at 2–3 (1980) (stressing the need "to have the validity of patents tested in the Patent office where the most expert opinions exist and at a much reduced cost") (report to accompany H.R. 6933, authorizing reexamination of patents). Retroactive rulemaking injects uncertainty and arbitrariness into the system. As the Supreme Court recognized in *Landgraf*, retroactivity raises special concerns because it "may unsettle expectations and impose burdens on past conduct." 511 U.S. at 269 n.24.

Courts have repeatedly invalidated agency actions that retroactively alter the legal landscape to the detriment of parties who relied on prior guidance. For example, in *Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005), a veteran sought review of the denial of his benefits claim in the Court of Appeals for Veterans Claims

("Veterans Court"). The Veterans Court dismissed his appeal as untimely. *Id.* at 1377. But the Veterans Court had amended its procedural rules after the veteran had filed his notice of appeal and relied on these amendments to foreclose the veteran's appeal. *Id.* at 1378–79. This Court reversed, reiterating the settled principle that an agency may not give retroactive effect to a regulation unless Congress has "expressly" authorized such retroactivity. *Id.* at 1380–82 (quoting *Bowen*, 488 U.S. at 208). Because the Veterans Court's enabling statute contained no grant of retroactive rulemaking authority, this Court concluded that applying the new rule would unlawfully vitiate a notice of appeal that was valid when filed—therefore producing an impermissible retroactive effect. *Id.*

Relatedly, the D.C. Circuit explained in *Stolz v. FCC* that an agency must "put claimants on fair notice" before applying a rule caused the claimant to "procedurally forfeit a claim." 882 F.3d 234, 239 (D.C. Cir. 2018). The court spelled out that "[i]f an agency wants a procedural requirement to have the type of claim-foreclosing consequence the FCC attached here, it needs to be explicit about the rule and upfront about consequences of noncompliance." *Id.* Similarly, in *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 281–82 (D.D.C. 2021), the court explained that due process requires agencies to take into account reliance interests when changing course. *See NetworkIP, LLC v. FCC*, 548 F.3d 116, 122–23 (D.C. Cir. 2008) ("[T]raditional concepts of due process . . . preclude an agency from penalizing a

private party for violating a rule without first providing adequate notice of the substance of the rule." (quotation omitted)).

### D.    The *Hulu* Rule Contravenes AIA's Statutory Framework and This Court's Precedent

When Congress enacted the America Invents Act (AIA) in 2011, it sought to create a streamlined, cost-effective alternative to district court litigation for challenging the validity of issued patents. The legislative record is clear that Congress intended IPRs to be a specialized proceeding focused exclusively on certain grounds of invalidity—specifically, those based on prior art patents and printed publications under 35 U.S.C. §§ 102 and 103. This is reflected in the statutory text of 35 U.S.C. § 311(b), which provides: "A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."

In this same vein, the legislative history demonstrates that Congress deliberately excluded challenges under 35 U.S.C. §§ 101 and 112 from the scope of IPRs. During the debates, lawmakers emphasized that IPRs were not intended to be a wholesale substitute for *all* district court defenses, but rather a targeted mechanism to address the most common and objectively verifiable grounds of invalidity—

anticipation and obviousness based on prior art.[3] For example, the House Judiciary Committee Report on the AIA (H.R. Rep. No. 112-98, pt. 1, at 145–146 (2011)) explicitly states that "the grounds for inter partes review are limited to section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." This limitation was designed to ensure that IPRs would be efficient, focused, and not duplicative of the broader inquiries reserved for Article III courts.

By restricting IPRs to §§ 102 and 103, Congress intended to create a clear division of labor between the PTAB and the district courts. The Federal Circuit has recognized this statutory design, noting that "Congress made a deliberate choice to limit the grounds available in IPR proceedings, reserving other defenses, such as those under § 101, for district court litigation." *See, e.g., Ingenico*, 136 F.4th at 1365.

The *Hulu* rule, however, contravenes that design by effectively requiring petitioners to forgo viable § 101 defenses early in the case when also pursuing meritorious § 102/103 defenses in parallel IPR proceedings. The rule thus undermines the carefully crafted balance between the USPTO and Article III courts and imposes unnecessary costs and burdens on petitioners—contrary to the AIA's purpose of providing an efficient alternative to litigation.

---

[3] Indeed, Congress enacted the post grant review (PGR) statute, which unlike IPR, provides for all statutory defenses, 35 U.S.C. § 321(b), but has a smaller window of availability. *Compare* 35 U.S.C. § 311(c)(1) *with* § 321(c).

Allowing the USPTO to impose procedural hurdles that frustrate access to IPRs, threatens to irreparably harm not only individual parties like HighLevel but also the integrity of the patent system as a whole. It erodes public confidence in the fairness and predictability of patent adjudication, as parties can no longer rely on the clear statutory framework established by Congress. The writ is necessary to restore the notice, transparency, and deliberation that Congress built into both the APA and the AIA, ensuring that the PTAB remains faithful to its limited, congressionally mandated role.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court issue a writ of mandamus directing the USPTO and its Acting Director to vacate the denials of institution in IPR2025-00234 and IPR2025-00235, to apply the rules and guidance in effect at the time of Petitioner's filing, and to refrain from retroactively applying the *Hulu* rule to Petitioner's pending IPR. Alternatively, the Court should order the USPTO to hold the institution decisions in abeyance pending final resolution of the related Federal Circuit appeal on § 101 invalidity.

Respectfully submitted,

*/s/ Robert F. Shaffer*

ROBERT F. SHAFFER
JONATHAN D. HACKER
WILLIAM FINK
KHANH LEON
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

*Attorneys for Petitioner HighLevel, Inc.*

August 28, 2025

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). This brief contains 4,606 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

*/s/ Robert F. Shaffer*

*Attorneys for Petitioner HighLevel, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE HIGHLEVEL, INC.,

*Petitioner*

_____

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2025-00234, IPR2025-00235

_____

## APPENDIX TO HIGHLEVEL, INC.'S PETITION FOR WRIT OF MANDAMUS

ROBERT F. SHAFFER
JONATHAN D. HACKER
WILLIAM FINK
KHANH LEON
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

*Attorneys for Petitioner HighLevel, Inc.*

August 28, 2025

**<u>TABLE OF CONTENTS</u>**

<u>IPR ORDERS</u>

| IPR No. | Date | Paper No. | Title | First Appx Page |
|---|---|---|---|---|
| IPR2025-00234 | 08/13/2025 | 15 | Order [Denying Request for Director Review] | Appx001 |
| IPR2025-00235 | 08/13/2025 | 14 | Order [Denying Request for Director Review] | Appx004 |
| IPR2025-00234 | 06/02/2025 | 12 | Decision Denying Institution of *Inter Partes* Review | Appx007 |
| IPR2025-00235 | 06/02/2025 | 11 | Decision Denying Institution of *Inter Partes* Review | Appx015 |

<u>USPTO ADMINISTRATIVE MATERIALS</u>

| Date | Title | First Appx Page |
|---|---|---|
| 06/21/2022 | Memorandum, Katherine K. Vidal, Director of the USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation, available at https://web.archive.org/web/20250203023353/https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf | Appx022 |
| 07/24/2023 | Standard Operating Procedure 2 (Revision 11), Patent Trial and Appeal Board, available at https://www.uspto.gov/sites/default/files/documents/20230724_ptab_sop2_rev11_.pdf | Appx031 |

| Date | Title | First Appx Page |
|------|-------|-----------------|
| 02/28/2025 | USPTO, USPTO Rescinds Memorandum Addressing Discretionary Denial Procedures, available at https://www.uspto.gov/about-us/news-updates/uspto-rescinds-memorandum-addressing-discretionary-denial-procedures | Appx039 |
| 03/24/2025 | Memorandum, Scott R. Boalick, Chief Administrative Patent Judge, Guidance on USPTO's Recission of "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation," available at https://www.uspto.gov/sites/default/files/documents/guidance_memo_on_interim_procedure_recission_20250324.pdf | Appx041 |
| 03/26/2025 | Memorandum, Coke Morgan Stewart, Acting Director of the USPTO, Interim Processes for PTAB Workload Management, available at https://www.uspto.gov/sites/default/files/documents/InterimProcesses-PTABWorkloadMgmt-20250326.pdf | Appx044 |

OTHER IPR MATERIALS

| IPR No. | Date | Paper/Exhibit No. | Title | First Appx Page |
|---------|------|-------------------|-------|-----------------|
| IPR2025-00234 | 07/02/2025 | 13 | Petitioner's Director Review Request | Appx047 |
| IPR2025-00235 | 07/02/2025 | 12 | Petitioner's Director Review Request | Appx064 |

| IPR No. | Date | Paper/Exhibit No. | Title | First Appx Page |
|---|---|---|---|---|
| IPR2025-00234 | 07/15/2025 | 14 | Patent Owner's Authorized Response to Petitioner's Review Request | Appx081 |
| IPR2025-00235 | 07/15/2025 | 13 | Patent Owner's Authorized Response to Petitioner's Review Request | Appx093 |
| IPR2025-00234 | N/A | N/A | IPR Docket | Appx105 |
| IPR2025-00235 | N/A | N/A | IPR Docket | Appx108 |

DISTRICT COURT MATERIALS

| Docket | Date | Dkt. No. | Title | First Appx Page |
|---|---|---|---|---|
| 24-cv-00502 (D. Del.) | 03/31/2025 | ECF 37 | Opinion and Order | Appx111 |

| Docket | Date | Dkt. No. | Title | First Appx Page |
|---|---|---|---|---|
| 24-cv-00502 (D. Del.) | N/A | N/A | District Court Docket | Appx126 |

Director_PTABDecision_Review@uspto.gov                    Paper 15
571.272.7822                                    Date:  August 13, 2025

## UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE OFFICE OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

HIGHLEVEL, INC.,
Petitioner,

v.

ETISON LLC d/b/a CLICKFUNNELS,
Patent Owner.

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)[1]

Before MICHELLE N. ANKENBRAND,[2] *Senior Lead Administrative Patent Judge*, *performing the duties of Director Review Executive.*

ORDER

---

[1] This order applies to each of the above-listed proceedings.

[2] Coke Morgan Stewart, Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, is recused and took no part in this decision.  The Acting Director delegated her authority in a Notice of Delegation.  *See* https://www.uspto.gov/sites/default/files/documents/delegation-of-authority-ptab.pdf.

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)

The Office received a request for Director Review of the Decision denying institution in each of the above-captioned cases and an authorized response to each request. *See* Papers 13, 14.[3]

Having considered the requests and responses, it is:

ORDERED that the requests for Director Review are denied.

---

[3] Citations are to the record in IPR2025-00234.  The parties filed similar papers in IPR2025-00235.

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)

FOR PETITIONER:

William Fink
Ben Haber
O'MELVENY & MYERS LLP
tfink@omm.com
bhaber@omm.com

FOR PATENT OWNER:

Jeffri Kaminski
Justin Oliver
VENABLE LLP
jakaminski@venable.com
joliver@venable.com

Director_PTABDecision_Review@uspto.gov                    Paper 14
571.272.7822                                    Date:  August 13, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE OFFICE OF THE UNDER SECRETARY OF COMMERCE
FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

HIGHLEVEL, INC.,
Petitioner,

v.

ETISON LLC d/b/a CLICKFUNNELS,
Patent Owner.

———————————

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)[1]

———————————

Before MICHELLE N. ANKENBRAND,[2] *Senior Lead Administrative
Patent Judge*, *performing the duties of Director Review Executive.*

ORDER

———————————

[1] This order applies to each of the above-listed proceedings.
[2] Coke Morgan Stewart, Acting Under Secretary of Commerce for
Intellectual Property and Acting Director of the United States Patent and
Trademark Office, is recused and took no part in this decision.  The Acting
Director delegated her authority in a Notice of Delegation.  *See*
https://www.uspto.gov/sites/default/files/documents/delegation-of-authority-
ptab.pdf.

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)

The Office received a request for Director Review of the Decision denying institution in each of the above-captioned cases and an authorized response to each request. *See* Papers 13, 14.[3]

Having considered the requests and responses, it is:

ORDERED that the requests for Director Review are denied.

---

[3] Citations are to the record in IPR2025-00234. The parties filed similar papers in IPR2025-00235.

IPR2025-00234 (Patent 10,846,357 B2)
IPR2025-00235 (Patent 11,361,047 B2)

FOR PETITIONER:

William Fink
Ben Haber
O'MELVENY & MYERS LLP
tfink@omm.com
bhaber@omm.com

FOR PATENT OWNER:

Jeffri Kaminski
Justin Oliver
VENABLE LLP
jakaminski@venable.com
joliver@venable.com

Trials@uspto.gov
571-272-7822

Paper: 12
Dated: June 2, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

HIGHLEVEL, INC,
Petitioner,

v.

ETISON LLC d/b/a CLICKFUNNELS,
Patent Owner.

---

IPR2025-00234
Patent 10,846,357 B2

---

Before GEORGIANNA W. BRADEN, MATTHEW J. McNEILL, and
JASON M. REPKO, *Administrative Patent Judges.*

REPKO, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2025-00234
Patent 10,846,357 B2

## I.    INTRODUCTION

HighLevel, Inc. ("Petitioner") filed a petition requesting *inter partes* review of claims 1–20 of U.S. Patent No. 10,846,357 B2 (Ex. 1001, "the '357 patent"). Paper 2 ("Pet."). Etison LLC d/b/a ClickFunnels ("Patent Owner") filed a Preliminary Response. Paper 6 ("Prelim. Resp.").

The Board granted Petitioner's unopposed request to file a five-page preliminary reply to Patent Owner's preliminary response. Ex. 1033; Paper 7. Petitioner's reply was limited to responding to the § 325(d) arguments raised in Patent Owner's preliminary response. Ex. 1033. The Board authorized Patent Owner to file a five-page preliminary sur-reply. Paper 8.

The Board granted additional briefing to address the District Court's opinion and order in the parallel litigation. *See* Paper 9 ("PO Brief"); Paper 10 ("Pet. Brief").

Institution of *inter partes* review is discretionary. *See Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding."). Because the District Court already found the claims invalid under 35 U.S.C. § 101 in the parallel litigation, we deny institution of *inter partes* review.

### A.    Related Matters

The parties have identified *Etison LLC d/b/a ClickFunnels v. HighLevel, Inc.*, 1:24-cv-00502 (D. Del., Apr. 22, 2024) as a related case. Pet. 2; Paper 5, 2 (Mandatory Notices).

### B.    The '357 Patent

The '357 patent generally relates to a website-creation system. Ex. 1001, 4:25–28. With the system, the user can automatically generate a generic website by selecting a website type from a series of webpages. *Id.*

at 16:48–54. The user can then edit the generic website to customize it. *Id.* at 17:1–25.

In one embodiment, the website-creation system allows the user to create a series of "directional web-pages." *Id.* at 4:38–48. According to the '357 patent, directional web-pages are designed to elicit a particular user interaction with the website. *Id.* For example, directional web-pages may entice the user to provide their contact information, opt in to receive website communications, complete a purchase, add something to their cart, interact with a selectable element, or share the website. *Id.*

*C.    Claims*

Of those challenged, claims 1, 12, and 16 are independent. Claim 1 is reproduced below:

> A method, comprising:
>
> providing, to a user for display on a client device, via a website creation system, a user dashboard comprising a selectable option to create a website;
>
> receiving a selection of the selectable option to create a website;
>
> in response to receiving the selection of the selectable option to create a website, providing, to the user for display on the client device, a plurality of website types for selection;
>
> receiving a selection of a website type of the plurality of website types,
>
> wherein each website type of the plurality of website types comprises a series of directional webpages configured to cause an end user interaction with a website,
>
> wherein the series of directional webpages of each website type of the plurality of websites types comprises a unique plurality of sequential webpages configured to be provided sequentially one after another;

3

IPR2025-00234
Patent 10,846,357 B2

in response to receiving the selection of a website type of the plurality of website types, providing, to the user for display on the client device, a plurality of website templates for selection, the plurality of website templates being particular to the selected website type;

receiving a selection of a website template of the plurality of website templates and the series of directional webpages of the selected website type;

in response to receiving the selection of a website template, generating and launching a generic website based on the selected website type and selected website template and providing, to the user for display on the client device, a website editor graphical user interface, the website editor graphical user interface comprising a plurality of webpage tabs, each webpage tab of the plurality of webpage tabs representing a webpage of the series of directional webpages;

receiving at least one indication of a user interaction editing at least one webpage of the series of directional webpages; and

in response to receiving the at least one indication of a user interaction editing at least one webpage of the series of directional webpages, editing the launched generic website to create a customized website.

Ex. 1001, 35:51–36:27.

*D.    Evidence*

| Name | Reference | Exhibit No. |
|------|-----------|-------------|
| Coursol | US Patent No. 9,147,004 B2, issued Sept. 29, 2015 | 1005 |
| Karidi | US Patent Application Publication US 2007/0061412 A1, published Mar. 15, 2007 | 1006 |
| Lyon | US Patent Application Publication US 2014/0282049 A1, published Sept. 18, 2014 | 1007 |
| Thomas | US Patent Application Publication US 2011/0288924 A1, published Nov. 24, 2011 | 1008 |
| Sayed | US Patent No. 7,610,219 B2, issued Oct. 27, 2009 | 1009 |

4

IPR2025-00234
Patent 10,846,357 B2

### E.    Asserted Grounds

Petitioner asserts that claims 1–20 are unpatentable on the following grounds. Pet. 4.

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 2, 6, 7, 11–17, 19, 20 | 103 | Coursol, Karidi |
| 1, 2, 6, 7, 9–17, 19, 20 | 103 | Coursol, Karidi, Sayed |
| 3–5, 18 | 103 | Coursol, Karidi, Sayed, Lyon |
| 7, 8, 20 | 103 | Coursol, Karidi, Sayed, Thomas |

## II.    ANALYSIS

The District Court in the parallel litigation found the claims of the '357 patent invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. Ex. 2007.

Patent Owner argues that the Board should exercise its discretion to deny the Petition because the district court has already found the claims invalid and the "efficiency and integrity of the patent system is best served by denying institution" in such cases. PO Brief. 1 (quoting *Hulu, LLC v. Piranha Media Distrib., LLC*, IPR2024-01252, Paper 27 at 3 (Stewart Apr. 17, 2025) (informative)).

Petitioner argues that, under Federal Circuit precedent, the Board can perform its review even though the challenged patent has been held invalid. Pet. Brief 2–5 (citing *Cochlear Bone Anchored Solutions AB v. Oticon Med. AB*, 958 F.3d 1348, 1359–60 (Fed. Cir. 2020); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813–14 (Fed. Cir. 2021)). In Petitioner's view, the fact that *Hulu* has been designated informative has left the Board discretion to decline to apply it here. *Id.* at 5. According to Petitioner,

IPR2025-00234
Patent 10,846,357 B2

discretionary denial would be severely prejudicial because it would prevent Petitioner from being able to pursue another IPR challenge. *Id.* at 1–5.

"An informative decision provides Board norms on recurring issues, guidance on issues of first impression to the Board, guidance on Board rules and practices, and guidance on issues that may develop through analysis of recurring issues in many cases." Patent Trial and Appeal Board, Standard Operating Procedure 2 (Revision 11).[1] We see no reason to deviate from the informative decision here. The relevant facts in this case are indistinguishable from those at issue in *Hulu.* In that case, "Petitioner filed a motion to dismiss under Rule 12(b)(6), asserting that the claims challenged in [that] proceeding are invalid as reciting ineligible subject matter under § 101," and "[t]he district court agreed with Petitioner and issued a decision granting Petitioner's motion to dismiss and dismissing with prejudice Patent Owner's infringement claim." *Hulu*, IPR2024-01252, Paper 27 at 2. According to *Hulu*, "Because the patent claims already stand invalid, it is unnecessary to institute another proceeding to review them for patentability under other grounds." *Id.* That is the case before us (Ex. 2007), and we reach the same conclusion: "the efficiency and integrity of the patent system is best served by denying institution." *Hulu*, IPR2024-01252, Paper 27 at 3.

Petitioner argues that the Board would resolve this IPR, if instituted, before any remand of the District Court's decision. Pet. Brief. 1. According to Petitioner, this "will further the AIA's goal of providing a 'just, speedy, and inexpensive resolution' of the parties' disputes." *Id.* at 2 (citing

---

[1] Available at https://www.uspto.gov/sites/default/files/ documents/20230724_ptab_sop2_rev11_.pdf.

IPR2025-00234
Patent 10,846,357 B2

37 C.F.R. § 42.1(b)). But the reasoning set forth in *Hulu* is clear on this point:

> In the event the Federal Circuit reverses the district court's decision, Petitioner may raise such invalidity arguments in the district court on remand. Under these circumstances, that is the better and more efficient approach.

*Hulu*, IPR2024-01252, Paper 27 at 2–3.

Because the District Court already found the claims invalid under 35 U.S.C. § 101 in the parallel litigation, we deny institution of *inter partes* review. *See id.*

## III.    ORDER

It is

ORDERED that the Petition is denied, and no trial is instituted.

IPR2025-00234
Patent 10,846,357 B2

FOR PETITIONER:

William Fink
Ben Haber
O'MELVENY & MYERS LLP
tfink@omm.com
bhaber@omm.com

FOR PATENT OWNER:

Jeffri kaminski
Justin Oliver
VENABLE LLP
jakaminski@venable.com
joliver@venable.com

Trials@uspto.gov                                    Paper: 11
571-272-7822                                  Dated: June 2, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

HIGHLEVEL, INC,
Petitioner,

v.

ETISON LLC d/b/a CLICKFUNNELS,
Patent Owner.

_____

IPR2025-00235
Patent 11,361,047 B2

_____

Before GEORGIANNA W. BRADEN, MATTHEW J. McNEILL, and
JASON M. REPKO, *Administrative Patent Judges.*

REPKO, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

## I.    INTRODUCTION

HighLevel, Inc. ("Petitioner") filed a petition requesting *inter partes* review of claims 1–20 of U.S. Patent No. 11,361,047 B2 (Ex. 1001, "the '047 patent"). Paper 2 ("Pet."). Etison LLC d/b/a ClickFunnels ("Patent Owner") filed a Preliminary Response. Paper 6 ("Prelim. Resp.").

The Board granted Petitioner's unopposed request to file a five-page preliminary reply to Patent Owner's preliminary response. Ex. 1033; Paper 7. Petitioner's reply was limited to responding to the § 325(d) arguments raised in Patent Owner's preliminary response. Ex. 1033. The Board authorized Patent Owner to file a five-page preliminary sur-reply. Paper 8.

The Board granted additional briefing to address the District Court's opinion and order in the parallel litigation. *See* Paper 9 ("PO Brief"); Paper 10 ("Pet. Brief").

Institution of *inter partes* review is discretionary. *See Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding."). Because the District Court already found the claims invalid under 35 U.S.C. § 101 in the parallel litigation, we deny institution of *inter partes* review.

### A.    Related Matters

The parties have identified *Etison LLC d/b/a ClickFunnels v. HighLevel, Inc.*, 1:24-cv-00502 (D. Del., Apr. 22, 2024) as a related case. Pet. 2; Paper 5, 2 (Mandatory Notices).

### B.    The '047 Patent

The '047 patent generally relates to a website-creation system. Ex. 1001, 4:15–28. With the system, the user can automatically generate a generic website by selecting a website type from a series of webpages.

*Id.* at 16:44–51. The user can then edit the generic website to customize it. *Id.* at 17:11–26.

In one embodiment, the website-creation system allows the user to create a series of "directional web-pages." *Id.* at 4:46–56. According to the '047 patent, directional web-pages are designed to elicit a particular user interaction with the website. *Id.* For example, directional web-pages may entice the user to provide their contact information, opt in to receive website communications, complete a purchase, add something to their cart, interact with a selectable element, or share the website. *Id.*

*C.    Claims*

Of those challenged, claims 1, 14, and 18 are independent. Claim 1 is reproduced below:

A method, comprising:

receiving a selection to create a website;

responsive to receiving the selection to create a website, providing a plurality of website types for selection,

wherein each website type of the plurality of website types comprises a series of directional webpages configured to cause an end user interaction with a website, and

wherein the series of directional webpages of each website type of the plurality of website types comprises a unique plurality of sequential webpages configured to be provided sequentially one after another;

receiving a selection of a website type of the plurality of website types;

responsive to receiving the selection of a website type of the plurality of website types, providing a plurality of website templates for selection, the plurality of website templates being particular to the selected website type;

3

IPR2025-00235
Patent 11,361,047 B2

> receiving a selection of a website template of the plurality of
> website templates; and
>
> in response to receiving the selection of a website template,
> generating and launching a website based on the selected
> website type and selected website template.

Ex. 1001, 36:18–40.

### D.    Evidence

| Name | Reference | Exhibit No. |
|------|-----------|-------------|
| Coursol | US Patent No. 9,147,004 B2, issued Sept. 29, 2015 | 1005 |
| Karidi | US Patent Application Publication US 2007/0061412 A1, published Mar. 15, 2007 | 1006 |
| Lyon | US Patent Application Publication US 2014/0282049 A1, published Sept. 18, 2014 | 1007 |
| Thomas | US Patent Application Publication US 2011/0288924 A1, published Nov. 24, 2011 | 1008 |
| Sayed | US Patent No. 7,610,219 B2, issued Oct. 27, 2009 | 1009 |

### E.    Asserted Grounds

Petitioner asserts that claims 1–20 are unpatentable on the following grounds. Pet. 4.

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|-------------------|-------------|--------------------|
| 1–4, 9, 10, 14–20 | 103 | Coursol, Karidi |
| 1–4, 9, 10, 12–20 | 103 | Coursol, Karidi, Sayed |
| 5–8 | 103 | Coursol, Karidi, Sayed, Lyon |
| 10, 11 | 103 | Coursol, Karidi, Sayed, Thomas |

## II.    ANALYSIS

The District Court in the parallel litigation found the claims of the '047 patent invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. Ex. 2007.

Patent Owner argues that the Board should exercise its discretion to deny the Petition because the district court has already found the claims

4

IPR2025-00235
Patent 11,361,047 B2

invalid and the "efficiency and integrity of the patent system is best served by denying institution" in such cases. PO Brief. 1 (quoting *Hulu, LLC v. Piranha Media Distrib., LLC*, IPR2024-01252, Paper 27 at 3 (Stewart Apr. 17, 2025) (informative)).

Petitioner argues that, under Federal Circuit precedent, the Board can perform its review even though the challenged patent has been held invalid. Pet. Brief 2–5 (citing *Cochlear Bone Anchored Solutions AB v. Oticon Med. AB*, 958 F.3d 1348, 1359–60 (Fed. Cir. 2020); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813–14 (Fed. Cir. 2021)). In Petitioner's view, the fact that *Hulu* has been designated informative has left the Board discretion to decline to apply it here. *Id.* at 5. According to Petitioner, discretionary denial would be severely prejudicial because it would prevent Petitioner from being able to pursue another IPR challenge. *Id.* at 1–5.

"An informative decision provides Board norms on recurring issues, guidance on issues of first impression to the Board, guidance on Board rules and practices, and guidance on issues that may develop through analysis of recurring issues in many cases." Patent Trial and Appeal Board, Standard Operating Procedure 2 (Revision 11).[1] We see no reason to deviate from the informative decision here. The relevant facts in this case are indistinguishable from those at issue in *Hulu.* In that case, "Petitioner filed a motion to dismiss under Rule 12(b)(6), asserting that the claims challenged in [that] proceeding are invalid as reciting ineligible subject matter under § 101," and "[t]he district court agreed with Petitioner and issued a decision

---

[1] Available at https://www.uspto.gov/sites/default/files/ documents/20230724_ptab_sop2_rev11_.pdf.

IPR2025-00235
Patent 11,361,047 B2

granting Petitioner's motion to dismiss and dismissing with prejudice Patent
Owner's infringement claim." *Hulu*, IPR2024-01252, Paper 27 at 2.
According to *Hulu*, "Because the patent claims already stand invalid, it is
unnecessary to institute another proceeding to review them for patentability
under other grounds." *Id.* That is the case before us (Ex. 2007), and we reach
the same conclusion: "the efficiency and integrity of the patent system is
best served by denying institution." *Hulu*, IPR2024-01252, Paper 27 at 3.

Petitioner argues that the Board would resolve this IPR, if instituted,
before any remand of the District Court's decision. Pet. Brief. 1. According
to Petitioner, this "will further the AIA's goal of providing a 'just, speedy,
and inexpensive resolution' of the parties' disputes." *Id.* at 2 (citing
37 C.F.R. § 42.1(b)). But the reasoning set forth in *Hulu* is clear on this
point:

> In the event the Federal Circuit reverses the district court's
> decision, Petitioner may raise such invalidity arguments in the
> district court on remand. Under these circumstances, that is the
> better and more efficient approach.

*Hulu*, IPR2024-01252, Paper 27 at 2–3.

Because the District Court already found the claims invalid under 35
U.S.C. § 101 in the parallel litigation, we deny institution of *inter partes*
review. *See id.*

## III. ORDER

It is

ORDERED that the Petition is denied, and no trial is instituted.

IPR2025-00235
Patent 11,361,047 B2

FOR PETITIONER:

William Fink
Ben Haber
O'MELVENY & MYERS LLP
tfink@omm.com
bhaber@omm.com

FOR PATENT OWNER:

Jeffri Kaminski
Justin Oliver
VENABLE LLP
jakaminski@venable.com
joliver@venable.com



**Patent Trial and Appeal Board**
**Rescinded:** February 28, 2025

## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

### MEMORANDUM

DATE:       June 21, 2022

TO:          Members of the Patent Trial and Appeal Board

FROM:      Katherine K. Vidal   *Katherine Kelly Vidal*
             Under Secretary of Commerce for Intellectual Property and
             Director of the United States Patent and Trademark Office (USPTO or the Office)

SUBJECT:  INTERIM PROCEDURE FOR DISCRETIONARY DENIALS IN AIA POST-
             GRANT PROCEEDINGS WITH PARALLEL DISTRICT COURT
             LITIGATION

#### Introduction

    Congress designed the America Invents Act (AIA) post-grant proceedings "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112–98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69; *see* S. Rep. No. 110–259, at 20 (2008). Parallel district court and AIA proceedings involving the same parties and invalidity challenges can increase, rather than limit, litigation costs. Based on the USPTO's experience with administering the AIA, the agency has recognized the potential for inefficiency and gamesmanship in AIA proceedings, given the existence of parallel proceedings between the Office and district courts. To minimize potential conflict between the Patent Trial and Appeal Board (PTAB) and district court proceedings, the Office designated as precedential *Apple Inc. v. Fintiv, Inc.*[1] This precedential decision articulates

---

[1] *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated precedential May 5, 2020).

the following set of nonexclusive factors (the *Fintiv* factors) that the PTAB considers on a case-specific basis in determining whether to institute an AIA post-grant proceeding where there is parallel district court litigation:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

3. investment in the parallel proceeding by the court and the parties;

4. overlap between issues raised in the petition and in the parallel proceeding;

5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

6. other circumstances that impact the Board's exercise of discretion, including the merits.

The Office issued a Request for Comments (RFC)[2] on the PTAB's current approaches to exercising discretion on whether to institute an AIA proceeding, including situations involving parallel district court litigation. The Office received 822 comments from a wide range of stakeholders. In light of the feedback received, the Office is planning to soon explore potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking. In the meantime, I have determined that several clarifications need to be made to the PTAB's current application of *Fintiv* to discretionary institution where there is parallel litigation.

As explained below, to benefit the patent system and the public good, the PTAB will not rely on the *Fintiv* factors to discretionarily deny institution in view of parallel district court litigation where a petition presents compelling evidence of unpatentability. This memorandum also confirms that the precedential import of *Fintiv* is limited to facts of that case. Namely, *Fintiv* involved institution of an AIA proceeding with a parallel district court litigation. The

---

[2] Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 FR 66502 (Oct. 20, 2020); Discretion to Institute Trials Before the Patent Trial and Appeal Board; Extension of Comment Period, 85 FR 73437 (Nov. 18, 2020).

plain language of the *Fintiv* factors is directed to district court litigation and does not apply to parallel U.S. International Trade Commission (ITC) proceedings, as the ITC lacks authority to invalidate a patent and the ITC's invalidity rulings are not binding on the Office or on district courts.

Consistent with *Sotera Wireless, Inc.*,[3] the PTAB will not discretionarily deny institution in view of parallel district court litigation where a petitioner presents a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the PTAB. Additionally, when considering the proximity of the district court's trial date to the date when the PTAB final written decision will be due, the PTAB will consider the median time from filing to disposition of the civil trial for the district in which the parallel litigation resides.[4] This memorandum clarifies those practices.

This memorandum is issued under the Director's authority to issue binding agency guidance to govern the PTAB's implementation of various statutory provisions, including directions regarding how those statutory provisions will apply to sample fact patterns. *See, e.g.*, 35 U.S.C. 3(a)(2)(A); PTAB Standard Operating Procedure (SOP) 2 at 1–2.

Analysis

**Compelling Merits**

In the AIA, Congress established post-grant proceedings, including IPR, PGR, and covered business method (CBM) proceedings to improve and ensure patent quality by providing "quick and cost-effective alternatives to litigation" for challenging issued patents. H.R. Rep. No. 112–98, pt. 1, at 48; *see also* S. Rep. No. 110–259, at 20 (explaining that the "post-grant review

---

[3] *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A).
[4] https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics

**Appx024**

system . . . will give third parties a quick, inexpensive, and reliable alternative to district court litigation to resolve questions of patent validity"). Congress granted the Office "significant power to revisit and revise earlier patent grants" as a mechanism "to improve patent quality and restore confidence in the presumption of validity that comes with issued patents." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016) (quoting H.R. Rep. No. 112-98, pt. 1, at 45, 48). Given those objectives, compelling, meritorious challenges will be allowed to proceed at the PTAB even where district court litigation is proceeding in parallel. Compelling, meritorious challenges are those in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence. That said, the PTAB retains discretion to deny institution for proceedings where abuse has been demonstrated.

*Fintiv* factor six reflects that the PTAB considers the merits of a petitioner's challenge when determining whether to institute a post-grant proceeding in view of parallel district court litigation. Where the information presented at the institution stage is merely sufficient to meet the statutory institution threshold,[5] the PTAB has the authority, where warranted, to exercise discretion to deny institution in view of the other *Fintiv* factors. In contrast, where the PTAB determines that the information presented at the institution stage presents a compelling

---

[5] Institution of an IPR is authorized by statute only when "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a) (2018). Similarly, institution of a PGR, including a CBM, is authorized only when "the information presented in the petition . . . , if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable" *Id.* § 324(a).

unpatentability challenge, that determination alone demonstrates that the PTAB should not discretionarily deny institution under *Fintiv*.[6]

      This clarification strikes a balance among the competing concerns of avoiding potentially conflicting outcomes, avoiding overburdening patent owners, and strengthening the patent system by eliminating patents that are not robust and reliable.  Consistent with Congress's giving the Office the authority to revisit issued patents, the PTAB will not deny institution based on *Fintiv* if there is compelling evidence of unpatentability.  This approach "allows the proceeding to continue in the event that the parallel proceeding settles or fails to resolve the patentability question presented in the PTAB proceeding."  *Fintiv*, Paper 11 at 15.  The patent system and the public good benefit from instituting compelling unpatentability challenges.

### ITC and *Fintiv*

      In 2018, the PTAB issued a decision in *NHK Spring*.[7]  There, the PTAB held that the advanced state of a parallel district court litigation involving similar validity disputes could be a factor weighing in favor of denying institution of an IPR because of concerns over the inefficient

---

[6] The compelling evidence test affirms the PTAB's current approach of declining to deny institution under *Fintiv* where the evidence of record so far in the case would plainly lead to a conclusion that one or more claims are unpatentable.  *See, e.g., Illumina Inc. v. Trs. of Columbia Univ.*, IPR2020-00988, Paper 20 (PTAB Dec. 8, 2020) (declining to deny under *Fintiv* in light of strong evidence on the merits even though four factors weighed in favor of denial and remaining factor was neutral); *Synthego Corp. v. Agilent Techs., Inc.*, IPR2022-00402, Paper 11 (May 31, 2022) (granting institution as efficiency and integrity of the system would not be served by denying institution of petition with particularly strong evidence on the merits); *Samsung Elecs. Co. v. Scramoge Tech., Ltd.*, IPR2022-00241, Paper 10 (*Fintiv* analysis concludes that "very strong" evidence on the merits outweigh concurrent litigation involving earlier scheduled trial date and significant overlap in proceedings).

[7] *NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) (precedential).  This decision also based the denial of institution on Director discretion under 35 U.S.C. § 325(d).

use of PTAB's resources.  *NHK Spring*, Paper 8 at 19–20.  Later, in 2020, the PTAB announced

the *Fintiv* factors, which the PTAB considers when a patent owner raises an argument for

discretionary denial under *NHK Spring* due to an earlier trial date.  *Fintiv*, Paper 11 at 5–6.  The

*Fintiv* factors focus on the interplay between IPRs and district court litigation.  Through that

focus, the *Fintiv* factors seek to avoid duplicative efforts between the PTAB and federal district

courts.  For example, *Fintiv* factor one asks whether the "court" has granted a stay or if one may

be granted.  Similarly, *Fintiv* factor two looks at the proximity of the "court" trial date.

Likewise, *Fintiv* factor three concerns the amount of investment in the parallel proceeding by the

"court" and the parties.  *Fintiv* factors five and six refer to the same parallel proceeding

described in factor three.

Although the *Fintiv* factors are directed to district court litigation and not ITC

proceedings,[8] the PTAB has, in the past, denied AIA reviews based on parallel ITC

investigations.[9]  Important differences, however, distinguish ITC investigations from patent

invalidity trials in federal district courts.  Unlike district courts, the ITC lacks authority to

invalidate a patent and its invalidity rulings are not binding on either the Office or a district

court.  *See Tandon Corp. v. U.S.I.T.C.*, 831 F.2d 1017, 1019 (Fed. Cir. 1987).  Therefore, an ITC

determination cannot conclusively resolve an assertion of patent invalidity, which instead

requires either district court litigation or a PTAB proceeding to obtain patent cancellation.  Thus,

denying institution because of a parallel ITC investigation will not necessarily minimize

---

[8] *Fintiv* refers to ITC proceedings in discussing factor one.  *Fintiv*, Paper 11 at 8–9.  Addressing the situation where district court litigation is stayed pending an ITC investigation, *Fintiv* states in *dicta* that "it is difficult to maintain a district court proceeding on patent claims determined to be invalid at the ITC."  *Id.* at 9.

[9] *See, e.g.*, *Philip Morris Prods. S.A. v. Rai Strategic Holdings*, Inc., IPR2020-00919, Paper 9 (PTAB Nov. 16, 2020).

potential conflicts between PTAB proceedings and district court litigation. For the foregoing

reasons, the PTAB no longer discretionarily denies petitions based on applying *Fintiv* to a

parallel ITC proceeding. This memorandum memorializes that practice. The PTAB will not

discretionarily deny petitions based on applying *Fintiv* to a parallel ITC proceeding.


### *Sotera* Stipulations

*Fintiv* factor four looks at the overlap between the issues raised in the IPR petition and in

the parallel proceeding in order to evaluate "concerns of inefficiency and the possibility of

conflicting decisions." *Fintiv*, Paper 11 at 12. If the petition includes the same or substantially

the same claims, grounds, arguments, and evidence as presented in the parallel proceeding, this

fact has favored denial. *Id.* at 12. Conversely, if the petition includes materially different

grounds, arguments, and/or evidence than those presented in the district court, this fact has

tended to weigh against exercising discretion to deny institution. *Id.* at 12–13.

When a petitioner stipulates not to pursue in a parallel district court proceeding the same

grounds as in the petition or any grounds that could have reasonably been raised in the petition, it

mitigates concerns of potentially conflicting decisions and duplicative efforts between the district

court and the PTAB. *See Sotera*, Paper 12 at 18–19. With such a stipulation, if an IPR or PGR

is instituted, the grounds the PTAB resolves will differ from those present in the parallel district

court litigation. For these reasons, the PTAB will not discretionarily deny institution of an IPR

or PGR in view of parallel district court litigation where a petitioner stipulates not to pursue in a

parallel district court proceeding the same grounds as in the petition or any grounds that could

have reasonably been raised in the petition. This clarification avoids inconsistent outcomes

between the PTAB and the district court and allows the PTAB to review grounds that the parallel district court litigation will not resolve.

### Trial Date

*Fintiv* factor two considers the proximity of the court's trial date to the Board's projected statutory deadline for a final written decision. When applying this factor, the PTAB has taken the "courts' trial schedules at face value absent some strong evidence to the contrary."[10] Thus, the PTAB has generally weighed this factor in favor of exercising discretion to deny institution if the trial date is scheduled before the projected statutory deadline for a final written decision.

In response to the RFC, a number of commenters expressed concern with the use of trial dates as a factor.[11] Stakeholders correctly noted that scheduled trial dates are unreliable and often change. A court's scheduled trial date, therefore, is not by itself a good indicator of whether the district court trial will occur before the statutory deadline for a final written decision.

Accordingly, when analyzing the proximity of the court's trial date under factor two of *Fintiv*, when other relevant factors weigh against exercising discretion to deny institution or are neutral, the proximity to trial should not alone outweigh all of those other factors. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed Cir. 2009). Parties may present evidence regarding the most recent statistics on median time-to-trial for civil actions in the district court in which the

---

[10] *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 13 (May 13, 2020) (informative) (applying the *Fintiv* factors articulated in the precedential *Fintiv* decision).
[11] *See USPTO Executive Summary of Public Views on Discretionary Institution of AIA Proceedings* (Jan. 2021) (available at https://www.uspto.gov/sites/default/files/documents/ USPTOExecutiveSummaryofPublicViewsonDiscretionaryInstitutiononAIAProceedingsJanuary2 021.pdf).

8

parallel litigation resides[12] for the PTAB's consideration.  Where the parties rely on time-to-trial statistics, the PTAB will also consider additional supporting factors such as the number of cases before the judge in the parallel litigation and the speed and availability of other case dispositions. *See id.; In re Google LLC,* No. 2021-178, 2021 WL 5292267 at *3 (Fed. Cir. 2021).

Conclusion

In summary, the PTAB will not deny institution of an IPR or PGR under *Fintiv* (i) when a petition presents compelling evidence of unpatentability; (ii) when a request for denial under *Fintiv* is based on a parallel ITC proceeding; or (iii) where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition.  Additionally, when the PTAB is applying *Fintiv* factor two, the PTAB will consider the speed with which the district court case may come to trial and be resolved.  The PTAB will weigh this factor against exercising discretion to deny institution under *Fintiv* if the median time-to-trial is around the same time or after the projected statutory deadline for the PTAB's final written decision.  That said, even if the PTAB does not deny institution under *Fintiv*, it retains the right to deny institution for other reasons under 35 U.S.C. §§ 314(a), 324(a), and 325(d).  For example, the PTAB may deny institution if other pertinent circumstances are present, such as abuse of process by a petitioner.

This interim guidance applies to all proceedings pending before the Office.  This interim guidance will remain in place until further notice.  The Office expects to replace this interim guidance with rules after it has completed formal rulemaking.

---

[12] The most recent statistics are available at:  https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1.

**Appx030**

# PATENT TRIAL AND APPEAL BOARD

## STANDARD OPERATING PROCEDURE 2 (REVISION 11)[1]

## DESIGNATION OR DE-DESIGNATION OF DECISIONS AS PRECEDENTIAL OR INFORMATIVE

This Standard Operating Procedure (SOP) addresses the review procedure for designating Patent Trial and Appeal Board (Board or PTAB) decisions as precedential or informative authority for the Board. The review procedure includes a process by which an Advisory Committee and PTAB Executive Management evaluate decisions nominated for precedential or informative designation. As part of this process, PTAB Executive Management will, absent exceptional circumstances, solicit and evaluate comments from all members of the Board to determine whether to recommend a nominated decision for designation as precedential or informative.

This SOP also includes the process for de-designating previously designated precedential or informative decisions.

No decision will be designated or de-designated as precedential or informative without the approval of the Director. This SOP does not limit the authority of the Director to designate or de-designate decisions as precedential or informative. Nor does this SOP limit the Director's authority to issue, at any time and in any manner, policy directives that are binding on any and all USPTO employees, including Board judges, such as policy directives concerning the interpretation and implementation of statutory provisions. *See, e.g.*, 35 U.S.C. §3(a)(2)(A); *see also, e.g.*, 35 U.S.C. §§ 3(a)(1), 2(b)(2)(A), 316(a), 326(a).

This SOP sets forth internal processes and procedures for the administration of PTAB. It does not create any legally-enforceable rights. The actions described in this SOP are part of the USPTO's deliberative process.

## I.    PURPOSE

The Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (Director), who is a statutory member of the Board (35 U.S.C. § 6(a)), is "responsible for providing policy

---

[1] Published July 24, 2023.

direction and management supervision for the Office" (35 U.S.C. § 3(b)(2)(A)), which has authority to "govern the conduct of proceedings in the Office" (35 U.S.C. § 2(b)(2)(A)). The Director has an interest in establishing binding authority for fair and efficient Board proceedings, and for ensuring consistent decisions within and across Board jurisdictions, including appeals from adverse patent examiner decisions, appeals from reexamination proceedings, derivation proceedings, and *inter partes* review and post-grant review proceedings. 35 U.S.C. § 6(b).

### A. Publication of Decisions

The Administrative Procedure Act requires that "[e]ach agency shall make available to the public . . . final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." 5 U.S.C. § 552(a)(2)(A). Since August 1997, Board decisions have been made available to the public through the electronic posting of most[2] final Board decisions ([http://e-foia.uspto.gov/Foia/PTABReadingRoom.jsp](http://e-foia.uspto.gov/Foia/PTABReadingRoom.jsp); [https://ptab.uspto.gov](https://ptab.uspto.gov)). A decision, as used in this SOP, refers to any Board decision, opinion, or order, or the rehearing decision of any Board decision, opinion, or order.

The Board enters thousands of decisions every year. Every decision is, by default, a routine decision. A routine decision is binding in the case in which it is made, even if it is not designated as precedential or informative, but it is not otherwise binding authority. This SOP provides a mechanism for highlighting certain Board decisions by designating them as precedential or informative.

### B. Designation of Decisions as Precedential or Informative

This SOP set forth procedures for designating decisions as precedential or informative. These procedures are the typical procedures the Board and Office use to establish binding authority or set forth Board norms, but these procedures do not limit the Director's authority to issue, at any time and in any manner, policy directives, including issuing precedential decisions and guidance memorandums. These policy directives are binding on any and all USPTO employees, including Board judges, and may include directives concerning the interpretation and implementation of statutory provisions. *See, e.g.*, 35 U.S.C.

---

[2] Electronic publication of most decisions depends on whether the underlying application is entitled to confidentiality. 35 U.S.C. § 122. Since November 2000, only a relatively small number of decisions remain confidential.

§3(a)(2)(A); *see also, e.g.*, 35 U.S.C. §§ 3(a)(1), 2(b)(2)(A), 316(a), 326(a).

A precedential decision establishes binding authority concerning major policy or procedural issues, or other issues of exceptional importance, including constitutional questions, important issues regarding statutes, rules, and regulations, important issues regarding case law, or issues of broad applicability to the Board.

An informative decision provides Board norms on recurring issues, guidance on issues of first impression to the Board, guidance on Board rules and practices, and guidance on issues that may develop through analysis of recurring issues in many cases.

No case will be designated precedential or informative without the approval of the Director.

### C. Procedures for De-designation

This SOP also provides a procedure for de-designating decisions previously designated as precedential or informative when they should no longer be designated as such, for example, because they have been rendered obsolete by subsequent binding authority, are inconsistent with current policy, or are no longer relevant to Board jurisprudence. No decision will be de-designated without the approval of the Director.

## II. DESIGNATING AN ISSUED DECISION AS PRECEDENTIAL OR INFORMATIVE

Every Board decision is a routine decision unless it is designated as precedential or informative. A routine decision is binding in the case in which it is made, even if it is not designated as precedential or informative, but is not otherwise binding authority. The sections below set forth a procedure for nomination, review, and designation of issued decisions as precedential or informative.

### A. Nominating Process for Precedential or Informative Designation

Any person, including, for example, Board members and other USPTO employees, as well as members of the public, may nominate a routine decision of the Board for designation as precedential or informative. An informative decision may similarly be nominated for precedential designation.

Nominations for precedential or informative designation must set forth with particularity the reasons for the requested designation, and must also identify any other Board decisions of which the person nominating is aware that may conflict with the nominated decision. Nominations should be submitted by email to PTAB_Decision_Nomination@uspto.gov.

Nominated decisions may be considered for precedential designation to establish binding Board authority concerning major policy or procedural issues, or other issues of exceptional importance in the limited situations where it is appropriate to create such binding authority through adjudication before the Board. For example, such issues may include constitutional questions; important issues regarding statutes, rules, and regulations; important issues regarding binding or precedential case law; or issues of broad applicability to the Board. The precedential designation may also be used to resolve conflicts between Board decisions and to promote certainty and consistency among Board decisions.

Nominated decisions may be considered for informative designation for reasons including, for example: (1) providing Board norms on recurring issues; (2) providing non-binding guidance on issues of first impression to the Board; (3) providing non-binding guidance on Board rules and practices; and (4) providing non-binding guidance on issues that may develop through analysis of recurring issues in many cases.

B. <u>Recommendations for Precedential or Informative Designation</u>

1. Advisory Committee

An Advisory Committee will review the nominated decisions. The Advisory Committee has at least 11 members and includes representatives from various USPTO business units who serve at the discretion of the Director. The Advisory Committee typically comprises members from the following business units of the USPTO:

- Office of the Under Secretary (not including the Director or Deputy Director)

- Patent Trial Appeal Board (not including members of the original panel for each case under review)

- Office of the Commissioner for Patents (not including the Commissioner for Patents and any persons involved in the examination of the challenged patent)

- Office of the General Counsel

- Office of Policy and International Affairs

The Advisory Committee will make recommendations as to which decisions should be further reviewed for designation as precedential or informative. Advisory Committee meetings may proceed with less than all members in attendance. A quorum of seven members must be present for each meeting. Additional individuals, such as technical or subject matter experts, or others assisting in an administrative support capacity, may participate in Advisory Committee meetings but do not provide recommendations to the Director.

The Advisory Committee prepares an advisory recommendation for each nominated decision. The Advisory Committee provides its recommendations to the Director at regular intervals, promoting the timely consideration of nominated decisions. If the recommendation is not unanimous, dissenting views will be reported to the Director.

## 2. PTAB Executive Management

PTAB Executive Management also will provide a recommendation to the Director, either orally or in writing, on whether to designate a nominated decision, or a portion thereof, as precedential or informative. PTAB Executive Management will review the nominated decision and the recommendation provided by the Advisory Committee. PTAB Executive Management will, absent exceptional circumstances, solicit feedback from Board members, as discussed below. PTAB Executive Management will provide its recommendation to the Director as to whether to designate the decision, or a portion thereof, as precedential or informative.

### i. Composition of PTAB Executive Management

For purposes of this SOP, PTAB Executive Management consists of the Chief Judge, the Deputy Chief Judge, Vice Chief Judges, and Senior Lead Administrative Patent Judges.[3] A quorum of five members must be present in making each recommendation. If a quorum cannot be reached, PTAB Executive Management will not provide a recommendation to the Director.

---

[3] For purposes of this SOP, persons in an acting Chief Judge, Deputy Chief Judge, Vice Chief Judge, or Senior Lead Judge capacity are members of PTAB Executive Management.

ii. PTAB Executive Management Review Process

As part of its evaluation, PTAB Executive Management will, absent exceptional circumstances, solicit and review comments from members of the Board that do not have a conflict of interest with the nominated decision. To that end, PTAB Executive Management will present the nominated decision to all members of the Board for comment during a Board review period. During the Board review period, which typically will be five business days, any member of the Board may submit written comments to PTAB Executive Management regarding whether the decision should be designated as precedential or informative. PTAB Executive Management may share the comments with all members of the Board. After the expiration of the Board review period, PTAB Executive Management will compile and evaluate the received comments, and shall determine by majority vote of PTAB Executive Management whether to recommend the decision for designation as precedential or informative. If the recommendation is not unanimous, dissenting views will be reported to the Director.

C. <u>Designating a Decision as Precedential or Informative</u>

PTAB Executive Management shall submit its recommendation, along with the Advisory Committee recommendation and a summary of Board comments, to the Director, with an explanation for its recommendation. The Director may consult with others, including, for example, members of the Office of the General Counsel.[4] No decision or portion thereof may be designated as precedential or informative pursuant to these procedures without the Director's approval. If the Director determines that the decision or portion thereof should be designated as precedential or informative, the Director will notify the Chief Judge.[5]

The decision to be designated will then be published or otherwise disseminated following notice and opportunity for written objection afforded by 37 C.F.R. § 1.14, in those instances in which the decision would not otherwise be open to public inspection because a patent application is preserved in confidence

---

[4] The Director will not consult with anyone having a conflict of interest with the designated decision.

[5] This SOP does not limit the authority of the Director to designate or de-designate an issued decision or portion thereof as precedential or informative at any time, in his or her sole discretion.

pursuant to 35 U.S.C. § 122(a).

Decisions, or portions thereof, designated as precedential or informative shall be labeled "Precedential" or "Informative," respectively, and include the date on which the decision is so designated. If a portion of a decision is designated as precedential or informative, an indication of that portion shall be included in the label. Precedential and informative decisions shall be posted electronically on the Board's Precedential and Informative Decisions Web page[6] and may be sent to commercial reporters that routinely publish Board decisions.

### D. Effect of Precedential or Informative Designation

A precedential decision is binding Board authority in subsequent matters involving similar facts or issues.

Informative decisions set forth Board norms that should be followed in most cases, absent justification, although an informative decision is not binding authority on the Board.

A decision previously designated as precedential or informative under a prior version of SOP 2 (and not previously de-designated) shall remain precedential or informative unless de-designated under § III of this SOP.

### E. Conflicts of Interest

If the Director, a member of the Advisory Committee, or a member of PTAB Executive Management has a conflict of interest, they shall notify the other members and will recuse themselves from the designation or de-designation process for that decision.

In determining whether a conflict of interest exists, the USPTO follows the guidance set forth in the Standards of Ethical Conduct for Employees of the Executive Branch at 5 C.F.R. Part 2635 and will consult with the Department of Commerce Ethics Law and Programs Office, as necessary, to resolve any questions pertaining to conflicts of interest. Conflicts may include, for example, involvement in the examination or prosecution of the underlying patent or a related patent at issue.

---

[6] Available at www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/precedential-informative-decisions.

Additionally, the Office has set forth procedures that the Office will follow in the event of an actual or potential conflict of interest by Director or Deputy Director of the USPTO. *See* "Director Recusal Procedures" at *Office of the Under Secretary and Director*.[7]

Finally, as a matter of policy, PTAB Executive Management judges will additionally follow the guidance on conflicts of interest set forth in the PTAB's Standard Operating Procedure 1 and will recuse themselves from any discussion or analysis involving cases or related cases on which they are paneled.

## III.    DE-DESIGNATING A PRECEDENTIAL OR INFORMATIVE DECISION

Any person, including, for example, Board members and other USPTO employees, as well as members of the public, may suggest that a Board decision designated as "Precedential" or "Informative" should no longer be designated as such, for example because it has been rendered obsolete by subsequent binding authority, is inconsistent with current policy, or is no longer relevant to Board jurisprudence. Nominations for de-designation should be submitted by email to PTAB_Decision_Nomination@uspto.gov.

If the Director determines that a particular Board decision should no longer be designated as precedential or informative, that Board decision will be de-designated. The Chief Judge will notify the Board that the decision has been de-designated. The decision will be removed from the Board's Precedential and Informative Decisions Web page and the public will be notified that the decision has been de- designated.

---

[7] Available at www.uspto.gov/about-us/organizational-offices/office-under-secretary-and-director.



An official website of the United States government

Here's how you know ⌄

**Home** > **About Us** > **News & Updates**

> USPTO rescinds memorandum addressing discretionary denial procedures



**Update:** On March 24, 2025, the USPTO published an updated Guidance memorandum on USPTO's recission of "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation", which can be found in the Guidance Memorandum section of the PTAB resources page.

# USPTO rescinds memorandum addressing discretionary denial procedures

**February 28, 2025**

Today, the USPTO rescinded the June 21, 2022, memorandum entitled "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" (Memorandum).

Parties to post-grant proceedings should refer to Patent Trial and Appeal Board (PTAB) precedent for guidance, including Apple Inc. v. Fintiv, Inc., IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) and Sotera Wireless, Inc. v. Masimo Corp., IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A).

To the extent any other PTAB or Director Review decisions rely on the Memorandum, the portions of those decisions relying on the Memorandum shall not be binding or persuasive on the PTAB.

Was this page helpful? 👍 👎

Share this page     Print this page

Additional information about this page

## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

your@email.com                                    Subscribe

About the USPTO   •   Search for patents   •   Search for trademarks

US Department of Commerce

Accessibility

Privacy Policy

Terms of Use

Financial and Performance Data

Vulnerability Disclosure Policy

Freedom of Information Act

Inspector General

NoFEAR Act

USA.gov

Follow us



# United States Patent and Trademark Office

*Patent Trial and Appeal Board*

### MEMORANDUM

To:      Members of the Patent Trial and Appeal Board

From:    Scott R. Boalick, Chief Administrative Patent Judge

Subject: Guidance on USPTO's recission of "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation"

Date:    March 24, 2025

On February 28, 2025, the USPTO rescinded the June 21, 2022 memorandum entitled "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" ("Interim Procedure"). The Interim Procedure was intended to provide guidance while the USPTO explored potential rulemaking, but the USPTO did not subsequently propose a final rule addressing the Director's and, by delegation, the Patent Trial and Appeal Board's ("Board") exercise of discretionary institution in an *inter partes* review ("IPR") or a post-grant review ("PGR") in view of a parallel litigation. In the absence of rulemaking, the USPTO rescinded the Interim Procedure to restore policy in this area to the guidance in place before the Interim Procedure, including the Board's precedential decisions in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) ("*Fintiv*") and *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) ("*Sotera*"). This memorandum sets forth additional guidance.

First, the Interim Procedure's recission applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending. The Board will consider timely requests for additional briefing on the application of the Interim Procedure's recission on a case-by-case basis. Absent extraordinary circumstances, the Board will not revisit a decision on institution if the time for seeking Director Review or rehearing has passed.

Second, the Board will apply the *Fintiv* factors when there is a parallel proceeding at the International Trade Commission ("ITC"). As the *Fintiv* decision explains, although an ITC final invalidity determination does not have preclusive effect, it is difficult as a practical matter to assert patent claims that the ITC has determined are invalid. *See Fintiv*, Paper 11 at 8–9. Additionally, instituting an IPR or a PGR where the ITC has set a target date for completing its investigation (i.e., the full Commission's final determination) to occur earlier than the Board's deadline to issue a final written decision in a challenge involving the same patent claims means that multiple tribunals may be adjudicating validity at the same time, which may increase duplication and expenses for the parties and the tribunals. Thus, the Board is more likely to deny institution where the ITC's projected final determination date is earlier than the Board's deadline to issue a final written decision, and the Board is less likely to deny institution under *Fintiv* where the ITC projected final determination date is after the Board's deadline to issue a final written decision.

Third, a timely-filed *Sotera* stipulation[1] (*i.e.*, a stipulation from a petitioner that, if an IPR or PGR is instituted, the petitioner will not pursue in district court

---

[1] *See NXP USA, Inc. v. Impinj, Inc.*, IPR2021-01556, Paper 13 (Sept. 7, 2022) (precedential) (holding that the only appropriate time for a petitioner to offer a stipulation is prior to the Board's decision on institution).

2

(or in the ITC) any ground raised or that could have been reasonably raised in the IPR/PGR) is highly relevant, but will not be dispositive by itself. Instead, the Board will consider such a stipulation as part of its holistic analysis under *Fintiv*.

Fourth, in applying *Fintiv*, the Board may consider any evidence that the parties make of record that bears on the proximity of the district court's trial date or the ITC's final determination target date, including median time-to-trial statistics for civil actions in the district court in which the parallel litigation resides.

Fifth, as stated in *Fintiv*, the factors considered in the exercise of discretion are part of a balanced assessment of all the relevant circumstances in the case, including the strength of the merits. However, compelling merits alone is not dispositive in making the assessment.

MEMORANDUM

To:        All PTAB Judges

From:      Coke Morgan Stewart
           Acting Under Secretary of Commerce for Intellectual Property
           and Acting Director of the United States Patent and Trademark Office

Subject:   Interim Processes for PTAB Workload Management

Date:      March 26, 2025

The Patent Trial and Appeal Board (PTAB) is tasked with several statutory duties under 35 U.S.C. § 6(b), including deciding *ex parte* appeals from adverse examiner decisions by patent applicants and conducting America Invents Act (AIA) trial proceedings, such as *inter partes* reviews (IPRs) and post-grant reviews (PGRs).  To ensure that the PTAB continues to meet its statutory obligations as to *ex parte* appeals, while continuing to maintain its capacity to conduct AIA proceedings, the Director will exercise her discretion on institution of AIA proceedings under 35 U.S.C. §§ 314(a) and 324(a) as outlined below.

First, decisions on whether to institute an IPR or PGR will be bifurcated between (i) discretionary considerations and (ii) merits and other non-discretionary statutory considerations.  Under this interim procedure, the Director, in consultation with at least three PTAB judges, will determine whether discretionary denial of institution is appropriate.  If it is appropriate, the Director will issue a decision denying institution.  If it is not appropriate, the Director will issue a decision regarding that determination and refer the petition to a three-member panel of the PTAB assigned according to Standard Operating Procedure (SOP) 1 (Rev. 16).  The three-member panel will then handle the case in the normal course including by issuing a decision on institution addressing the merits and other non-discretionary statutory considerations.

Second, to facilitate this bifurcated approach, the USPTO will permit parties to file separate briefing on requests for discretionary denial of institution. The discretionary denial briefing shall proceed as follows: (1) within two months of the date on which the PTAB enters a Notice of Filing Date Accorded to a petition, a patent owner may file a brief explaining any applicable bases for discretionary denial of institution; and (2) a petitioner may file an opposition brief no later than one month after the patent owner files its brief. Leave to file further briefing may be permitted for good cause. Consistent with 37 C.F.R. § 42.24, discretionary denial briefing will be limited to 14,000 words. A reply brief, if any, will be limited to 5,600 words. The merits briefing schedule and the schedule for requesting rehearing or Director Review as to a decision on institution remain unchanged.

Third, consistent with the discretionary considerations enumerated in existing Board precedent (including *Fintiv*, *General Plastic*, and *Advanced Bionics*[*]) and the Consolidated Trial Practice Guide (Nov. 2019), the parties are permitted to address all relevant considerations, which may include:

- Whether the PTAB or another forum has already adjudicated the validity or patentability of the challenged patent claims;
- Whether there have been changes in the law or new judicial precedent issued since issuance of the claims that may affect patentability;
- The strength of the unpatentability challenge;
- The extent of the petition's reliance on expert testimony;
- Settled expectations of the parties, such as the length of time the claims have been in force;
- Compelling economic, public health, or national security interests; and

---

[*] *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (Mar. 20, 2020) (precedential); *Gen. Plastic Indus. Co. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 (Sept. 6, 2027) (precedential as to § II.B.4.i); *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 (Feb. 13, 2020) (precedential).

2

- Any other considerations bearing on the Director's discretion.

The Director will also consider the ability of the PTAB to comply with pendency goals for *ex parte* appeals, its statutory deadlines for AIA proceedings, and other workload needs.  *See* 35 U.S.C. § 316(b).

These processes aim to improve PTAB efficiency, maintain PTAB capacity to conduct AIA proceedings, reduce pendency in *ex parte* appeals, and promote consistent application of discretionary considerations in the institution of AIA proceedings.  The processes described herein will be implemented in IPR and PGR proceedings where the deadline for the patent owner to file a preliminary response has not yet passed.  In that situation, if the time for filing discretionary denial briefing as described herein has already elapsed, the patent owner may submit discretionary denial briefing within one month of the date of this memorandum.

The processes described herein are temporary in nature due, in part, to the current workload needs of the PTAB.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

HIGHLEVEL, INC.,

Petitioner

v.

CLICKFUNNELS,

Patent Owner

———————————

Cases IPR2025-00234

U.S. Patent No. 10,846,357

———————————

**PETITIONER'S DIRECTOR REVIEW REQUEST**

TABLE OF CONTENTS

I.    INTRODUCTION..............................................................................................1

II.   THE DIRECTOR SHOULD HOLD THE INSTITUTION DECISION IN ABEYANCE PENDING THE FEDERAL CIRCUIT'S § 101 DECISION.............2

III.  THE BOARD'S DENIAL WAS *ULTRA VIRES* AND IMPERMISSIBLY RETROACTIVE........................................................................................................8

   A.  The *Ultra Vires Hulu* Rule Exceeds Statutory Authority...............................8

   B.  Retroactive Application of *Hulu* Violates Due Process ...............................10

IV.  CONCLUSION ...............................................................................................14

## I.    INTRODUCTION

Petitioner HighLevel, Inc. respectfully requests Director Review of the Board's decision discretionarily denying institution based on the Acting Director's decision in *Hulu, LLC v. Piranha Media Distrib., LLC*, IPR2024-01252, Paper 27 at 3 (PTAB Apr. 17, 2025) (informative). 37 C.F.R. § 42.75; *see* Paper 12 ("DI"). The Board's denial, which rests on a newly announced and retroactively applied policy, not only exceeds the Office's statutory authority but also inflicts substantial prejudice on Petitioner by depriving it of a fair opportunity to challenge patent validity under the rules in effect at the time of filing.

The relief Petitioner requests by this Review is as simple as it is efficient: the Director should hold any decision on this Request in abeyance until the Federal Circuit *finally* decides § 101 invalidity in the pending appeal. This relief will avoid severe prejudice to a now time-barred petitioner and maintain the integrity of the system. In other words, Petitioner respectfully requests the Office *do nothing* at this time except order the parties to provide notice of the Federal Circuit's final decision. Should the Federal Circuit affirm the invalidity of the claims under § 101, the patents will be finally invalid (currently they are not) and the Board's discretionary denial will stand as the Petition is mooted. However, should the Federal Circuit either reverse or vacate (and remand) the district court's § 101 decision, then this parallel IPR should be referred to the Board to address the merits on the AIA's statutory

1

timeline. As discussed *infra*, there is precedent for the Board holding a rehearing decision in abeyance to allow a pending appeal to proceed at the Federal Circuit on related issues. *Ford Motor Co. v. Ethanol Boosting Sys., LLC*, IPR2021-00339, Paper 17 (PTAB Nov. 21, 2022).

Alternatively, the Director should find that the Office erred in deciding *Hulu* and making it informative, which, as this case demonstrates, established a principle that has become a new bright-line rule applied retroactively and with no discretion. Any rule that categorically denies an IPR after a district court finds patent ineligibility is an *ultra vires* overreach that effectively requires defendants to forgo an Article III-only defense to obtain access to the PTAB. The prejudice in this case is even worse because Petitioner relied on the guidance of prior Director decisions that charted an exact opposite approach to addressing Article III defenses when filing its Petition. Thus, having spent many months preparing and filing its Petition, the retroactive application of *Hulu* further deprives Petitioner of due process. The Director, however, does not need to decide this issue. Instead, the Director may hold this Request in abeyance and await a final decision from the Federal Circuit from which it can then act accordingly. That is the fair result.

## II.    THE DIRECTOR SHOULD HOLD THE INSTITUTION DECISION IN ABEYANCE PENDING THE FEDERAL CIRCUIT'S § 101 DECISION

The Board's denial of institution is premature and prejudicial, given that the

2

validity of the challenged claims is currently on appeal to the Federal Circuit following a district court's § 101 ineligibility finding.[1] As Director Vidal recognized, claims are not finally adjudicated until the Federal Circuit has *finally* resolved the appeal. *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, IPR2022-01366, Paper 15 at 6 (PTAB May 2, 2023) (remanding to the Board: "[T]hese claims [held invalid under § 101] are subject to further judicial review and, therefore, are not finally adjudicated"); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1342 (Fed. Cir. 2013) ("[A] final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it." (internal citation omitted)). But here, the Board relied on *Hulu* to deny institution, asserting that "[i]n the event the Federal Circuit reverses the district court's decision, Petitioner may raise such invalidity arguments in the district court on remand." DI, 7 (quoting *Hulu* at 2-3).

This approach is not only inefficient but also wholly unfair, because in the event of reversal, it mandates unnecessary expenditure of resources and denies Petitioner's statutory right to challenge patent validity before the Board with its

---

[1] On June 26, 2025, Patent Owner (Appellant) filed its opening brief to the Federal Circuit. Brief for Plaintiff-Appellant, *Etison LLC v. HighLevel, Inc.*, No. 25-1711 (Fed. Cir. June 26, 2025), Dkt. No. 11. Petitioner (Appellee) plans to self-expedite the filing of its opposition brief and make a request for expedited oral argument, which, if granted, could take place in as little as four months after completion of the briefing.

technically skilled judges. *See* 35 U.S.C. § 6(a). Because the district court's § 101 decision is not yet final, a more streamlined and sensible approach would use the Director Review process, unbounded by statutory deadlines, to hold Petitioner's Request in abeyance until the Federal Circuit decides the appeal. This approach would yield a just and more efficient outcome not only in this case but also in many procedurally similarly situated cases. *See* 37 CFR § 41.1(b) (noting that PTAB practice seeks to "secure the just, speedy, and inexpensive resolution" of patentability).

There is no statutory or regulatory deadline that would prevent the Director from holding this matter in abeyance. Like a request for rehearing of a decision denying institution, the Director Review process is not subject to a fixed timeline, and the 12-month window for a final written decision is triggered only upon institution. *See* 35 U.S.C. § 316(a)(11). Indeed, in *Ford Motor*, the Board took a nearly identical approach in a request for rehearing as Petitioner recommends here. There, the Board initially denied institution based on a district court's claim construction still on appeal. *See Ford Motor*, Paper 17 at 2. In its rehearing request, the petitioner requested holding the "review in abeyance until such time that the Federal Circuit has issued its decision on appeal as to the correct construction…." *Id.* at 5 (quoting Paper 11 at 3). The Board agreed this was the "most appropriate approach," noting the possible harm to the petitioner if the Federal Circuit required

a different construction. *Id.* The Board's approach was the correct one—the Federal Circuit reversed the district court's claim construction on appeal, and the Board subsequently instituted the IPR.[2] *Id.* at 6.

The same discretionary denial logic applies here. The Director may, and in this case should, wait for the corresponding district court appeal to run its course, at which point, the need for further PTAB proceedings can be addressed without speculation. If the Federal Circuit affirms the district court's § 101 decision, the Board's denial stands since the IPR is moot. Conversely, if the Federal Circuit reverses or vacates the district court's § 101 decision, and the case is remanded to the district court for further proceedings,[3] then the Board can address the Petition on its merits.

Absent holding this Request for abeyance on institution, a Federal Circuit reversal or remand on § 101 will require substantial work at the district court, where currently there is no schedule in place and no discovery (written nor deposition) has been served or taken by either party. Claim construction, expert discovery, summary

---

[2] The Federal Circuit denied the patent owner's mandamus petition seeking vacatur of the institution decision. *See In re Ethanol Boosting Sys., LLC*, No. 2023-119, 2023 WL 2609123, at *1 (Fed. Cir. Mar. 23, 2023).

[3] *See, e.g., Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

judgment, and trial will be required to address infringement and validity of the asserted patents based on prior art publications. This body of work is exponentially more time consuming—spanning two to three years—and is far more expensive than a PTAB proceeding. For example, in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1302-03 (Fed. Cir. 2016), the Federal Circuit reversed the district court's judgment that the asserted claims were patent ineligible under § 101. On remand, the parties and district court had to address invalidity and infringement for another four years,[4] including another appeal and reversal by the Federal Circuit.[5] Here, there is no trial date. If the Federal Circuit remands, the Board's FWD will almost certainly resolve the validity issues well before the district court.

Moreover, as it has in the past, this fact scenario will be a recurring situation in cases before the Board.[6] The Board should not unilaterally remove the option of

---

[4] *See McRO, Inc. v. Namco Bandai Games Am., Inc.*, No. 2:12-cv-10322 (C.D. Cal. July 9, 2020); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., No. 1:10-cv-910, 2018 WL 1699429, at *1 (E.D. Va. Apr. 6, 2018) (continuing with claim construction and issuing a Markman order on remand from the Federal Circuit's § 101 reversal); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) (remanding to the N.D. Okla. where the district court continued into 2018).

[5] *See McRO, Inc. v. Bandai Namco Games Am. Inc*., 959 F.3d 1091 (Fed. Cir. 2020).

[6] *See, e.g., Reolink Innovation Inc. v. Throughtek Co., Ltd*., IPR2024-00509, Paper 6 at 2-3 (PTAB Aug. 9, 2024); *BMW of N. Am., LLC v. Michigan Motor Techs., LLC*, IPR2023-01224, Paper 15 at 9-10 (PTAB Feb. 15, 2024); *Meta Platforms, Inc. v. Angel Techs. Grp. LLC*, IPR2023-00059, Paper 16 at 3 (PTAB May 11, 2023). In

6

granting institution to timely filed petitions just because claims have been found ineligible under § 101 by a district court. Congress reserved § 101 defenses to the exclusive province of district courts, and defendants should not be barred from access to IPRs for following the AIA's statutory framework. The more appropriate approach, which ensures the most expedient resolution of the parties' dispute, while allowing a defendant its full defenses under the law, is to simply wait and see whether the § 101 decision is affirmed. At bottom, this approach will lead to a faster and more efficient resolution of disputes. *See* Congressional Research Service, The Patent Trial and Appeal Board and Inter Partes Review, Report No. R48016 (May 28, 2024) ("The framers of the AIA intended for IPR to serve as a faster, less costly alternative to district court litigation."); *see also id*. at 2 ("PTAB procedures are often more advantageous than federal court litigation in that they are faster [and] cheaper").

Conversely, the Board's resolution to leave invalidity based on patents and prior art publications on remand with the district court is not inexpensive. In fact, widely available studies demonstrate that this is the much more expensive approach—indeed, by an order of magnitude or more. AIPLA, *Report of the Economic Survey* 62-63 (2023) (Electrical/Computer PGR/IPR costs $350,000

---

addition to this case and *Hulu* itself, recent *Hulu*-based institution denials also include *Shopify Inc. v. DKR Consulting LLC*, IPR2025-00130, -00132, -00133, Paper 10 (PTAB May 29, 2025).

7

versus $3,875,000 for NPE litigation with more than $25 MM at risk); *see also* CRS

Report No. R48016 ("[IPRs and PGRs are] more streamlined than civil litigation,

with average legal costs typically in the hundreds of thousands of dollars (as opposed

to millions)"). The efficient result here is wait for the Federal Circuit's decision on

appeal and, only if necessary, proceed with the evaluating the Petition on the merits.

### III.    THE BOARD'S DENIAL WAS *ULTRA VIRES* AND IMPERMISSIBLY RETROACTIVE

### A.    The *Ultra Vires Hulu* Rule Exceeds Statutory Authority

The Board's application of the *Hulu* rule—categorically denying institution

of IPRs where a district court has found claims invalid under § 101—exceeds the

authority granted by Congress. The AIA expressly limits IPRs to challenges based

on §§ 102 and 103 and prior art patents or printed publications. *See* 35 U.S.C.

§ 311(b). Congress intentionally excluded § 101 from the scope of IPRs, reserving

this defense for district courts. *Ingenico Inc. v. IOENGINE*, LLC, 136 F.4th 1354,

1365 (Fed. Cir. 2025) ("[I]nstead of allowing a petitioner to challenge a claim under

any theory of invalidity, Congress intentionally limited an IPR's scope to invalidity

challenges based on 'prior art consisting of patents or printed publications.'" (citing

35 U.S.C. § 311(b)).

Despite their limited scope, IPRs are important to "protect[] 'the public's

paramount interest in seeing that patent monopolies are kept within their legitimate

scope[.]'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S.

325, 336-37 (2018) (quoting *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 279-80 (2016)). By contrast, the *Hulu* rule effectively denies would-be petitioners an IPR as the cost of pursuing district court-only defenses in parallel. The *ultra vires* nature of such a rule is exemplified by the bipartisan criticism of the previous Director's far more modest regulatory proposals. *See* Oversight of the U.S. Patent and Trademark Office: Hearing before the Subcomm. on Courts, Intellectual Property and the Internet Committee of the Judiciary at 6 (Apr. 27, 2023), available at https://www.congress.gov/118/chrg/CHRG-118hhrg52123/CHRG-118hhrg52123.pdf ("Oversight Hearing Tr.") (remarks of Rep. Moran) ("I'm someone that believes strictly in separation of powers and think that, in this instance, I'm seeing a lot of overstep that I don't quite care for. I'd like to see a lot of what you've proposed come through the legislative process."); *id.* at 13 (remarks of Rep. Lofgren) ("We're the ones that write the statute, not the PTO."); *id.* at 13 (remarks of Chairman Issa) ("I share [the gentlelady's] feelings, that we're more than a stakeholder, and we have spoken as to that issue some 10 years ago."); *id.* at 16 (remarks of Rep. Ivey) ("I'm not clear on the source of your authority to follow that path or to issue these kinds of denials…. I know the AIA is a basis for the activity, but it does seem to be a bit of a stretch of the authority to do it."); *id.* at 4 (remarks of Rep. Johnson) ("I'm concerned that we have allowed law in this area to become too subjective and too subject to the particular views of different

administrations.").[7]

At bottom, *Hulu* effectively forces petitioners to forgo statutory defenses in Article III courts to preserve any right to have their IPR Petition decided on the merits—a result that is unsupported by statute, contrary to congressional intent, and criticized by courts. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018) (concluding that the practice of partial institution exceeded the "statutory limits" warned of in *Cuozzo*); *Facebook, Inc. v. Windy City Innovations*, LLC, 973 F.3d 1321, 1353 (Fed. Cir. 2020) ("There is no indication in the statute that Congress either intended to delegate broad substantive rulemaking authority to the Director to interpret statutory provisions through POP opinions or intended him to engage in any rulemaking other than through the mechanism of prescribing regulations."). The *Hulu* rule—formulated in a Director Review decision without notice and comment—is exactly the type of "shenanigans" the Supreme Court has cautioned against. *See Cuozzo*, 579 U.S. at 275.

## B.    Retroactive Application of *Hulu* Violates Due Process

The *Hulu* rule was announced and applied after Petitioner filed its IPR petition, upending settled expectations and depriving Petitioner of fair notice. At the

---

[7] *See also* Eileen McDermott, *House IP Subcommittee Suggests Vidal is Overstepping with Advance PTAB Proposals*, IP Watchdog (Apr. 27, 2023), available at https://ipwatchdog.com/2023/04/27/house-ip-subcommittee-suggests-vidal-overstepping-advanced-ptab-proposals/id=160123/.

time of filing, binding Office guidance (the June 21, 2022 Vidal Memo) assured petitioners that institution would not be discretionarily denied based on parallel district court litigation if compelling evidence of unpatentability was presented or a *Sotera* stipulation was made.[8] And the Board practice specific to this very situation was well-established. Specifically, because patent claims remain in force until *the opportunity to appeal has been exhausted*, the previous Director rejected the approach the Office is taking now. *See Volvo*, Paper 15 at 6 (opinion of Director Vidal) ("[T]hese claims are subject to further judicial review and, therefore, are not finally adjudicated"). Indeed, the previous Director's policy made sense because "the district court's judgment of invalidity under 35 U.S.C. § 101 … does not raise concerns of inefficient duplication of efforts or potentially inconsistent results between the Board and the district court." *AviaGames, Inc., v. Skillz Platform Inc*., IPR2022-00530, Paper 14 at 2-3 (PTAB Mar. 2, 2023).[9] Accordingly, there is no

---

[8] Memorandum from Katherine K. Vidal, Under Secretary of Commerce for Intellectual Property and Director of the USPTO, to Members of the PTAB, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation (June 21, 2022), available at https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_d enials_aia_parallel_district_court_litigation_memo_20220621_.pdf [hereinafter Vidal Memo].

[9] Prior to *Hulu*, in addition to the Director's *Volvo* decision, cited above, the Board would grant institution even when a district court found the claims invalid under § 101. *See, e.g*., *Reolink Innovation Inc. v. Throughtek Co., Ltd*., IPR2024-00509, Paper 6 at 2-3 (PTAB Aug. 9, 2024); *Apple Inc. v. Geoscope Techs. PTE. Ltd*., IPR2024-00255, Paper 14 at 9-10 (PTAB May 31, 2024); *BMW of N. Am., LLC v.*

11

authoritative basis—statutory or otherwise—to conclude that the Board should not consider Petitioner's IPR challenge.[10] Petitioner relied on this established, rational guidance as it existed and on established Board practice in timely preparing and filing its Petition.

The Board's retroactive application of the new, outcome-determinative *Hulu* rule to Petitioner's Petition violates fundamental principles of due process. *See PHH Corp. v. CFPB*, 839 F.3d 1, 41 (D.C. Cir. 2016) ("The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994) (holding that retroactivity turns on whether a new rule attaches new legal consequences to completed events). Indeed, the Board's abrupt reversal, without consideration of reliance interests or fair notice, is precisely the type of administrative action condemned by courts. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30-31 (2020).

---

*Michigan Motor Techs., LLC*, IPR2023-01224, Paper 15 at 9-10 (PTAB Feb. 15, 2024); *Meta Platforms, Inc. v. Angel Techs. Grp. LLC*, IPR2023-00059, Paper 16 at 3 (PTAB May 11, 2023).

[10] More so, controlling Federal Circuit authority holds that a prior invalidity finding does not preclude IPR. *See, e.g.*, *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1359-60 (Fed. Cir. 2020) (holding that a prior § 112 invalidity determination did not prevent an unpatentability determination under §§ 102 and 103); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020) (same).

12

Under the rules and guidance in effect at the time of filing, Petitioner's Petition would have been evaluated on the merits. The Board's retroactive application of *Hulu* has deprived Petitioner of its right to have its prior art challenges heard by technically trained judges, despite full compliance with all statutory and regulatory requirements, including payment of over $100,000 in filing fees. This is not a mere procedural inconvenience—it is a substantive deprivation of a valuable statutory right, applied to petitions filed long before the guidance changed, with significant consequences. *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (holding that applying a new rule "would have an impermissible retroactive effect if it would render invalid a notice that was valid when filed"). At the time this Petition was filed, it would have been considered on the merits under the rules, policies, and procedures that were in place.

The Office's about-face in access to PTAB proceedings applied retroactively is exactly the type of administrative action that the D.C. Circuit has condemned.[11] Writing for the majority, then-Judge Kavanaugh explained: "When a government

---

[11] *See also* Oversight Hearing Tr. at 4 (remarks of Rep. Johnson) ("The degree of change in PTAB proceedings under different Directors has done nothing to allay my fears. The patent system is not meant to be subject to frequent and unpredictable fluctuations. The point of a 20-year patent is to allow for planning, investment, and realization of new inventions. I'm concerned that we have allowed law in this area to become too subjective and too subject to the particular views of different administrations. This is not the stable basis on which our country's innovation ecosystem should rest.").

13

agency officially and expressly tells you that you are legally allowed to do something, but later tells you 'just kidding' and enforces the law *retroactively* against you and sanctions you for actions you took in reliance on the government's assurances, that amounts to a serious due process violation." *PHH*, 839 F.3d at 48. There is no doubt that the Board's decision to deny institution here pulled the rug out from under Petitioner—and other petitioners similarly situated—who relied on settled PTAB practice.

## IV.     CONCLUSION

The Director should respectfully grant review to hold Petitioner's Request in abeyance and order the parties to provide a status update once the appeal from the district court's decision has run, or, if rejecting this relief, the Director should reverse the Board's decision and grant institution.

Dated: July 2, 2025                    Respectfully submitted,

                                       */s/ William M. Fink*
                                       William M. Fink (Reg. No. 72,332)
                                       Benjamin M. Haber (Reg. No. 67,129)
                                       Robert F. Shaffer (*pro hac vice*
                                       anticipated)
                                       Attorneys for Petitioner

14

IPR2025-00234
U.S. Patent No. 10,846,357

**<u>CERTIFICATE OF SERVICE (37 C.F.R. § 42.6(e)(1))</u>**

I hereby certify that on July 2, 2025, I caused a true and correct copy of

the foregoing PETITIONER'S DIRECTOR REVIEW REQUEST to be served

electronically on counsel for Patent Owner at the following addresses:

Jeffri A. Kaminski
JAKaminski@Venable.com
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 344-4048
Fax: (202) 344-8300

Justin J. Oliver
JJOliver@Venable.com
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Tel: 202-721-5423
Fax: 202-344-8300

Dated: July 2, 2025

Respectfully submitted,

*/s/ William M. Fink*
William M. Fink (Reg. No. 72,332)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Fax: (202) 383-5414
E-Mail: tfink@omm.com
Attorney for Petitioner

15

IPR2025-00235

U.S. Patent No. 11,361,047

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

HIGHLEVEL, INC.,

Petitioner

v.

CLICKFUNNELS,

Patent Owner

_____

Cases IPR2025-00235

U.S. Patent No. 11,361,047

_____

**PETITIONER'S DIRECTOR REVIEW REQUEST**

TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   THE DIRECTOR SHOULD HOLD THE INSTITUTION DECISION IN
ABEYANCE PENDING THE FEDERAL CIRCUIT'S § 101 DECISION ............. 2

III.  THE BOARD'S DENIAL WAS *ULTRA VIRES* AND IMPERMISSIBLY
RETROACTIVE ....................................................................................... 8

    A.  The *Ultra Vires Hulu* Rule Exceeds Statutory Authority ............................... 8

    B.  Retroactive Application of *Hulu* Violates Due Process ................................ 10

IV.  CONCLUSION ................................................................................. 14

## I.    INTRODUCTION

Petitioner HighLevel, Inc. respectfully requests Director Review of the Board's decision discretionarily denying institution based on the Acting Director's decision in *Hulu, LLC v. Piranha Media Distrib., LLC*, IPR2024-01252, Paper 27 at 3 (PTAB Apr. 17, 2025) (informative). 37 C.F.R. § 42.75; *see* Paper 11 ("DI"). The Board's denial, which rests on a newly announced and retroactively applied policy, not only exceeds the Office's statutory authority but also inflicts substantial prejudice on Petitioner by depriving it of a fair opportunity to challenge patent validity under the rules in effect at the time of filing.

The relief Petitioner requests by this Review is as simple as it is efficient: the Director should hold any decision on this Request in abeyance until the Federal Circuit *finally* decides § 101 invalidity in the pending appeal. This relief will avoid severe prejudice to a now time-barred petitioner and maintain the integrity of the system. In other words, Petitioner respectfully requests the Office *do nothing* at this time except order the parties to provide notice of the Federal Circuit's final decision. Should the Federal Circuit affirm the invalidity of the claims under § 101, the patents will be finally invalid (currently they are not) and the Board's discretionary denial will stand as the Petition is mooted. However, should the Federal Circuit either reverse or vacate (and remand) the district court's § 101 decision, then this parallel IPR should be referred to the Board to address the merits on the AIA's statutory

timeline. As discussed *infra*, there is precedent for the Board holding a rehearing decision in abeyance to allow a pending appeal to proceed at the Federal Circuit on related issues. *Ford Motor Co. v. Ethanol Boosting Sys., LLC*, IPR2021-00339, Paper 17 (PTAB Nov. 21, 2022).

Alternatively, the Director should find that the Office erred in deciding *Hulu* and making it informative, which, as this case demonstrates, established a principle that has become a new bright-line rule applied retroactively and with no discretion. Any rule that categorically denies an IPR after a district court finds patent ineligibility is an *ultra vires* overreach that effectively requires defendants to forgo an Article III-only defense to obtain access to the PTAB. The prejudice in this case is even worse because Petitioner relied on the guidance of prior Director decisions that charted an exact opposite approach to addressing Article III defenses when filing its Petition. Thus, having spent many months preparing and filing its Petition, the retroactive application of *Hulu* further deprives Petitioner of due process. The Director, however, does not need to decide this issue. Instead, the Director may hold this Request in abeyance and await a final decision from the Federal Circuit from which it can then act accordingly. That is the fair result.

## II.    THE DIRECTOR SHOULD HOLD THE INSTITUTION DECISION IN ABEYANCE PENDING THE FEDERAL CIRCUIT'S § 101 DECISION

The Board's denial of institution is premature and prejudicial, given that the

2

validity of the challenged claims is currently on appeal to the Federal Circuit following a district court's § 101 ineligibility finding.[1] As Director Vidal recognized, claims are not finally adjudicated until the Federal Circuit has *finally* resolved the appeal. *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, IPR2022-01366, Paper 15 at 6 (PTAB May 2, 2023) (remanding to the Board: "[T]hese claims [held invalid under § 101] are subject to further judicial review and, therefore, are not finally adjudicated"); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330, 1342 (Fed. Cir. 2013) ("[A] final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it." (internal citation omitted)). But here, the Board relied on *Hulu* to deny institution, asserting that "[i]n the event the Federal Circuit reverses the district court's decision, Petitioner may raise such invalidity arguments in the district court on remand." DI, 7 (quoting *Hulu* at 2-3).

This approach is not only inefficient but also wholly unfair, because in the event of reversal, it mandates unnecessary expenditure of resources and denies Petitioner's statutory right to challenge patent validity before the Board with its

---

[1] On June 26, 2025, Patent Owner (Appellant) filed its opening brief to the Federal Circuit. Brief for Plaintiff-Appellant, *Etison LLC v. HighLevel, Inc.*, No. 25-1711 (Fed. Cir. June 26, 2025), Dkt. No. 11. Petitioner (Appellee) plans to self-expedite the filing of its opposition brief and make a request for expedited oral argument, which, if granted, could take place in as little as four months after completion of the briefing.

technically skilled judges. *See* 35 U.S.C. § 6(a). Because the district court's § 101 decision is not yet final, a more streamlined and sensible approach would use the Director Review process, unbounded by statutory deadlines, to hold Petitioner's Request in abeyance until the Federal Circuit decides the appeal. This approach would yield a just and more efficient outcome not only in this case but also in many procedurally similarly situated cases. *See* 37 CFR § 41.1(b) (noting that PTAB practice seeks to "secure the just, speedy, and inexpensive resolution" of patentability).

There is no statutory or regulatory deadline that would prevent the Director from holding this matter in abeyance. Like a request for rehearing of a decision denying institution, the Director Review process is not subject to a fixed timeline, and the 12-month window for a final written decision is triggered only upon institution. *See* 35 U.S.C. § 316(a)(11). Indeed, in *Ford Motor*, the Board took a nearly identical approach in a request for rehearing as Petitioner recommends here. There, the Board initially denied institution based on a district court's claim construction still on appeal. *See Ford Motor*, Paper 17 at 2. In its rehearing request, the petitioner requested holding the "review in abeyance until such time that the Federal Circuit has issued its decision on appeal as to the correct construction…." *Id.* at 5 (quoting Paper 11 at 3). The Board agreed this was the "most appropriate approach," noting the possible harm to the petitioner if the Federal Circuit required

a different construction. *Id.* The Board's approach was the correct one—the Federal Circuit reversed the district court's claim construction on appeal, and the Board subsequently instituted the IPR.[2] *Id.* at 6.

The same discretionary denial logic applies here. The Director may, and in this case should, wait for the corresponding district court appeal to run its course, at which point, the need for further PTAB proceedings can be addressed without speculation. If the Federal Circuit affirms the district court's § 101 decision, the Board's denial stands since the IPR is moot. Conversely, if the Federal Circuit reverses or vacates the district court's § 101 decision, and the case is remanded to the district court for further proceedings,[3] then the Board can address the Petition on its merits.

Absent holding this Request for abeyance on institution, a Federal Circuit reversal or remand on § 101 will require substantial work at the district court, where currently there is no schedule in place and no discovery (written nor deposition) has been served or taken by either party. Claim construction, expert discovery, summary

---

[2] The Federal Circuit denied the patent owner's mandamus petition seeking vacatur of the institution decision. *See In re Ethanol Boosting Sys., LLC*, No. 2023-119, 2023 WL 2609123, at *1 (Fed. Cir. Mar. 23, 2023).

[3] *See, e.g., Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

5

judgment, and trial will be required to address infringement and validity of the asserted patents based on prior art publications. This body of work is exponentially more time consuming—spanning two to three years—and is far more expensive than a PTAB proceeding. For example, in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1302-03 (Fed. Cir. 2016), the Federal Circuit reversed the district court's judgment that the asserted claims were patent ineligible under § 101. On remand, the parties and district court had to address invalidity and infringement for another four years,[4] including another appeal and reversal by the Federal Circuit.[5] Here, there is no trial date. If the Federal Circuit remands, the Board's FWD will almost certainly resolve the validity issues well before the district court.

Moreover, as it has in the past, this fact scenario will be a recurring situation in cases before the Board.[6] The Board should not unilaterally remove the option of

---

[4] *See McRO, Inc. v. Namco Bandai Games Am., Inc.*, No. 2:12-cv-10322 (C.D. Cal. July 9, 2020); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910, 2018 WL 1699429, at *1 (E.D. Va. Apr. 6, 2018) (continuing with claim construction and issuing a Markman order on remand from the Federal Circuit's § 101 reversal); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) (remanding to the N.D. Okla. where the district court continued into 2018).

[5] *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091 (Fed. Cir. 2020).

[6] *See, e.g.*, *Reolink Innovation Inc. v. Throughtek Co., Ltd.*, IPR2024-00509, Paper 6 at 2-3 (PTAB Aug. 9, 2024); *BMW of N. Am., LLC v. Michigan Motor Techs., LLC*, IPR2023-01224, Paper 15 at 9-10 (PTAB Feb. 15, 2024); *Meta Platforms, Inc. v. Angel Techs. Grp. LLC*, IPR2023-00059, Paper 16 at 3 (PTAB May 11, 2023). In

6

granting institution to timely filed petitions just because claims have been found ineligible under § 101 by a district court. Congress reserved § 101 defenses to the exclusive province of district courts, and defendants should not be barred from access to IPRs for following the AIA's statutory framework. The more appropriate approach, which ensures the most expedient resolution of the parties' dispute, while allowing a defendant its full defenses under the law, is to simply wait and see whether the § 101 decision is affirmed. At bottom, this approach will lead to a faster and more efficient resolution of disputes. *See* Congressional Research Service, The Patent Trial and Appeal Board and Inter Partes Review, Report No. R48016 (May 28, 2024) ("The framers of the AIA intended for IPR to serve as a faster, less costly alternative to district court litigation."); *see also id.* at 2 ("PTAB procedures are often more advantageous than federal court litigation in that they are faster [and] cheaper").

Conversely, the Board's resolution to leave invalidity based on patents and prior art publications on remand with the district court is not inexpensive. In fact, widely available studies demonstrate that this is the much more expensive approach—indeed, by an order of magnitude or more. AIPLA, *Report of the Economic Survey* 62-63 (2023) (Electrical/Computer PGR/IPR costs $350,000

---

addition to this case and *Hulu* itself, recent *Hulu*-based institution denials also include *Shopify Inc. v. DKR Consulting LLC*, IPR2025-00130, -00132, -00133, Paper 10 (PTAB May 29, 2025).

7

versus $3,875,000 for NPE litigation with more than $25 MM at risk); *see also* CRS

Report No. R48016 ("[IPRs and PGRs are] more streamlined than civil litigation,

with average legal costs typically in the hundreds of thousands of dollars (as opposed

to millions)"). The efficient result here is wait for the Federal Circuit's decision on

appeal and, only if necessary, proceed with the evaluating the Petition on the merits.

### III.    THE BOARD'S DENIAL WAS *ULTRA VIRES* AND IMPERMISSIBLY RETROACTIVE

#### A.    The *Ultra Vires Hulu* Rule Exceeds Statutory Authority

The Board's application of the *Hulu* rule—categorically denying institution

of IPRs where a district court has found claims invalid under § 101—exceeds the

authority granted by Congress. The AIA expressly limits IPRs to challenges based

on §§ 102 and 103 and prior art patents or printed publications. *See* 35 U.S.C.

§ 311(b). Congress intentionally excluded § 101 from the scope of IPRs, reserving

this defense for district courts. *Ingenico Inc. v. IOENGINE*, LLC, 136 F.4th 1354,

1365 (Fed. Cir. 2025) ("[I]nstead of allowing a petitioner to challenge a claim under

any theory of invalidity, Congress intentionally limited an IPR's scope to invalidity

challenges based on 'prior art consisting of patents or printed publications.'" (citing

35 U.S.C. § 311(b)).

Despite their limited scope, IPRs are important to "protect[] 'the public's

paramount interest in seeing that patent monopolies are kept within their legitimate

scope[.]'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S.

325, 336-37 (2018) (quoting *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 279-80 (2016)). By contrast, the *Hulu* rule effectively denies would-be petitioners an IPR as the cost of pursuing district court-only defenses in parallel. The *ultra vires* nature of such a rule is exemplified by the bipartisan criticism of the previous Director's far more modest regulatory proposals. *See* Oversight of the U.S. Patent and Trademark Office: Hearing before the Subcomm. on Courts, Intellectual Property and the Internet Committee of the Judiciary at 6 (Apr. 27, 2023), available at https://www.congress.gov/118/chrg/CHRG-118hhrg52123/CHRG-118hhrg52123.pdf ("Oversight Hearing Tr.") (remarks of Rep. Moran) ("I'm someone that believes strictly in separation of powers and think that, in this instance, I'm seeing a lot of overstep that I don't quite care for. I'd like to see a lot of what you've proposed come through the legislative process."); *id.* at 13 (remarks of Rep. Lofgren) ("We're the ones that write the statute, not the PTO."); *id.* at 13 (remarks of Chairman Issa) ("I share [the gentlelady's] feelings, that we're more than a stakeholder, and we have spoken as to that issue some 10 years ago."); *id.* at 16 (remarks of Rep. Ivey) ("I'm not clear on the source of your authority to follow that path or to issue these kinds of denials…. I know the AIA is a basis for the activity, but it does seem to be a bit of a stretch of the authority to do it."); *id.* at 4 (remarks of Rep. Johnson) ("I'm concerned that we have allowed law in this area to become too subjective and too subject to the particular views of different

9

administrations.").[7]

At bottom, *Hulu* effectively forces petitioners to forgo statutory defenses in Article III courts to preserve any right to have their IPR Petition decided on the merits—a result that is unsupported by statute, contrary to congressional intent, and criticized by courts. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018) (concluding that the practice of partial institution exceeded the "statutory limits" warned of in *Cuozzo*); *Facebook, Inc. v. Windy City Innovations*, LLC, 973 F.3d 1321, 1353 (Fed. Cir. 2020) ("There is no indication in the statute that Congress either intended to delegate broad substantive rulemaking authority to the Director to interpret statutory provisions through POP opinions or intended him to engage in any rulemaking other than through the mechanism of prescribing regulations."). The *Hulu* rule—formulated in a Director Review decision without notice and comment—is exactly the type of "shenanigans" the Supreme Court has cautioned against. *See Cuozzo*, 579 U.S. at 275.

## B.    Retroactive Application of *Hulu* Violates Due Process

The *Hulu* rule was announced and applied after Petitioner filed its IPR petition, upending settled expectations and depriving Petitioner of fair notice. At the

---

[7] *See also* Eileen McDermott, *House IP Subcommittee Suggests Vidal is Overstepping with Advance PTAB Proposals*, IP Watchdog (Apr. 27, 2023), available at https://ipwatchdog.com/2023/04/27/house-ip-subcommittee-suggests-vidal-overstepping-advanced-ptab-proposals/id=160123/.

10

time of filing, binding Office guidance (the June 21, 2022 Vidal Memo) assured

petitioners that institution would not be discretionarily denied based on parallel

district court litigation if compelling evidence of unpatentability was presented or a

*Sotera* stipulation was made.[8] And the Board practice specific to this very situation

was well-established. Specifically, because patent claims remain in force until *the

opportunity to appeal has been exhausted*, the previous Director rejected the

approach the Office is taking now. *See Volvo*, Paper 15 at 6 (opinion of Director

Vidal) ("[T]hese claims are subject to further judicial review and, therefore, are not

finally adjudicated"). Indeed, the previous Director's policy made sense because

"the district court's judgment of invalidity under 35 U.S.C. § 101 … does not raise

concerns of inefficient duplication of efforts or potentially inconsistent results

between the Board and the district court." *AviaGames, Inc., v. Skillz Platform Inc*.,

IPR2022-00530, Paper 14 at 2-3 (PTAB Mar. 2, 2023).[9] Accordingly, there is no

---

[8] Memorandum from Katherine K. Vidal, Under Secretary of Commerce for Intellectual Property and Director of the USPTO, to Members of the PTAB, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation (June 21, 2022), available at https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_d enials_aia_parallel_district_court_litigation_memo_20220621_.pdf [hereinafter Vidal Memo].

[9] Prior to *Hulu*, in addition to the Director's *Volvo* decision, cited above, the Board would grant institution even when a district court found the claims invalid under § 101. *See, e.g.*, *Reolink Innovation Inc. v. Throughtek Co., Ltd*., IPR2024-00509, Paper 6 at 2-3 (PTAB Aug. 9, 2024); *Apple Inc. v. Geoscope Techs. PTE. Ltd*., IPR2024-00255, Paper 14 at 9-10 (PTAB May 31, 2024); *BMW of N. Am., LLC v.*

authoritative basis—statutory or otherwise—to conclude that the Board should not consider Petitioner's IPR challenge.[10] Petitioner relied on this established, rational guidance as it existed and on established Board practice in timely preparing and filing its Petition.

The Board's retroactive application of the new, outcome-determinative *Hulu* rule to Petitioner's Petition violates fundamental principles of due process. *See PHH Corp. v. CFPB*, 839 F.3d 1, 41 (D.C. Cir. 2016) ("The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994) (holding that retroactivity turns on whether a new rule attaches new legal consequences to completed events). Indeed, the Board's abrupt reversal, without consideration of reliance interests or fair notice, is precisely the type of administrative action condemned by courts. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30-31 (2020).

---

*Michigan Motor Techs., LLC*, IPR2023-01224, Paper 15 at 9-10 (PTAB Feb. 15, 2024); *Meta Platforms, Inc. v. Angel Techs. Grp. LLC*, IPR2023-00059, Paper 16 at 3 (PTAB May 11, 2023).

[10] More so, controlling Federal Circuit authority holds that a prior invalidity finding does not preclude IPR. *See, e.g.*, *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1359-60 (Fed. Cir. 2020) (holding that a prior § 112 invalidity determination did not prevent an unpatentability determination under §§ 102 and 103); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020) (same).

12

Under the rules and guidance in effect at the time of filing, Petitioner's Petition would have been evaluated on the merits. The Board's retroactive application of *Hulu* has deprived Petitioner of its right to have its prior art challenges heard by technically trained judges, despite full compliance with all statutory and regulatory requirements, including payment of over $100,000 in filing fees. This is not a mere procedural inconvenience—it is a substantive deprivation of a valuable statutory right, applied to petitions filed long before the guidance changed, with significant consequences. *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (holding that applying a new rule "would have an impermissible retroactive effect if it would render invalid a notice that was valid when filed"). At the time this Petition was filed, it would have been considered on the merits under the rules, policies, and procedures that were in place.

The Office's about-face in access to PTAB proceedings applied retroactively is exactly the type of administrative action that the D.C. Circuit has condemned.[11] Writing for the majority, then-Judge Kavanaugh explained: "When a government

---

[11] *See also* Oversight Hearing Tr. at 4 (remarks of Rep. Johnson) ("The degree of change in PTAB proceedings under different Directors has done nothing to allay my fears. The patent system is not meant to be subject to frequent and unpredictable fluctuations. The point of a 20-year patent is to allow for planning, investment, and realization of new inventions. I'm concerned that we have allowed law in this area to become too subjective and too subject to the particular views of different administrations. This is not the stable basis on which our country's innovation ecosystem should rest.").

13

agency officially and expressly tells you that you are legally allowed to do something, but later tells you 'just kidding' and enforces the law *retroactively* against you and sanctions you for actions you took in reliance on the government's assurances, that amounts to a serious due process violation." *PHH*, 839 F.3d at 48. There is no doubt that the Board's decision to deny institution here pulled the rug out from under Petitioner—and other petitioners similarly situated—who relied on settled PTAB practice.

## IV.    CONCLUSION

The Director should respectfully grant review to hold Petitioner's Request in abeyance and order the parties to provide a status update once the appeal from the district court's decision has run, or, if rejecting this relief, the Director should reverse the Board's decision and grant institution.

Dated: July 2, 2025                    Respectfully submitted,

                                       */s/ William M. Fink*
                                       William M. Fink (Reg. No. 72,332)
                                       Benjamin M. Haber (Reg. No. 67,129)
                                       Robert F. Shaffer (*pro hac vice*
                                       anticipated)
                                       Attorneys for Petitioner

14

## CERTIFICATE OF SERVICE (37 C.F.R. § 42.6(e)(1))

I hereby certify that on July 2, 2025, I caused a true and correct copy of

the foregoing PETITIONER'S DIRECTOR REVIEW REQUEST to be served

electronically on counsel for Patent Owner at the following addresses:

| | |
|---|---|
| Jeffri A. Kaminski | Justin J. Oliver |
| JAKaminski@Venable.com | JJOliver@Venable.com |
| VENABLE LLP | VENABLE LLP |
| 600 Massachusetts Ave., NW | 600 Massachusetts Ave., NW |
| Washington, DC 20001 | Washington, DC 20001 |
| Tel: (202) 344-4048 | Tel: 202-721-5423 |
| Fax: (202) 344-8300 | Fax: 202-344-8300 |

Dated: July 2, 2025                              Respectfully submitted,

*/s/ William M. Fink*
William M. Fink (Reg. No. 72,332)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Fax: (202) 383-5414
E-Mail: tfink@omm.com
Attorney for Petitioner

15

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

HIGHLEVEL, INC.,

Petitioner

v.

ETISON LLC D/B/A CLICKFUNNELS,

Patent Owner

IPR2025-00234

Patent No. 10,846,357

_____

**PATENT OWNER'S AUTHORIZED RESPONSE
TO PETITIONER'S DIRECTOR REVIEW REQUEST**

# TABLE OF CONTENTS

**Page**

I.     THE DIRECTOR REVIEW REQUEST PRESENTS INSUFFICIENT SUPPORT FOR ITS REQUESTED RELIEF .................... 1

    A.    Petitioner's Reliance on *Ford* is Misplaced ......................................... 3

    B.    Multiple Board Panels Have Applied the Director's *Hulu* Decision in the Same Way .................................................................... 4

    C.    The *Hulu* Decision Emphasizes Administrative Efficiency ................. 4

II.    CONCLUSION ................................................................................ 5

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cuozzo Speed Techs., LLC v. Lee,*
    579 U.S. 261 (2016) ........................................................................................2

*Ford Motor Co. v. Ethanol Boosting Sys., LLC,*
    IPR2021-00339, Paper 17 (Nov. 21, 2022) ...................................................3

*Harmonic Inc. v. Avid Tech., Inc.,*
    815 F.3d 1356 (Fed. Cir. 2016) .....................................................................2

*Hulu, LLC v. Piranha Media Distribution, LLC,*
    IPR2024-01252, Paper 27 (Dir. Apr. 17, 2025) ...................................1, 2, 4, 5

*Hulu, LLC v. Piranha Media Distribution, LLC,*
    IPR2025-00081, Paper 12 (May 1, 2025) ......................................................4

*In re Palo Alto Networks, Inc.,*
    44 F.4th 1369 (Fed. Cir. 2022) .....................................................................2

*SAS Institute, Inc. v. Iancu,*
    584 U.S. 357 (2018) ......................................................................................2

*Shopify, Inc. v. DKR Consulting, LLC,*
    IPR2025-00130, Paper 10 (May 29, 2025) ...........................................1, 2, 4, 5

*United States v. Arthrex, Inc.,*
    594 U.S. 1 (2021) ..........................................................................................2

**Statutes**

35 U.S.C. § 101 .............................................................................1, 3, 4, 5

35 U.S.C. § 315(e) ...............................................................................5

**Rules**

USPTO, PTAB Director Review process, Section 1,
    https://www.uspto.gov/patents/ptab/decisions/director-review-
    process (last accessed July 15, 2025). ............................................................2, 3

## PATENT OWNER'S EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| 2001 | Prosecution History Excerpts of U.S. Patent Application No. 15/880,226 ("'357 file history") |
| 2002 | U.S. Patent Pub. No. 2017/0147364 ("Shaposhnikov") |
| 2003 | U.S. Patent Pub. No. 2008/0263135 ("Olliphant") |
| 2004 | U.S. Patent Pub. No. 2012/0151329 ("Cordasco") |
| 2005 | U.S. Patent No. 8,799,829 ("Grosz") |
| 2006 | Email from the Board authorizing Patent Owner's Notice of District Court Decision in the Counterpart Litigation (Apr. 29, 2025) |
| 2007 | Opinion and Order granting defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice. *Etison LLC v. HighLevel, Inc.*, Case No. 1:24-cv-00502, 2025 WL 961489, Docket No. 37 (D. Del. Mar. 31, 2025) |
| 2008 | Brief for Defendant in Support of its Motion to Dismiss, *Etison LLC v. HighLevel, Inc.*, Case No. 1:24-cv-00502, Docket No. 22 (D. Del. Jul. 29, 2024) |

iv

Petitioner's Director Review request should be denied. *Hulu, LLC v. Piranha Media Distribution, LLC* was correctly decided and properly applied in this proceeding. IPR2024-01252, Paper 27 (Dir. Apr. 17, 2025) (informative). Further, a separate Board panel applied *Hulu* in the same way as in the present case, declining to institute even where an appeal to the district court's subject matter eligibility determination was pending. *See Shopify, Inc. v. DKR Consulting, LLC*, IPR2025-00130, Paper 10, at 10-12 (May 29, 2025) ("All of the Challenged Claims in this proceeding having been found invalid [under § 101], we see no reason to institute *inter partes* review."). The efficiency espoused by Petitioner in its Request is not achieved by multiplying the invalidity proceedings for patent claims that have already been found invalid. Petitioner's request for relief is for the Director to allow Petitioner two bites at the invalidity apple, via the PTAB and district court, for claims that have already been found invalid. Petitioner's request to hold off on any decision while district court findings on invalidity are appealed would render IPRs a mere backup for cases when invalidity is found on any basis in the district court.

## I. THE DIRECTOR REVIEW REQUEST PRESENTS INSUFFICIENT SUPPORT FOR ITS REQUESTED RELIEF

"The Supreme Court and Federal Circuit Court of Appeals have unequivocally confirmed the Director's broad discretion, delegated to the Board in this proceeding, to decide whether to institute inter partes review. *See United States*

1

*v. Arthrex, Inc.*, 594 U.S. 1, 8–9 (2021); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016); *SAS Institute, Inc. v. Iancu*, 584 U.S. 357, 366 (2018); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016). As stated by the Federal Circuit:

The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution. For example, the Director is free, as in this case, to determine that for reasons of administrative efficiency an IPR will not be instituted, as agencies generally are free, for similar reasons, to choose not to initiate enforcement proceedings. And the Supreme Court has determined that such a decision is committed to agency discretion by law." *Shopify*, IPR2025-00130, Paper 10 at 9-10 (citation explainers omitted); *id* ("The *Hulu* decision is an example of how a related district court proceeding impacts 'the efficiency and integrity of the patent system….'"); *see also In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1375 (Fed. Cir. 2022) ("institution decisions are, by statute, the Director's to make and are only made by the Board as a matter of delegated authority.").

"[T]he Court in *Arthrex* made clear that 'the Director need not review every decision of the PTAB' nor did it require the Director to accept requests for review or issue a decision in every case.'" USPTO, PTAB Director Review process, Section

2

Appx087

1, https://www.uspto.gov/patents/ptab/decisions/director-review-process (citing *Arthrex*) (last accessed July 15, 2025).

### A.    Petitioner's Reliance on *Ford* is Misplaced

Petitioner requests the Director to hold a decision on the request in abeyance, relying on *Ford Motor Co. v. Ethanol Boosting Sys., LLC*, IPR2021-00339, Paper 17 (Nov. 21, 2022).  But the *Ford* decision was based on different facts, which are not present in the current case.  The requester in *Ford* framed the question there:

> Whether, as a matter of policy, the Board should hold its decision on institution in abeyance ***when a district court claim construction that was adopted by the Board is not final due to a pending appeal***.

*Ford*, IPR2021-00339, EX3002 (emphasis added) (emphasizing "petitions being filed prior to a claim construction decision in co-pending litigation.").  The Board's decision in *Ford* involved a claim construction determination relied on by both a district court and by the Board on institution.  Here, the question on appeal regarding patent eligibility under § 101 is unrelated to any grounds under which the Board can institute *inter partes* review.

There is no comparison.  Patent eligibility is not addressed in an IPR.  The claim construction gamesmanship alleged in *Ford* is not an issue in this case.  The Board's decision in *Ford* was made "under the unique circumstances of th[at] proceeding," which circumstances are not present in the current case. *Id*., DI at 12.

**B.  Multiple Board Panels Have Applied the Director's *Hulu* Decision in the Same Way**

*Hulu* was correctly decided and has been followed in other IPRs.  In *Shopify*, IPR2025-00130, Paper 8, the Board issued a Show Cause Order to Petitioner, asking **why** *Hulu* **should not** apply to the proceedings. *Id*., Paper 10 at 8 ("our intention to follow the new informative *Hulu* decision").  The *Shopify* Board followed *Hulu* and denied institution.  In a similar manner, the Board here correctly interpreted and applied *Hulu*.

Further, another panel stated that the Director's *Hulu* decision provides "clear guidance" on discretionary denial where the challenged claims have been held invalid in district court under § 101, "even though an appeal of that judgment is pending." *Hulu, LLC v. Piranha Media Distribution, LLC*, IPR2025-00081, Paper 12 at 8 (May 1, 2025).  And as the Board stated in the present case, the "relevant facts in this case are indistinguishable from those at issue in *Hulu*." DI, 6.

**C.  The *Hulu* Decision Emphasizes Administrative Efficiency**

The related district court litigation has concluded, with the claims at issue being found invalid.  Petitioner states that "a Federal Circuit reversal or remand on § 101 will require substantial work at the district court." DRR, 5.  But that fact only weighs against granting review here.  It is plainly more inefficient to conduct two proceedings, district court litigation and an IPR, as Petitioner would have it if the

4

hypothetical reversal and remand were to occur. Further, the Board cannot grant *inter partes* review based on § 101, which only highlights that Petitioner is not concerned with efficiency, but with using the PTAB as an invalidity backstop. The Board's policy is clear: it is more efficient to deny institution.

As stated in *Shopify*, "statutory estoppel [e.g., § 315(e)] does not prevent a petitioner from raising the same invalidity grounds in district court if the petition is denied." IPR2025-00130, Paper 10 at 10; *see also Hulu*, IPR2024-01252, Paper 27 at 2-3 (citing *Snap Inc. v. Blackberry Ltd.*, IPR2020-00392, Paper 8 at 10 (Jul. 13, 2020) ("the *Fintiv* factors examine whether we should deny institution based on the advanced status of an underlying district court case. In this instance, the district court case has concluded.")). Petitioner is not being deprived of its rights to challenge validity. Indeed, the claims at issue have already been found invalid. Thus, "where a district court already has found the challenged claims invalid, the efficiency and integrity of the patent system is best served by denying institution." *Hulu*, IPR2024-01252, Paper 27 at 2-3.

## II.    CONCLUSION

Accordingly, the Request for Director Review should be denied.

DATED: July 15, 2025                    Respectfully submitted,

By:  __/Jeffri A. Kaminski/__
Jeffri A. Kaminski
Reg. No. 42,709

5

Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
T 202-344-4048
F 202-344-8300
Email: JAKaminski@Venable.com

6

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of **PATENT OWNER'S AUTHORIZED RESPONSE TO PETITIONER'S DIRECTOR REVIEW REQUEST** was served on Petitioner by causing it to be sent by email to counsel for Petitioner at the following email addresses:

tfink@omm.com
rshaffer@omm.com
bhaber@omm.com

DATED: July 15, 2025                    Respectfully submitted,


By: __/Jeffri A. Kaminski/__
Jeffri A. Kaminski
Reg. No. 42,709
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
T 202-344-4048
F 202-344-8300
Email: JAKaminski@Venable.com

7

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

HIGHLEVEL, INC.,

Petitioner

v.

ETISON LLC D/B/A CLICKFUNNELS,

Patent Owner

IPR2025-00235

Patent No. 11,361,047

———————————————————————————————

**PATENT OWNER'S AUTHORIZED RESPONSE
TO PETITIONER'S DIRECTOR REVIEW REQUEST**

# TABLE OF CONTENTS

**Page**

I.  THE DIRECTOR REVIEW REQUEST PRESENTS INSUFFICIENT SUPPORT FOR ITS REQUESTED RELIEF ...................1

    A.  Petitioner's Reliance on *Ford* is Misplaced .........................................3

    B.  Multiple Board Panels Have Applied the Director's *Hulu* Decision in the Same Way ...................................................................................4

    C.  The *Hulu* Decision Emphasizes Administrative Efficiency .................4

II. CONCLUSION..................................................................................................5

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cuozzo Speed Techs., LLC v. Lee*,
    579 U.S. 261 (2016)...........................................................................................2

*Ford Motor Co. v. Ethanol Boosting Sys., LLC*,
    IPR2021-00339, Paper 17 (Nov. 21, 2022) ....................................................3

*Harmonic Inc. v. Avid Tech., Inc.*,
    815 F.3d 1356 (Fed. Cir. 2016) .......................................................................2

*Hulu, LLC v. Piranha Media Distribution, LLC*,
    IPR2024-01252, Paper 27 (Dir. Apr. 17, 2025) .....................................1, 2, 4, 5

*Hulu, LLC v. Piranha Media Distribution, LLC*,
    IPR2025-00081, Paper 12 (May 1, 2025).......................................................4

*In re Palo Alto Networks, Inc.*,
    44 F.4th 1369 (Fed. Cir. 2022) .......................................................................2

*SAS Institute, Inc. v. Iancu*,
    584 U.S. 357 (2018).........................................................................................2

*Shopify, Inc. v. DKR Consulting, LLC*,
    IPR2025-00130, Paper 10 (May 29, 2025)..............................................1, 2, 4, 5

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) .............................................................................................2

**Statutes**

35 U.S.C. § 101 ......................................................................................1, 3, 4, 5

35 U.S.C. § 315(e) ...........................................................................................5

**Rules**

USPTO, PTAB Director Review process, Section 1,
     https://www.uspto.gov/patents/ptab/decisions/director-review-
     process (last accessed July 15, 2025). ............................................................2, 3

iii

# PATENT OWNER'S EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| 2001 | Prosecution History Excerpts of U.S. Patent Application No. 15/880,226 ("'357 file history") |
| 2002 | Prosecution History Excerpts of U.S. Patent Application No. 17/247,041 ("'047 file history") |
| 2003 | U.S. Patent Pub. No. 2017/0147364 ("Shaposhnikov") |
| 2004 | U.S. Patent Pub. No. 2008/0263135 ("Olliphant") |
| 2005 | U.S. Patent Pub. No. 2012/0151329 ("Cordasco") |
| 2006 | U.S. Patent No. 8,799,829 ("Grosz") |
| 2007 | Email from the Board authorizing Patent Owner's Notice of District Court Decision in the Counterpart Litigation (Apr. 29, 2025) |
| 2008 | Opinion and Order granting defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice. *Etison LLC v. HighLevel, Inc.*, Case No. 1:24-cv-00502, 2025 WL 961489, Docket No. 37 (D. Del. Mar. 31, 2025) |
| 2009 | Brief for Defendant in Support of its Motion to Dismiss, *Etison LLC v. HighLevel, Inc.*, Case No. 1:24-cv-00502, Docket No. 22 (D. Del. Jul. 29, 2024) |

iv

Petitioner's Director Review request should be denied. *Hulu, LLC v. Piranha Media Distribution, LLC* was correctly decided and properly applied in this proceeding. IPR2024-01252, Paper 27 (Dir. Apr. 17, 2025) (informative). Further, a separate Board panel applied *Hulu* in the same way as in the present case, declining to institute even where an appeal to the district court's subject matter eligibility determination was pending. *See Shopify, Inc. v. DKR Consulting, LLC*, IPR2025-00130, Paper 10, at 10-12 (May 29, 2025) ("All of the Challenged Claims in this proceeding having been found invalid [under § 101], we see no reason to institute *inter partes* review."). The efficiency espoused by Petitioner in its Request is not achieved by multiplying the invalidity proceedings for patent claims that have already been found invalid. Petitioner's request for relief is for the Director to allow Petitioner two bites at the invalidity apple, via the PTAB and district court, for claims that have already been found invalid. Petitioner's request to hold off on any decision while district court findings on invalidity are appealed would render IPRs a mere backup for cases when invalidity is found on any basis in the district court.

## I.    THE DIRECTOR REVIEW REQUEST PRESENTS INSUFFICIENT SUPPORT FOR ITS REQUESTED RELIEF

"The Supreme Court and Federal Circuit Court of Appeals have unequivocally confirmed the Director's broad discretion, delegated to the Board in this proceeding, to decide whether to institute inter partes review. *See United States*

1

*v. Arthrex, Inc.*, 594 U.S. 1, 8–9 (2021); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016); *SAS Institute, Inc. v. Iancu*, 584 U.S. 357, 366 (2018); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016). As stated by the Federal Circuit:

The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution. For example, the Director is free, as in this case, to determine that for reasons of administrative efficiency an IPR will not be instituted, as agencies generally are free, for similar reasons, to choose not to initiate enforcement proceedings. And the Supreme Court has determined that such a decision is committed to agency discretion by law." *Shopify*, IPR2025-00130, Paper 10 at 9-10 (citation explainers omitted); *id* ("The *Hulu* decision is an example of how a related district court proceeding impacts 'the efficiency and integrity of the patent system….'"); *see also In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1375 (Fed. Cir. 2022) ("institution decisions are, by statute, the Director's to make and are only made by the Board as a matter of delegated authority.").

"[T]he Court in *Arthrex* made clear that 'the Director need not review every decision of the PTAB' nor did it require the Director to accept requests for review or issue a decision in every case.'" USPTO, PTAB Director Review process, Section

2

1, https://www.uspto.gov/patents/ptab/decisions/director-review-process (citing *Arthrex*) (last accessed July 15, 2025).

## A. Petitioner's Reliance on *Ford* is Misplaced

Petitioner requests the Director to hold a decision on the request in abeyance, relying on *Ford Motor Co. v. Ethanol Boosting Sys., LLC*, IPR2021-00339, Paper 17 (Nov. 21, 2022). But the *Ford* decision was based on different facts, which are not present in the current case. The requester in *Ford* framed the question there:

> Whether, as a matter of policy, the Board should hold its decision on institution in abeyance ***when a district court claim construction that was adopted by the Board is not final due to a pending appeal***.

*Ford*, IPR2021-00339, EX3002 (emphasis added) (emphasizing "petitions being filed prior to a claim construction decision in co-pending litigation."). The Board's decision in *Ford* involved a claim construction determination relied on by both a district court and by the Board on institution. Here, the question on appeal regarding patent eligibility under § 101 is unrelated to any grounds under which the Board can institute *inter partes* review.

There is no comparison. Patent eligibility is not addressed in an IPR. The claim construction gamesmanship alleged in *Ford* is not an issue in this case. The Board's decision in *Ford* was made "under the unique circumstances of th[at] proceeding," which circumstances are not present in the current case. *Id.*, DI at 12.

3

### B.    Multiple Board Panels Have Applied the Director's *Hulu* Decision in the Same Way

*Hulu* was correctly decided and has been followed in other IPRs.  In *Shopify*, IPR2025-00130, Paper 8, the Board issued a Show Cause Order to Petitioner, asking **why** *Hulu* **should not** apply to the proceedings. *Id*., Paper 10 at 8 ("our intention to follow the new informative *Hulu* decision").  The *Shopify* Board followed *Hulu* and denied institution.  In a similar manner, the Board here correctly interpreted and applied *Hulu*.

Further, another panel stated that the Director's *Hulu* decision provides "clear guidance" on discretionary denial where the challenged claims have been held invalid in district court under § 101, "even though an appeal of that judgment is pending." *Hulu, LLC v. Piranha Media Distribution, LLC*, IPR2025-00081, Paper 12 at 8 (May 1, 2025).  And as the Board stated in the present case, the "relevant facts in this case are indistinguishable from those at issue in *Hulu*." DI, 5.

### C.    The *Hulu* Decision Emphasizes Administrative Efficiency

The related district court litigation has concluded, with the claims at issue being found invalid.  Petitioner states that "a Federal Circuit reversal or remand on § 101 will require substantial work at the district court." DRR, 5.  But that fact only weighs against granting review here.  It is plainly more inefficient to conduct two proceedings, district court litigation and an IPR, as Petitioner would have it if the

4

hypothetical reversal and remand were to occur.  Further, the Board cannot grant *inter partes* review based on § 101, which only highlights that Petitioner is not concerned with efficiency, but with using the PTAB as an invalidity backstop.  The Board's policy is clear: it is more efficient to deny institution.

As stated in *Shopify*, "statutory estoppel [e.g., § 315(e)] does not prevent a petitioner from raising the same invalidity grounds in district court if the petition is denied." IPR2025-00130, Paper 10 at 10; *see also Hulu*, IPR2024-01252, Paper 27 at 2-3 (citing *Snap Inc. v. Blackberry Ltd.*, IPR2020-00392, Paper 8 at 10 (Jul. 13, 2020) ("the *Fintiv* factors examine whether we should deny institution based on the advanced status of an underlying district court case.  In this instance, the district court case has concluded.")).  Petitioner is not being deprived of its rights to challenge validity.  Indeed, the claims at issue have already been found invalid.  Thus, "where a district court already has found the challenged claims invalid, the efficiency and integrity of the patent system is best served by denying institution." *Hulu*, IPR2024-01252, Paper 27 at 2-3.

## II.    CONCLUSION

Accordingly, the Request for Director Review should be denied.

DATED: July 15, 2025                    Respectfully submitted,

                                        By: __*/Jeffri A. Kaminski/*__
                                        Jeffri A. Kaminski
                                        Reg. No. 42,709

5

Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
T 202-344-4048
F 202-344-8300
Email: JAKaminski@Venable.com

6

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of **PATENT OWNER'S AUTHORIZED RESPONSE TO PETITIONER'S DIRECTOR REVIEW REQUEST** was served on Petitioner by causing it to be sent by email to counsel for Petitioner at the following email addresses:

tfink@omm.com
rshaffer@omm.com
bhaber@omm.com

DATED: July 15, 2025                    Respectfully submitted,

By: ___/Jeffri A. Kaminski/___
Jeffri A. Kaminski
Reg. No. 42,709
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
T 202-344-4048
F 202-344-8300
Email: JAKaminski@Venable.com

7

Provided by Docket Alarm, Inc.

# HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels

## IPR2025-00234 | Patent Trial and Appeal Board

**Filed** Dec. 3, 2024

**Terminated** June 2, 2025

**Judges** Georgianna Braden, Jason Repko, and Matthew McNeill

**Case Type** Inter Partes Review

**Status** Institution Denied

**Challenged Patent** 15/880,226

**Patent No.** 10,846,357 *assignments*

**Tech Center** 2100

**Art Unit** 2141

**Inventors** Todd Dickerson, Russell Brunson, Ryan Montgomery

**Last Updated** 14 hours ago

| Filing Date | Filing and Exhibits |
|---|---|
| 8/13/2025 | Board Order Denying Director Review of Institution Decision 15: Order Denying Director Review of Institution Decision |
| 7/15/2025 | Patent Owner Other: other 14: Authorized Response to Director Review Request |
| 7/8/2025 | Board Exhibit 3100: Exhibit 3100 |
| 7/2/2025 | Petitioner Request for Director Review - Institution Decision 13: Request for Director Review - Institution Decision |
| 6/2/2025 | Board Director Discretionary Decision: Deny 11: EXPUNGED<br><br>**Event:** Petition Institution (Denied)<br><br>Board Institution Decision: Deny 12: Institution Decision: DECISION Denying Institution of Inter Partes Review 35 U.S.C. § 314 |
| 5/13/2025 | Petitioner Other: other 10: Petitioner's Reply in Support of IPR of U.S. Patent No. 10,846,357 |

Privacy - Terms

| Filing Date | Filing and Exhibits |
|---|---|
| 5/6/2025 | Patent Owner Other: other 9: Patent Owner's Notice to Board of District Court Decision in '357 Counterpart Litigation<br><br>Patent Owner Exhibit 2006: EX2006 - Email Authorizing Patent Owner's Notice to Board (Apr. 29, 2025)<br>Patent Owner Exhibit 2007: EX2007 - Opinion and Order (Dkt. 37) - Etison v. HighLevel, No. 1-24-cv-00502<br>Patent Owner Exhibit 2008: EX2008 - Defendant's Brief in Support of Motion to Dismiss (Dkt. 22) - Etison v. HighLevel |
| 4/4/2025 | Patent Owner Other: other 8: Patent Owner's Sur-Reply in Support of its Preliminary Response - IPR2025-00234 |
| 3/28/2025 | Petitioner Other: other 7: Preliminary Reply in Support of Petitioner's Petition for Inter Partes Review of U.S. Patent No. 10,846,357<br><br>Petitioner Exhibit 1033: Email from the Board authorizing Petitioner's Preliminary Reply (Mar. 21, 2025) |
| 3/11/2025 | Event:  Preliminary Response<br><br>Patent Owner POPR: filed 6: Patent Owner Preliminary Response - IPR2025-00234<br><br>Patent Owner Exhibit 2001: EX2001 - '357 File History<br>Patent Owner Exhibit 2002: EX2002 - US20170147364(A1) - Shaposhnikov<br>Patent Owner Exhibit 2003: EX2003 - US20080263135(A1) - Olliphant<br>Patent Owner Exhibit 2004: EX2004 - US20120151329(A1) - Cordasco<br>Patent Owner Exhibit 2005: EX2005 - US8799829(B2) - Grosz |
| 12/20/2024 | Patent Owner Notice: Power of Attorney 4: Notice: Patent Owner's Power of Attorney<br><br>Patent Owner Notice: Mandatory Notice 5: Notice: Patent Owner's Mandatory Notice |
| 12/11/2024 | Board Notice: Notice filing date accorded 3: Notice: Notice filing date accorded |

| Filing Date | Filing and Exhibits |
|---|---|
| 12/3/2024 | Petitioner Notice: Power of Attorney 1: Notice : Power of Attorney<br><br>Petitioner Petition: as filed 2: Petition : as filed<br><br>Petitioner Exhibit 1001: U.S. Patent 10,846,357 ("'357 patent")<br>Petitioner Exhibit 1002: Declaration of Dr. Kevin Almeroth<br>Petitioner Exhibit 1003: Curriculum Vitae of Dr. Kevin Almeroth<br>Petitioner Exhibit 1004: Prosecution History of the '357 Patent<br>Petitioner Exhibit 1005: U.S. Patent No. 9,147,004 ("Coursol")<br>Petitioner Exhibit 1006: U.S. Patent Application Pub. No. 2007/0061412 ("Karidi")<br>Petitioner Exhibit 1007: U.S. Patent Application Pub. No. 2014/0282049 ("Lyon")<br>Petitioner Exhibit 1008: U.S. Patent Application Pub. No. 2011/0288924 ("Thomas")<br>Petitioner Exhibit 1009: U.S. U.S. Patent No. 7,610,219 ("Sayed")<br>Petitioner Exhibit 1010: U.S. Patent No. 6,026,433 ("D'Arlach")<br>Petitioner Exhibit 1011: U.S. Patent No. 8,321,457 ("Tan")<br>Petitioner Exhibit 1012: Screenshot of Kajabi from the Internet Archive<br>Petitioner Exhibit 1013: Screenshot of Kajabi from the Internet Archive<br>Petitioner Exhibit 1014: U.S. Patent Application Pub. No. 2019/0028531 ("Nagar")<br>Petitioner Exhibit 1015: U.S. Application 62/536,403<br>Petitioner Exhibit 1016: U.S. Application 62/536,403 Appendix A<br>Petitioner Exhibit 1017: U.S. Application 62/536,403 Appendix C<br>Petitioner Exhibit 1018: U.S. Patent Application Pub. No. 2007/0299985 ("Craig")<br>Petitioner Exhibit 1019: U.S. Patent No. 6,029,141 ("Bezos")<br>Petitioner Exhibit 1020: Claim Mapping Table<br>Petitioner Exhibit 1021: Plaintiff's Infringement Contention Chart (Ex. B)<br>Petitioner Exhibit 1022: Plaintiff's Infringement Contention Chart (Ex. D)<br>Petitioner Exhibit 1023: U.S. Patent No. 5,715,314 ("Payne")<br>Petitioner Exhibit 1024: Website Navigation of Tools – A Decade of Design Trends 2002 to 2011<br>Petitioner Exhibit 1025: Comparative Study of Website Sitemap Feature as Design Issue<br>Petitioner Exhibit 1026: Controlled Experiments on the Web: Survey and Practical Guide<br>Petitioner Exhibit 1027: Google Optimize Product Overview<br>Petitioner Exhibit 1028: This Is Not a Test: Google Optimize Now Free – For Everyone<br>Petitioner Exhibit 1029: U.S. Patent No. 9,141,976 ("Urban")<br>Petitioner Exhibit 1030: U.S. Application 62/536,403 Concepts Appendix<br>Petitioner Exhibit 1031: Google Optimize Tutorial: How to Get Started Quickly<br>Petitioner Exhibit 1032: U.S. Patent Application Pub. No. 2013/0198679 ("Nurse") |

Provided by Docket Alarm, Inc.

# HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels

## IPR2025-00235 | Patent Trial and Appeal Board

**Filed** Dec. 3, 2024

**Terminated** June 2, 2025

**Judges** Georgianna Braden, Jason Repko, and Matthew McNeill

**Case Type** Inter Partes Review

**Status** Institution Denied

**Challenged Patent** 17/247,041

**Patent No.** 11,361,047 *assignments*

**Tech Center** 2100

**Art Unit** 2179

**Inventors** Russell Brunson, Todd Dickerson, Ryan Montgomery

**Last Updated** 1 day, 1 hour ago

| Filing Date | Filing and Exhibits |
|---|---|
| 8/13/2025 | Board Order Denying Director Review of Institution Decision 14: Order Denying Director Review of Institution Decision |
| 7/15/2025 | Patent Owner Other: other 13: Authorized Response to Director Review Request |
| 7/8/2025 | Board Exhibit 3100: Exhibit 3100 |
| 7/2/2025 | Petitioner Request for Director Review - Institution Decision 12: Request for Director Review - Institution Decision |
| 6/2/2025 | **Event:** **Petition Institution (Denied)**<br><br>Board Institution Decision: Deny 11: Institution Decision: DECISION Denying Institution of Inter Partes Review 35 U.S.C. § 314 |
| 5/13/2025 | Petitioner Other: other 10: Petitioner's Reply in Support of IPR of U.S. Patent No. 11,361,047 |
| 5/6/2025 | Patent Owner Other: other 9: Patent Owner's Notice to Board of District Court Decision in '047 Counterpart Litigation<br><br>Patent Owner Exhibit 2007: EX2007 - Email Authorizing Patent Owner's Notice to Board (Apr. 29, 2025)<br>Patent Owner Exhibit 2008: EX2008 - Opinion and Order (Dkt. 37) - Etison v. HighLevel, No. 1-24-cv-00502<br>Patent Owner Exhibit 2009: EX2009 - Defendant's Brief in Support of Motion Dismiss (Dkt. 22) - Etison v. HighLevel |

| Filing Date | Filing and Exhibits |
|---|---|
| 4/4/2025 | Patent Owner Other: other 8: Patent Owner's Sur-Reply in Support of its Preliminary Response - IPR2025-00235 |
| 3/28/2025 | Petitioner Other: other 7: Preliminary Reply in Support of Petitioner's Petition for Inter Partes Review of U.S. Patent No. 11,361,047 <br><br> Petitioner Exhibit 1033: Email from the Board authorizing Petitioner's Preliminary Reply (Mar. 21, 2025) |
| 3/12/2025 | Patent Owner POPR: filed 6: Etison LLC dba Clickfunnels '047 POPR - IPR2025-00235 <br><br> Patent Owner Exhibit 2001: EX2001 - US10846357 File History <br> Patent Owner Exhibit 2002: EX2002 - '047 File History <br> Patent Owner Exhibit 2003: EX2003 - US20170147364(A1) - Shaposhnikov <br> Patent Owner Exhibit 2004: EX2004 - US20080263135(A1) - Olliphant <br> Patent Owner Exhibit 2005: EX2005 - US20120151329(A1) - Cordasco <br> Patent Owner Exhibit 2006: EX2006 - US8799829(B2) - Grosz |
| 12/20/2024 | Patent Owner Notice: Power of Attorney 4: Notice: Patent Owner's Power of Attorney <br><br> Patent Owner Notice: Mandatory Notice 5: Notice: Patent Owner's Mandatory Notice |
| 12/12/2024 | Board Notice: Notice filing date accorded 3: Notice: Notice filing date accorded |

| Filing Date | Filing and Exhibits |
|---|---|
| 12/3/2024 | Petitioner Notice: Power of Attorney 1: Notice : Power of Attorney<br><br>Petitioner Petition: as filed 2: Petition : as filed<br><br>Petitioner Exhibit 1001: U.S. Patent 11,361,047 ("'047 patent")<br>Petitioner Exhibit 1002: Declaration of Dr. Kevin Almeroth<br>Petitioner Exhibit 1003: Curriculum Vitae of Dr. Kevin Almeroth<br>Petitioner Exhibit 1004: Prosecution History of the '047 Patent<br>Petitioner Exhibit 1005: U.S. Patent No. 9,147,004 ("Coursol")<br>Petitioner Exhibit 1006: U.S. Patent Application Pub. No. 2007/0061412 ("Karidi")<br>Petitioner Exhibit 1007: U.S. Patent Application Pub. No. 2014/0282049 ("Lyon")<br>Petitioner Exhibit 1008: U.S. Patent Application Pub. No. 2011/0288924 ("Thomas")<br>Petitioner Exhibit 1009: U.S. U.S. Patent No. 7,610,219 ("Sayed")<br>Petitioner Exhibit 1010: U.S. Patent No. 6,026,433 ("D'Arlach")<br>Petitioner Exhibit 1011: U.S. Patent No. 8,321,457 ("Tan")<br>Petitioner Exhibit 1012: Screenshot of Kajabi from the Internet Archive<br>Petitioner Exhibit 1013: Screenshot of Kajabi from the Internet Archive<br>Petitioner Exhibit 1014: U.S. Patent Application Pub. No. 2019/0028531 ("Nagar")<br>Petitioner Exhibit 1015: U.S. Application 62/536,403<br>Petitioner Exhibit 1016: U.S. Application 62/536,403 Appendix A<br>Petitioner Exhibit 1017: U.S. Application 62/536,403 Appendix C<br>Petitioner Exhibit 1018: U.S. Patent Application Pub. No. 2007/0299985 ("Craig")<br>Petitioner Exhibit 1019: U.S. Patent No. 6,029,141 ("Bezos")<br>Petitioner Exhibit 1020: Claim Mapping Table<br>Petitioner Exhibit 1021: Plaintiff's Infringement Contention Chart (Ex. B)<br>Petitioner Exhibit 1022: Plaintiff's Infringement Contention Chart (Ex. D)<br>Petitioner Exhibit 1023: U.S. Patent No. 5,715,314 ("Payne")<br>Petitioner Exhibit 1024: Website Navigation of Tools – A Decade of Design Trends 2002 to 2011<br>Petitioner Exhibit 1025: Comparative Study of Website Sitemap Feature as Design Issue<br>Petitioner Exhibit 1026: Controlled Experiments on the Web: Survey and Practical Guide<br>Petitioner Exhibit 1027: Google Optimize Product Overview<br>Petitioner Exhibit 1028: This Is Not a Test: Google Optimize Now Free – For Everyone<br>Petitioner Exhibit 1029: U.S. Patent No. 9,141,976 ("Urban")<br>Petitioner Exhibit 1030: U.S. Application 62/536,403 Concepts Appendix<br>Petitioner Exhibit 1031: Google Optimize Tutorial: How to Get Started Quickly<br>Petitioner Exhibit 1032: U.S. Patent Application Pub. No. 2013/0198679 ("Nurse") |

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

———

No. 1:24-cv-00502

———

**Etison LLC,**
*Plaintiff,*

v.

**HighLevel, Inc.,**
*Defendant.*

———

## OPINION AND ORDER

Before the court is defendant's motion to dismiss for failure to state a claim (Doc. 21). The motion turns on whether the patents in suit—describing a website-creation system—concern abstract ideas that are patent ineligible under 35 U.S.C. § 101. For the reasons set forth below, defendant's motion is granted, and this case is dismissed.

### I. Background

Plaintiff Etison LLC, doing business as ClickFunnels, owns by assignment Patent Nos. 10,846,357 and 11,361,047, two related patents that describe a "website creation system for creating websites having at least one series of directional webpages and related methods." Docs. 19-1 at 1:1–4 ('357 patent), 19-3 at 1:1–4 ('047 patent). Plaintiff brought this action against defendant HighLevel, alleging infringement of "at least" claim 1 of both patents. Doc. 19 at 11–12. Plaintiff did not name with specificity any additional claims that are accused of being infringed.

Each claim 1 is largely equivalent. It describes a system that—in response to a user selecting the option to create a website—displays a plurality of website types, each including a series of directional webpages to entice end-user interaction. Docs. 19-1 at 35:50–36:2, 19-3 at 36:17–29. Once a user selects a website type, the system then displays a plurality of website templates based on the selected website type. Docs. 19-1 at 36:3–7, 19-3 at 36:32–35. After the user selects a particular website template, the system

**Appx111**

generates and launches a generic website based on the selections. Doc. 19-1 at 36:8–20, 19-3 at 36:36–40. Claim 1 of the '357 patent also includes a website editor graphical user interface that allows users to customize the generic website. Doc. 19-1 at 36:12–27.

In total, the '357 patent consists of three independent and seventeen dependent claims. Independent claim 12 is a system claim comprising "at least one processor" and "at least one non-transitory computer-readable storage medium storing instructions thereon that, when executed by the at least one processor, cause the system to" perform the steps in claim 1. Doc. 19-1 at 37:7–58. Independent claim 16 describes a "non-transitory computer-readable medium storing instructions thereon that, when executed by at least one processor, cause the at least one processor" to perform the steps in claim 1. *Id.* at 38:3–49. "The ['357] patent's dependent claims include additional limitations that address media objects or graphical user interface elements on a webpage (claims 2, 9, 11, 13, 15, 17); display additional webpages to a user in a single tab . . . (claims 3–5, 18); assign values to guests (claim 4); organize webpages in a certain sequence (claims 6–7, 19–20); restrict website access based on certain user criteria (claims 8–9, 11); restrict website access based on certain user criteria (claims 8–9, 11); or send a communication (claims 10, 14)." Doc. 22 at 9.

Below is claim 1 of the '357 patent in full:

**1.** A method, comprising:

providing, to a user for display on a client device, via a website creation system, a user dashboard comprising a selectable option to create a website;

receiving a selection of the selectable option to create a website;

in response to receiving the selection of the selectable option to create a website, providing, to the user for display on the client device, a plurality of website types for selection;

- 2 -

**Appx112**

receiving a selection of a website type of the plurality of website types,

wherein each website type of the plurality of website types comprises a series of directional webpages configured to cause an end user interaction with a website,

wherein the series of directional webpages of each website type of the plurality of websites types comprises a unique plurality of sequential webpages configured to be provided sequentially one after another;

in response to receiving the selection of a website type of the plurality of website types, providing, to the user for display on the client device, a plurality of website templates for selection, the plurality of website templates being particular to the selected website type;

receiving a selection of a website template of the plurality of website templates and the series of directional webpages of the selected website type;

in response to receiving the selection of a website template, generating and launching a generic website based on the selected website type and selected website template and providing, to the user for display on the client device, a website editor graphical user interface, the website editor graphical user interface comprising a plurality of webpage tabs, each webpage tab of the plurality of webpage tabs representing a webpage of the series of directional webpages;

receiving at least one indication of a user interaction editing at least one webpage of the series of directional webpages; and

in response to receiving the at least one indication of a user interaction editing at least one webpage of the series of directional webpages, editing the launched generic website to create a customized website.

Doc. 19-1 at 35:51–36:27.

**Appx113**

The '047 patent similarly consists of three independent and seventeen dependent claims. Independent claims 14 and 18 of the '047 patent include the same limitations as claim 1 but in system form and in "non-transitory computer-readable" form, respectively. Doc. 19-3 at 37:26–56, 38:16–41. "Similar to its sister patent, the ['047] patent's dependent claims include the same additional limitations that address the design or display of the website or webpage (claims 2–4, 12, 16–17); display additional webpages to a user in a single tab . . . (claims 5–8); assign values to guests (claim 7); organize webpages in a certain sequence (claims 9–10, 15, 19–20); restrict website access based on certain user criteria (claims 11–12); or send a communication (claim 13)." Doc. 22 at 10–11.

Below is claim 1 of the '047 patent in full:

**1.** A method, comprising:

receiving a selection to create a website;

responsive to receiving the selection to create a website, providing a plurality of website types for selection,

wherein each website type of the plurality of website types comprises a series of directional webpages configured to cause an end user interaction with a website, and

wherein the series of directional webpages of each website type of the plurality of website types comprises a unique plurality of sequential webpages configured to be provided sequentially one after another;

receiving a selection of a website type of the plurality of website types;

responsive to receiving the selection of a website type of the plurality of website types, providing a plurality of website templates for selection, the plurality of website templates being particular to the selected website type;

receiving a selection of a website template of the plurality of website templates; and

**Appx114**

> in response to receiving the selection of a website tem-
> plate, generating and launching a website based on the
> selected website type and selected website template.

Doc. 19-3 at 36:18-40.

According to plaintiff, the asserted invention provides bene-
fits over prior-art systems where users were often required to
"hire two or more different companies to develop and generate
different portions of the website." Doc. 19 at 3 (quoting Docs. 19-
1 at 1:15–19, 19-3 at 1:23–27). The patent specifications claim that
"[b]ecause the website creation system of the present disclosure
enables a user to create, within a single system, a website that in-
cludes at least one series of directional webpages ordered and de-
signed to entice particular user interaction, the website creation
system is advantageous over conventional website creation sys-
tems." Docs. 19-1 at 3:18–23, 19-3 at 3:26–31. In addition, because
of this streamlined functionality, "the [claimed] website creation
system reduces required processing power, memory, and commu-
nication resources needed to facilitate creating websites." Docs.
19-1 at 3:24–28, 19-3 at 3:32–36.

Defendant has moved to dismiss for failure to state a claim,
Doc. 21, arguing that the patents concern abstract ideas and are
therefore subject-matter ineligible, Doc. 22 at 7. Specifically, de-
fendant asserts that claim 1 merely describes the common process
of filtering information based on user preferences to generate a
website. *Id.* Plaintiff responds that that this is an oversimplifica-
tion because claim 1 describes "particular features performed in a
particular order" that will ultimately enhance computer perfor-
mance. Doc. 24 at 8. The court heard argument on the motion on
January 24, 2025, and now decides it.

## II. Analysis

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue
of law" and is thus generally amenable to resolution at the motion-
to-dismiss stage. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280,
1289 (Fed. Cir. 2024). Although "patent eligibility . . . may in-
volve underlying questions of fact," a patent "may be determined

- 5 -

ineligible at the Rule 12(b)(6) stage when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358–59 (Fed. Cir. 2020) (quotation marks omitted).

## A. Preliminary considerations

### 1. Representativeness

According to defendant, claim 1 of the '357 patent is representative of all claims of both asserted patents. Doc. 22 at 12–13. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F. 3d 1352, 1360 (Fed. Cir. 2017)). To contest a reasonable assertion of representativeness, the patent owner must present "a non-frivolous argument that the eligibility of the purported representative claim does not fairly represent all claims in the group for purposes of eligibility." *Id.* at 1291. Once this showing is made, "the patent challenger bears the burden to prove either that (i) the representative claim is, in fact, representative . . . ; or (ii) each separate claim . . . is ineligible for patenting." *Id.*

Plaintiff argues that claim 1 of the '037 patent is not representative because it "does not include the limitations of Claim 13 of the '357 patent and Claim 16 of the '047 patent of one or more triggers and at least one event that results from the one or more triggers." Doc. 24 at 10 (quotation marks omitted) (citing Docs. 19-1 at 37:59–62, 19-3 at 38:6-10). However, these limitations only "introduce conventional computer activities," namely, the triggering of an event in response to an action by a user. *Mobile Acuity*, 110 F. 4th at 1291. Furthermore, "the other independent claims in each patent merely recite the steps performed in claim 1 of their respective patent but in the form of a 'system' or 'non-transitory computer-readable medium' claim." Doc. 14 at 13. Plaintiff has

- 6 -

**Appx116**

thus failed to provide any nonfrivolous argument as to why claim 1 of the '357 patent is not representative.

Even going beyond plaintiff's arguments on this point, however, the only significant difference between claim 1 of both patents is that claim 1 of the '357 patent features a website editor graphical user interface. *Compare* Doc. 19-1 at 35:51–36:27, *with* Doc 19-3 at 36:18–40. However, the mere possibility of editing the generic website—a conventional computer function—does not change the ultimate eligibility analysis or the underlying idea at the center of both patents: a website-creation system where users select from an array of website types and templates to arrive at a generic website. Indeed, because claim 1 of the '047 patent is otherwise equivalent, it cannot survive an eligibility inquiry if claim 1 of the '357 patent is ineligible—the less detailed claim cannot survive if the more detailed fails. Both patents also share a common specification, which provides "some additional indication of representativeness." *See PPS Data, LLC v. Jack Henry & Assocs. Inc.*, 404 F. Supp. 3d 1021, 1035 (E.D. Tex. 2019). The court concludes that claim 1 of the '357 patent is representative of all claims of both asserted patents.

### 2. Claim construction

Plaintiff argues that "at least the following terms need to be construed: 'a series of directional webpages,' 'a unique plurality of sequential webpages,' and 'triggers.'" Doc. 24 at 11. However, as defendant points out, Doc. 28 at 6, the Federal Circuit recently held that "[t]o defeat a motion to dismiss based on the purported need for claim construction, a patentee must propose a specific claim construction and explain why any dispute must be resolved before the scope of the claims can be understood for § 101 purposes." *Mobile Acuity*, 110 F.4th at 1293–94 (cleaned up). Plaintiff has failed to explain why these terms would need construction or how any dispute over their meaning would materially change the § 101 analysis. Furthermore, this is a case where any claim construction would "involve[] little more than the application of the widely accepted meaning of commonly understood words."

- 7 -

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Accordingly, the court concludes that claim construction is not necessary here.

## B. Patentability

Patentable subject matter is defined under the Patent Act: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (cleaned up).

When analyzing patentability under § 101, a court should first "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–78 (2012)). If this is indeed the case, the court should then consider whether the elements of each claim—"both individually and 'as an ordered combination'"—describe an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72–73). Importantly, a court need not proceed to this second step if the claims are not directed to patent-ineligible concepts and thus satisfy *Alice* step one. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017).

### 1. *Alice* step one

To determine whether claims are "directed to patent-ineligible subject matter," such as an abstract idea, the court should "look to the character of the claims as whole," including the patent's specification. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Enfish v. Microsoft Corp.*,

822 F.3d 1327, 1335 (Fed. Cir. 2016)). Under *Alice* step one, the inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Id.* In other words, "whether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke general processes and machinery.'" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020). Additionally, the Supreme Court and Federal Circuit "have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

"Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). Thus, the abstractness line is best discerned by considering illustrative precedent from the Supreme Court and Federal Circuit. For example, in *Alice*, the Supreme Court held that the "use of a third party to mitigate settlement risk" was an abstract idea because "the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce.'" 573 U.S. at 219 (cleaned up) (quoting *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).

More relevantly, the Federal Circuit has held that a computer system for monitoring electric grids was directed to the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *see also, e.g., IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (concluding that filtering map data based on a user selection is abstract); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–15 (Fed. Cir. 2014) (holding that a claim describing 11 steps for selecting and displaying "an advertisement in exchange for access

- 9 -

to copyrighted media" is abstract); *Broadband*, 113 F.4th at 1368 (holding that "receiving metadata and organizing the display of video content based on that metadata is abstract"). Similarly, the Federal Circuit has reasoned that a method of manipulating computer data to combine and display previously incompatible documents in an editable format is unpatentable because "the underlying concept . . . merely encompasse[d] the abstract idea itself of organizing, displaying, and manipulating data of particular documents." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017).

As defendant points out, Doc. 22 at 16–17, the District of Delaware has found "offering more meaningful information to an individual based on his own preferences" to be abstract. *Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 662 (D. Del. 2016) (holding that "offering more meaningful information" to Facebook users based on user preferences and related community groups is abstract); *see also IPA Techs., Inc. v. Amazon.com, Inc.*, 307 F. Supp. 3d 356, 367 (D. Del. 2018) (holding that "transmitting electronic data to a user in response to a spoken request from the user" is abstract).

Conversely, in *DDR Holdings*—which plaintiff relies upon—the Federal Circuit held that a composite webpage combining "certain visual elements of a 'host' website with content of a third-party merchant" was not abstract. 773 F.3d at 1248, 1259. Specifically, the Federal Circuit noted that this was an "inventive concept for resolving [the] particular Internet-centric problem" of retaining website visitors that would normally be transported away from a host website when clicking on an advertisement. *Id.* at 1259.

According to defendant, claim 1 of the '357 patent falls on the abstract side of this line because it only "gathers selection criteria, presents it to a user, then based on the user's selections, displays the results." Doc. 22 at 14. Plaintiff responds that this is an "oversimplification" and "runs afoul of the Federal Circuit's warning" that "describing the claims at such a high level of abstraction and

untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." Doc. 24 at 7, 13–14 (quoting *Enfish*, 822 F.3d at 1337).

The court agrees that claim 1 is directed to an unpatentable abstract idea. To review, claim 1 describes a method where a user is presented a plurality of website types and, after making a selection of a particular website type, is then presented a plurality of website templates. Doc. 19-1 at 35:51–36:27. After the user selects a template, a generic website is launched. *Id.* Finally, the user can make edits through a website editor graphical user interface to arrive at a final, customized website. *Id.*

At base, this is an example of filtering information based on user preferences to arrive at a final result. Like the third-party settlement mitigation in *Alice*, 573 U.S. at 219, "[t]he concept of data collection, recognition, and storage is undisputedly well-known." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

Indeed, plaintiff's attempt to distinguish *IBM*, one of defendant's best cases on this point, is unavailing. In *IBM*, the Federal Circuit determined that the claims were directed to "presenting a map, having a user select a portion of that map, and then synchronizing the map and its corresponding list to display a more limited data set to the user." *IBM,* 50 F.4th at 1378. Plaintiff argues that claim 1 here does not "simply display 'information' from which a user can 'drill down' to obtain a subset of that information," and notes that a website type "comprises a series of directional webpages," each of which "comprises a unique plurality of sequential webpages." Doc. 24 at 16. However, it is not clear how these limitations on the overall set of data render the overarching process of filtering website types and templates based on user preferences any less abstract. *See Intell. Ventures I*, 850 F.3d at 1341 (holding that, although the use of certain data might "add a degree of particularity to the claims," the "underlying concept" of manipulating and displaying data was still abstract).

- 11 -

**Appx121**

*DDR Holdings* does not carry the day for plaintiffs because that case featured an unconventional technological solution to "override[] the routine . . . sequence of events ordinarily triggered by the click of a hyperlink." 773 F.3d at 1258. The solution here—allowing users to choose from a selection of website templates and types—is as conventional as choosing a vendor. Plaintiff implies that its claims are similar to those in *DDR* because both address problems unique to the internet—for example, users visiting multiple online vendors to design different parts of a website. Doc. 24 at 16. However, although website creation is unique to the internet, visiting multiple vendors to design a product is not. The idea of providing consumers an array of products that include discrete, combined components dates back to antiquity. As the Federal Circuit in *DDR* cautioned, "not all claims purporting to address Internet-centric challenges are eligible for patent." 773 F.3d at 1258.

Plaintiff notes that the Federal Circuit has "found [patentable] a technical advantage 'with minimal user input.'" Doc. 24 at 14 (quoting *CosmoKey Sols. GmbH v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021)). Specifically, in *CosmoKey*, the Federal Circuit considered an authentication method where a user activates an authentication function on a mobile device. 15 F.4th at 1093–94. The district court had concluded that the claims were directed to the abstract idea of authentication. *Id.* at 1097. The Federal Circuit cautioned against overgeneralizing claims, pointing out that "the claims and written description suggest that the focus of the claimed advance is activation of the authentication function, communication of the activation within a predetermined time, and automatic deactivation of the authentication function." *Id.* However, the Federal Circuit also explicitly declined to answer whether this constituted an abstract idea. *Id.*

Regardless, the focus of the claim here is to design a website by going through multiple, iterative steps where users select website types and templates. Far from the new authentication function in *CosmoKey*, filtering website types and templates based on

- 12 -

user preferences to arrive at a final generic website is undoubtedly abstract. The court thus proceeds to step two of *Alice*.

### 2. *Alice* step two

In *Alice* step two, the court considers whether the claim contains an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (alteration in original). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). For example, in *Mayo*, "methods for determining metabolite levels were already 'well known in the art,' and the process at issue amounted to 'nothing significantly more than an instruction to doctors to apply the applicable laws when treating their patients.'" *Id.* at 221–22 (quoting *Mayo*, 566 U.S. at 79). So too in *Alice*, where "the claims at issue amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (quotation marks omitted).

Plaintiff argues that the claims are inventive because they include technical solutions such as website types comprising a series of directional webpages. Doc. 24 at 18. According to plaintiff, these solutions allow a user to create a website in one system, allegedly improving the computer system itself through "reduce[d] required processing power, memory, and communication resources needed to facilitate creating websites." *Id.* at 19 (alteration in original) (quoting Doc. 19-1 at 3:27–28). The patent specification suggests that this "results in less data transfer and data bandwidth usage." Doc 19-1 at 3:29–31.

Plaintiff's argument, however, is fatally undermined by the Federal Circuit's reasoning in *Intellectual Ventures I*. There, the court concluded that a process for combining different online document types into a single, editable dynamic document did not feature an inventive concept. *Intell. Ventures I*, 850 F.3d at 1342. The court reasoned that the claims in that case "recite[d] no more than

- 13 -

**Appx123**

routine steps of data collection and organization using generic computer components and conventional computer data processing activities." *Id.* So too here. Directional and sequential webpages as well as website types and templates are all generic computer functions or data types. As plaintiff itself admits, it "does not claim to have invented webpages." Doc. 24 at 21; *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (finding that claims recited "generic computer, network and Internet components" where plaintiff "[did] not assert that it invented local computers, ISP servers, networks, network accounts, or filtering"). Claim 1's reference to a website editor graphical user interface is also not inventive. *See Intell. Ventures I*, 850 F.3d at 1341. The specification also does not describe any of these components as inventive.

Additionally, the claims here are distinguishable from cases where an inventive concept has been found. For example, in *Amdocs (Israel) v. Openet Telecom*, the technological improvement "depend[ed] not only upon the invention's distributed architecture, but also . . . upon the network devices and gatherers—even though these may be generic—working together in a distributed manner." 841 F.3d 1288, 1301 (Fed. Cir. 2016). In other words, *Amdocs* turned on a finding that generic components were working together in an inventive way. *See also Bascom*, 827 F.3d at 1349–50 (holding that the "non-conventional and non-generic arrangement of known, conventional pieces" made otherwise generic computer components inventive). Here, instead, any improvement in computer function flows not from how directional and sequential webpages are combined. Rather, the improvement comes from the filtering of already-existing data structures upon the selection of a user.

Simply put, the claims here "merely recite the abstract idea of filtering content along with the requirement to perform it . . . on a set of generic computer components." *Id.* at 1350. According to the patent specification, the alleged improvements in computer function stem from the fact that the system here allows a user to

create a website including directional webpages within a single system. Doc. 19-1 at 3:18–40. This result is achieved because the website templates all include directional webpages. However, there is no explanation as to how such templates are created based on the directional webpages. The claims here present "only a result-oriented solution, with insufficient detail for how a computer accomplishes it." *Intell. Ventures I*, 850 F.3d at 1342.

The court concludes that the facts here, even when viewed most favorably to plaintiff, fail to establish a patentably inventive concept. Thus, the patents fail *Alice* step two, and they are subject-matter ineligible.

### III. Conclusion

The court concludes that the '357 patent and the '047 patent are directed to patent-ineligible material under case law interpreting 35 U.S.C. § 101. Therefore, defendant's motion to dismiss (Doc. 21) is granted, and the amended complaint (Doc. 19) is dismissed with prejudice. Any pending motions are denied as moot.

*So ordered by the court on March 31, 2025.*

J. CAMPBELL BARKER
United States District Judge

**Appx125**

Provided by Docket Alarm, Inc.

# Etison LLC v. HighLevel, Inc.

## 1:24-cv-00502 | Delaware District Court

**Division** Wilmington

**Judge** Judge John Campbell Barker

**Filed** April 22, 2024

**Terminated** March 31, 2025

**Case Flags** CLOSED, APPEAL, and PATENT

**Last Updated** 3 seconds ago

**Nature of Suit** 830 Patent

**Cause** 35:271 Patent Infringement

**Jury Demand** Plaintiff

| Filing Date | # | Docket Text |
|---|---|---|
| 8/15/2025 | 43 | 🔨 **Order**<br>ORDER of USCA as to 40 Notice of Appeal (Federal Circuit) filed by Etison LLC. Decision of USCA: ORDER filed denying motion to expedite 14 , 17 . Service as of this date by the Clerk of Court. (jfm) (Entered: 08/15/2025) |
| 4/30/2025 | 42 | NOTICE of Change of Law Firm Affiliation for John M. Hintz by Etison LLC (Flynn, Michael) (Entered: 04/30/2025) |
| 4/29/2025 | 41 | NOTICE of Docketing Record on Appeal from USCA for the Federal Circuit re 40 Notice of Appeal (Federal Circuit) filed by Etison LLC. USCA Case Number 25-1711 (jfm) (Entered: 04/30/2025) |
| 4/28/2025 | | Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 40 Notice of Appeal. (mrr) (Entered: 04/28/2025) |
| 4/28/2025 | | APPEAL - Credit Card Payment received re 40 Notice of Appeal (Federal Circuit) filed by Etison LLC. ( Filing fee $605, receipt number ADEDC-4672336.) (Flynn, Michael) (Entered: 04/28/2025) |
| 4/28/2025 | 40 | NOTICE OF APPEAL to the Federal Circuit of 38 Judgment,, Terminated Case, 37 Memorandum and Order,, Terminate Motions, . Appeal filed by Etison LLC. (Flynn, Michael) (Entered: 04/28/2025) |
| 3/31/2025 | 39 | FINAL Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) 10,846,357 B2; 11,361,047 B2. (Attachments: # 1 Opinion and Order, # 2 Final Judgment)(cdd) (Entered: 03/31/2025) |

Privacy - Terms

| Filing Date | # | Docket Text |
|---|---|---|
| 3/31/2025 | 38 | 📌 **Motion for Judgment**<br><br>Final JUDGMENT: The court, having rendered its decision by separate order, hereby enters judgment that plaintiffs lawsuit is dismissed with prejudice on the basis that United States Patent Nos. 10,846,357 and 11,361,047 are directed to patent-ineligible material under case law interpreting 35 U.S.C. § 101. The clerk of court is directed to close this case. Signed by Judge John Campbell Barker on 3/31/2025. (cdd) (Entered: 03/31/2025) |
| 3/31/2025 | 37 | 📌 **Order**<br><br>Opinion and Order: The court concludes that the 357 patent and the 047 patent are directed to patent-ineligible material under case law interpret-ing 35 U.S.C. § 101. Therefore, defendants motion to dismiss (Doc. 21 ) is GRANTED, and the amended complaint (Doc. 19 ) is DISMISSED with prejudice. Any pending motions are denied as moot (See Order for further details). Signed by Judge John Campbell Barker on 3/31/2025. (cdd) (Entered: 03/31/2025) |
| 1/27/2025 | 36 | NOTICE of Supplemental Authority - by Etison LLC re 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* (Flynn, Michael) (Entered: 01/27/2025) |
| 1/24/2025 | | Minute Entry for proceedings held before Judge John Campbell Barker - Hearing on Doc. 21 - MOTION to Dismiss for Failure to State a Claim. Attorneys for Plaintiff: John Hintz, Michael Flynn (Telephone); Attorneys for Defendant: Tim Durst, Rob Shaffer, Alexandra Joyce (Telephone). (Court Reporter: Jennifer Guy; Courtroom Deputy: Nicole Cadenhead) (jfm) (Entered: 01/24/2025) |
| 1/16/2025 | 35 | STATEMENT re 34 Notice (Other), *Defendant Highlevel Inc.'s Response to Plaintiff's Notice of Supplemental Authority* by HighLevel, Inc.. (Silver, Daniel) (Entered: 01/16/2025) |
| 1/13/2025 | 34 | NOTICE of Plaintiff Etison LLC d/b/a Clickfunnels' Response to D.I. 33, "Defendant Highlevel Inc.'s Notice of Supplemental Authority," and Plaintiff's Notice of Supplemental Authority by Etison LLC re 33 Notice (Other) (Attachments: # 1 Exhibit 1)(Flynn, Michael) (Entered: 01/13/2025) |
| 1/8/2025 | 33 | NOTICE of Supplemental Authority by HighLevel, Inc. re 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* (Attachments: # 1 Exhibit A)(Silver, Daniel) (Entered: 01/08/2025) |
| 11/27/2024 | 32 | 📌 **Order**  Granted<br><br>ORAL ORDER: The parties' joint motion (Doc. 31 ) is granted. Accordingly, the hearing on defendant's motion to dismiss is rescheduled for *January 24, 2025 at 9:00 a.m.* CST / 10:00 a.m. EST. All other details and instructions concerning the hearing (Doc. 30 ) remain in effect. Signed by District Judge John Campbell Barker on *11/27/2024*. (mpb) (Entered: 11/27/2024) |
| 11/25/2024 | 31 | 💬 **Motion by Δ**<br><br>Joint MOTION and [Proposed] Order to Reschedule Hearing - filed by HighLevel, Inc.. (Attachments: # 1 Text of Proposed Order)(Silver, Daniel) (Entered: 11/25/2024) |

| Filing Date | # | Docket Text |
|---|---|---|
| 11/20/2024 | [30](#) | 📌 **Order**<br><br>ORDER: A hearing on defendant's motion to dismiss is set for *December 4, 2024, at 3:00 p.m.* CST / 4:00 p.m. EST. The undersigned will preside by teleconference from his courtroom in Tyler, Texas, Counsel may likewise appear by teleconference from their respective offices. Any party appearing by teleconference must utilize a landline. The public will have access to an audio broadcast of the teleconference, but listeners will not be allowed to participate or communicate with the court. Dial-in instructions will be emailed to the parties directly. The public audio broadcast details are as follows: Audio Dial-in Number: (302)353-2301; Access Code: 915010891 (SEE ORDER FOR FURTHER DETAILS). Signed by District Judge John Campbell Barker on *11/20/2024*. (jfm) (Entered: 11/20/2024) |
| 9/11/2024 | [29](#) | REQUEST for Oral Argument by Etison LLC re [21](#) MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint*. (Flynn, Michael) (Entered: 09/11/2024) |
| 9/10/2024 | [28](#) | 🔙 **Motion to Dismiss for Failure to State a Claim  by Δ**<br><br>REPLY BRIEF re [21](#) MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* filed by HighLevel, Inc.. (Silver, Daniel) (Entered: 09/10/2024) |
| 8/30/2024 | | 📌 **Order**<br><br>SO ORDERED re [Doc. [27](#) ] STIPULATION and [Proposed] Order to Extend Time. The time for defendant HighLevel, Inc., to file a reply in support of its MOTION to Dismiss for Failure to State a Claim [Doc. [21](#) ] shall be extended through and including *September 10, 2024*. Ordered by District Judge John Campbell Barker on *8/30/24*. Signed by District Judge John Campbell Barker on *8/30/2024*. (mpb) (Entered: 09/03/2024) |
| 8/29/2024 | | Pro Hac Vice Attorney Patric M. Reinbold for HighLevel, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (cdd) (Entered: 08/29/2024) |
| 8/28/2024 | | 📌 **Motion to Appear Pro Hac Vice**  Granted<br><br>ORDER: Motion for pro hac vice appearance of Patric M. Reinbold [25](#) is granted. Ordered by District Judge J. Campbell Barker on *8/28/2024*. (oam) (Entered: 08/28/2024) |
| 8/28/2024 | [27](#) | 💬 **Motion to Extend Time to File Reply  by Δ**<br><br>STIPULATION TO EXTEND TIME the deadline to file a Reply Brief in support of its Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) re *September 10, 2024* - filed by HighLevel, Inc.. (Joyce, Alexandra) (Entered: 08/28/2024) |
| 8/27/2024 | 26 | Pro Hac Vice Fee - Credit Card Payment received for Patric M. Reinbold. ( re [25](#) MOTION for Pro Hac Vice Appearance of Attorney Patric M. Reinbold )( Payment of $ 50, receipt number ADEDC-4485837).(Silver, Daniel) (Entered: 08/27/2024) |

| Filing Date | # | Docket Text |
|---|---|---|
| 8/27/2024 | 25 | 🔵 **Motion to Appear Pro Hac Vice** by Δ<br><br>MOTION for Pro Hac Vice Appearance of Attorney Patric M. Reinbold - filed by HighLevel, Inc.. (Attachments: # 1 Certification of Patric M. Reinbold)(Silver, Daniel) (Entered: 08/27/2024) |
| 8/26/2024 | 24 | ↩ **Motion to Dismiss for Failure to State a Claim** by Π<br><br>ANSWERING BRIEF in Opposition re 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* filed by Etison LLC.Reply Brief due date per Local Rules is *9/3/2024.* (Flynn, Michael) (Entered: 08/26/2024) |
| 8/1/2024 | | Case Reassigned to District Judge John Campbell Barker of the United States District Court for the Eastern District of Texas. Please include the initials of the Judge (JCB) after the case number on all documents filed. (rjb) (Entered: 08/01/2024) |
| 7/31/2024 | | 🔨 **Motion to Extend Time to File Opposition**<br><br>SO ORDERED, re 23 STIPULATION TO EXTEND TIME for Plaintiff Etison LLC d/b/a ClickFunnels to file its opposition to Defendant HighLevel, Inc.'s Motion to Dismiss (D.I. 21) to *August 26, 2024* filed by Etison LLC, 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* filed by HighLevel, Inc., Set Briefing Schedule: re 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint*. (Answering Brief due *8/26/2024.*) Signed by Judge Colm F. Connolly on 7/31/2024. (nmf) (Entered: 07/31/2024) |
| 7/31/2024 | 23 | 💬 **Motion to Extend Time to File Opposition** by Π<br><br>STIPULATION TO EXTEND TIME for Plaintiff Etison LLC d/b/a ClickFunnels to file its opposition to Defendant HighLevel, Inc.'s Motion to Dismiss (D.I. 21) to *August 26, 2024* - filed by Etison LLC. (Flynn, Michael) (Entered: 07/31/2024) |
| 7/29/2024 | 22 | OPENING BRIEF in Support re 21 MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* filed by HighLevel, Inc..Answering Brief/Response due date per Local Rules is *8/12/2024.* (Attachments: # 1 Exhibit A, # 2 Certificate of Compliance) (Joyce, Alexandra) (Entered: 07/29/2024) |
| 7/29/2024 | 21 | 💬 **Motion to Dismiss for Failure to State a Claim** by Δ<br><br>MOTION to Dismiss for Failure to State a Claim *Plaintiff's Amended Complaint* - filed by HighLevel, Inc.. (Attachments: # 1 Certificate of Compliance, # 2 Proposed Order)(Joyce, Alexandra) (Entered: 07/29/2024) |
| 7/10/2024 | | 🔨 **Motion to Extend Time**<br><br>SO ORDERED, re 20 STIPULATION TO EXTEND TIME to answer, move or otherwise respond to the Amended Complaint (D.I. 19) to *July 29, 2024* filed by HighLevel, Inc., Set/Reset Answer Deadlines: HighLevel, Inc. answer due *7/29/2024.* Signed by Judge Colm F. Connolly on 7/10/2024. (nmf) (Entered: 07/10/2024) |

| Filing Date | # | Docket Text |
|---|---|---|
| 7/10/2024 | 20 | 🔵 **Motion to Extend Time** by Δ<br>STIPULATION TO EXTEND TIME to answer, move or otherwise respond to the Amended Complaint (D.I. 19) to *July 29, 2024* - filed by HighLevel, Inc.. (Joyce, Alexandra) (Entered: 07/10/2024) |
| 7/1/2024 | 19 | 🟢 **Complaint** by Π<br>AMENDED COMPLAINT against HighLevel, Inc.- filed by Etison LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Flynn, Michael) (Entered: 07/01/2024) |
| 6/27/2024 | 18 | Amended Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by HighLevel, Inc.. (Joyce, Alexandra) (Entered: 06/27/2024) |
| 6/25/2024 | | 🔨 **Motion to Appear Pro Hac Vice**<br>SO ORDERED, re 16 MOTION for Pro Hac Vice Appearance of Attorney John M. Hintz, filed by Etison LLC. Ordered by Judge Colm F. Connolly on *6/25/2024*. (kmd) (Entered: 06/25/2024) |
| 6/24/2024 | 17 | Pro Hac Vice Fee - Credit Card Payment received for John M. Hintz. ( re 16 MOTION for Pro Hac Vice Appearance of Attorney John M. Hintz )( Payment of $ 50, receipt number ADEDC-4437223).(Flynn, Michael) (Entered: 06/24/2024) |
| 6/24/2024 | 16 | 🔵 **Motion to Appear Pro Hac Vice** by Π<br>MOTION for Pro Hac Vice Appearance of Attorney John M. Hintz - filed by Etison LLC. (Flynn, Michael) (Entered: 06/24/2024) |
| 6/21/2024 | | Pro Hac Vice Attorney Khanh Leon,Timothy S. Durst for HighLevel, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (apk) (Entered: 06/21/2024) |
| 6/20/2024 | | Pro Hac Vice Attorney Jeffery Baxter for HighLevel, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (apk) (Entered: 06/20/2024) |
| 6/20/2024 | | Pro Hac Vice Attorney Robert F. Shaffer for HighLevel, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (apk) (Entered: 06/20/2024) |
| 6/18/2024 | 15 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by HighLevel, Inc.. (Joyce, Alexandra) (Entered: 06/18/2024) |
| 6/18/2024 | 14 | OPENING BRIEF in Support re 13 MOTION to Dismiss for Failure to State a Claim filed by HighLevel, Inc..Answering Brief/Response due date per Local Rules is *7/2/2024*. (Attachments: # 1 Certificate of Compliance, # 2 Exhibit A)(Joyce, Alexandra) (Entered: 06/18/2024) |

| Filing Date | # | Docket Text |
|---|---|---|
| 6/18/2024 | 13 | 💬 **Motion to Dismiss for Failure to State a Claim** by Δ <br> MOTION to Dismiss for Failure to State a Claim - filed by HighLevel, Inc.. (Attachments: # 1 Certificate of Compliance, # 2 Text of Proposed Order)(Joyce, Alexandra) (Entered: 06/18/2024) |
| 6/17/2024 | | 📌 **Motion to Appear Pro Hac Vice** <br> SO ORDERED, re 11 MOTION for Pro Hac Vice Appearance of Attorney Robert F. Shaffer, Timothy S. Durst, Jeffery Baxter, and Khanh Leon, filed by HighLevel, Inc. Ordered by Judge Colm F. Connolly on *6/17/2024*. (kmd) (Entered: 06/17/2024) |
| 6/17/2024 | 12 | Pro Hac Vice Fee - Credit Card Payment received for Robert F. Shaffer, Timothy S. Durst, Jeffery Baxter, and Khanh Leon. ( re 11 MOTION for Pro Hac Vice Appearance of Attorney Robert F. Shaffer, Timothy S. Durst, Jeffery Baxter, and Khanh Leon )( Payment of $ 200, receipt number ADEDC-4432039).(Silver, Daniel) (Entered: 06/17/2024) |
| 6/17/2024 | 11 | 💬 **Motion to Appear Pro Hac Vice** by Δ <br> MOTION for Pro Hac Vice Appearance of Attorney Robert F. Shaffer, Timothy S. Durst, Jeffery Baxter, and Khanh Leon - filed by HighLevel, Inc.. (Attachments: # 1 Certifications for Robert F. Shaffer, Timothy S. Durst, Jeffery Baxter, and Khanh Leon)(Silver, Daniel) (Entered: 06/17/2024) |
| 4/30/2024 | 10 | NOTICE of Appearance by Alexandra M. Joyce on behalf of HighLevel, Inc. (Joyce, Alexandra) (Entered: 04/30/2024) |
| 4/29/2024 | | 📌 **Motion to Extend Time** <br> SO ORDERED, re 9 STIPULATION TO EXTEND TIME to Answer, Move or Otherwise Respond to the Complaint to and including *June 28, 2024* filed by HighLevel, Inc., Set/Reset Answer Deadlines: HighLevel, Inc. answer due *6/28/2024*. Signed by Judge Colm F. Connolly on 4/29/2024. (nmf) (Entered: 04/29/2024) |
| 4/29/2024 | 9 | 💬 **Motion to Extend Time** by Δ <br> STIPULATION TO EXTEND TIME to Answer, Move or Otherwise Respond to the Complaint to and including *June 28, 2024* - filed by HighLevel, Inc.. (Silver, Daniel) (Entered: 04/29/2024) |
| 4/25/2024 | 8 | Amended Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent SuccessEtc.com, LLC, Corporate Parent Spontent LLC, Corporate Parent Monopolize, Inc., Corporate Parent Ardden Web, LLC, Corporate Parent ABC Rocket, LLC, Corporate Parent BC Investment Capital, LLC for Etison LLC filed by Etison LLC. (Flynn, Michael) (Entered: 04/25/2024) |
| 4/24/2024 | 7 | 📌 **Standing Order** <br> STANDING ORDER REGARDING BRIEFING IN ALL CASES (nmf) (Entered: 04/24/2024) |
| 4/24/2024 | | Case Assigned to Judge Colm F. Connolly. Please include the initials of the Judge (CFC) after the case number on all documents filed. (nms) (Entered: 04/24/2024) |

| Filing Date | # | Docket Text |
|---|---|---|
| 4/23/2024 | 6 | SUMMONS Returned Executed by Etison LLC.HighLevel, Inc. served on 4/23/2024, answer due 5/14/2024. (Flynn, Michael) (Entered: 04/23/2024) |
| 4/22/2024 | 5 | Summons Issued as to HighLevel, Inc. on 4/22/2024. (oam) (Entered: 04/22/2024) |
| 4/22/2024 | 4 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Etison LLC. (oam) (Entered: 04/22/2024) |
| 4/22/2024 | 3 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) 10,846,357 B2; 11,361,047 B2. (oam) (Entered: 04/22/2024) |
| 4/22/2024 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (oam) (Entered: 04/22/2024) |
| 4/22/2024 | 1 | **Complaint**<br><br>COMPLAINT filed for PATENT INFRINGEMENT with Jury Demand against HighLevel, Inc. ( Filing fee $ 405, receipt number ADEDC-4389905.) - filed by Etison LLC. (Attachments: # 1 Exhibit A-D, # 2 Civil Cover Sheet)(oam) (Entered: 04/22/2024) |

Docket Alarm by vLex

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on August 28, 2025.

I further certify that this document was emailed and sent by FedEx on August 28, 2025, to lead counsel for Etison LLC at the following address:

Jeffri A. Kaminski (Reg. No. 42,709)
Justin J. Oliver (Reg. No. 44,986)
Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 344-4048
JAKaminski@Venable.com
JJOliver@Venable.com

I further certify that courtesy copies of this document were emailed to the following additional counsel of record for Etison LLC, on August 28, 2025:

Michael J. Flynn, mflynn@mnat.com

I further certify that this document was sent to efileSO@uspto.gov and also

by USPS to the following address on August 28, 2025:

Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

Respectfully submitted,

/s/ Robert F. Shaffer
Robert F. Shaffer