No. 2025-148

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

————————————————

IN RE: HIGHLEVEL, INC.,

*Petitioner.*

————————————————

On Petition for Writ of Mandamus
to the United States Patent and Trademark Office,
Patent Trial and Appeal Board in
Nos. IPR2025-00234, IPR2025-00235

————————————————

**DIRECTOR'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

————————————————

NICHOLAS T. MATICH
  *Acting Solicitor*
ROBERT J. MCMANUS
  *Acting Deputy Solicitor*
PETER SAWERT
FAHD PATEL
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and*
   *Trademark Office*

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, D.C. 20530*
  *(202) 514-4819*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

BACKGROUND ...................................................................... 6

ARGUMENT ........................................................................... 14

    I.     Petitioner's Statutory Complaints Are Barred By
          35 U.S.C. § 314(d). ........................................................ 14

    II.    To The Extent Petitioner Has Raised Cognizable
          Constitutional Claims, They Are Meritless. ................ 18

    III.  Petitioner Cannot Satisfy The Remaining Mandamus
          Factors. ....................................................................... 29

          A.    Petitioner Has Alternate Means Of Relief. ........ 30

          B.    Mandamus Relief Is Inappropriate Under the
              Circumstances. .................................................... 31

CONCLUSION .......................................................................... 33

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Alberico v. United States,*
   783 F.2d 1024 (Fed. Cir. 1986) ........................................................ 23

*Allied Chem. Corp. v. Daiflon, Inc.,*
   449 U.S. 33 (1980) (per curiam) ...................................................... 20

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 U.S. 40 (1999) ............................................................................ 20

*Apple Inc. v. Vidal,*
   63 F.4th 1 (Fed. Cir. 2023) .........................................16, 17, 18, 22, 28

*Barnhart v. Devine,*
   771 F.2d 1515 (D.C. Cir. 1985) ...................................................... 31

*Bd. of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) ..................................................................... 19, 20

*Bloch v. Powell,*
   348 F.3d 1060 (D.C. Cir. 2003) ...................................................... 20

*Bryan v. McDonald,*
   615 F. App'x 681 (Fed. Cir. 2015) .................................................. 31

*Cheney v. U.S. Dist. Ct. for D.C.,*
   542 U.S. 367 (2004) ............................................................ 1, 18, 29, 31

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532 (1985) ......................................................................... 23

*Cuozzo Speed Techs., LLC v. Lee,*
   579 U.S. 261 (2016) ............................................................... 6, 14, 21

*Dominion Dealer Sols., LLC, In re,*
   749 F.3d 1379 (Fed. Cir. 2014) .................................................. 17, 28

*Durr v. Nicholson,*
400 F.3d 1375 (Fed. Cir. 2005) .......................................................... 26

*Fornaro v. James,*
416 F.3d 63 (D.C. Cir. 2005) ............................................................. 31

*Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs,*
482 U.S. 270 (1987) ........................................................................... 22

*Killian, In re,*
45 F.4th 1373 (Fed. Cir. 2022) ......................................................... 18

*Landgraf v. USI Film Prods.,*
511 U.S. 244 (1994) ..................................................................... 25, 27

*Miller, In re,*
828 F. App'x 717 (Fed. Cir. 2020) .................................................... 20

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.,*
989 F.3d 1375 (Fed. Cir. 2021) ............ 1, 6, 7, 14, 15, 16, 17, 22, 26, 27

*Palo Alto Networks, In re,*
44 F.4th 1369 (Fed. Cir. 2022) .................................................... 17, 30

*PHH Corp. v. CFPB,*
839 F.3d 1 (D.C. Cir. 2016) .............................................................. 21

*Princess Cruises, Inc. v. United States,*
397 F.3d 1358 (Fed. Cir. 2005) ........................................................ 25

*Rodriguez v. Peake,*
511 F.3d 1147 (Fed. Cir. 2008) ........................................................ 25

*Synthes (U.S.A.), In re,*
346 F. App'x 583 (Fed. Cir. 2009) .................................................... 20

*Thryv, Inc. v. Click-to-Call Technologies, LP,*
590 U.S. 45 (2020) ............................................................................ 14

*Town of Castle Rock v. Gonzales,*
545 U.S. 748 (2005) .................................................................... 20

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021) ....................................................................... 33

**Constitution and Statutes:**

U.S. Const. amend. V ................................................................. 20

35 U.S.C. § 101 ....................................................................... 5, 11

35 U.S.C. § 103 ........................................................................ 30

35 U.S.C. § 314(a) ...................................................................... 6

35 U.S.C. § 314(d) ............................................... 2, 6, 14, 18, 22

35 U.S.C. § 315 ........................................................................... 6

35 U.S.C. § 315(a) .................................................................... 14

35 U.S.C. § 315(b) .................................................................... 14

35 U.S.C. § 315(e) .................................................................... 22

35 U.S.C. § 318 ........................................................................... 6

35 U.S.C. § 318(b) .................................................................... 22

35 U.S.C. § 319 ........................................................................... 6

**Rules:**

37 C.F.R. § 42.4(a) ..................................................................... 6

**Administrative Decisions and Dockets:**

*HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels,*
IPR2025-00234 (P.T.A.B. May 6, 2025) ............................ 11, 12, 24

*Apple Inc. v. Fintiv, Inc.*,
  No. IPR2020-00019,
  2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) .......................................... 7

*Hulu, LLC V. Piranha Media Distrib., LLC*,
  IPR2024-01252 & IPR2024-01253,
  Paper 27 (P.T.A.B. Apr. 17, 2025) .................................................. 10, 11

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha,*
  No. IPR2016–01357,
  2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) .......................................... 7

*Sotera Wireless, Inc. v. Masimo Corp.*,
  No. IPR2020-01019,
  2020 WL 7049373, at *4 (P.T.A.B. Dec. 1, 2020) ................................. 8

**Other:**

U.S. Patent and Trademark Office,
  *Delegation of Authority*,
  https://perma.cc/CMF5-7UW3 ........................................................ 10

U.S. Patent and Trademark Office,
  *Precedential and Informative Decisions*,
  https://perma.cc/MM53-9NEQ ........................................................ 11

U.S. Patent and Trademark Office,
  *USPTO Welcomes New Director John A. Squires*,
  https://perma.cc/KU6K-FTX5 ........................................................ 2

## INTRODUCTION

Congress has committed the decision to institute an inter partes review (IPR) to the United States Patent and Trademark Office (USPTO) Director's discretion and expressly insulated the exercise of that discretion from any appeal. Accordingly, this Court has made clear that the only circumstance in which it can review the USPTO's denial of a petition to institute IPR is through a petition for a writ of mandamus, which may be brought *solely* based on colorable claims that the USPTO has exercised its discretion in an unconstitutional manner. *See Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). And to obtain the "drastic and extraordinary" mandamus remedy, a petitioner must show that it has (1) a "clear and indisputable" right to relief; (2) no "alternative avenues of relief"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-81 (2004) (quotation marks omitted).

Petitioner here, HighLevel, Inc., seeks that extraordinary remedy based on its dissatisfaction with the then-Acting Director's decision to alter a former Director's guidance about how her subordinates should

exercise her delegated discretion and to provide additional instructions regarding when an IPR should be instituted in light of parallel district court litigation.[1] Petitioner does not claim that it lacked notice of either the rescission of the prior Director's guidance or the Acting Director's designation of a new decision as informative. Nor does Petitioner dispute that it had multiple opportunities to brief whether these changes in how the Acting Director chooses to exercise her discretion should impact its requests for institution. Rather, Petitioner contends that withdrawing the former Director's guidance and designating a new decision as informative violates the America Invents Act (AIA), the Administrative Procedure Act (APA), and the Constitution. Such complaints do not approach the very high bar for mandamus relief.

To begin, much of Petitioner's argument is barred by 35 U.S.C. § 314(d), which precludes judicial review of claims that the USPTO's institution decisions violate a statute, including the AIA and APA.

---

[1] Deputy Director Coke Morgan Stewart was the Acting Director at the time of the challenged agency actions. *See, e.g.*, Appx44. On September 22, 2025, John A. Squires was sworn in as the Director. *See* U.S. Patent and Trademark Office, *USPTO Welcomes New Director John A. Squires*, https://perma.cc/KU6K-FTX5.

Petitioner acknowledges § 314(d) only in passing, incorrectly suggesting that it has no role in this Court's jurisdiction over a petition for a writ of mandamus. But this Court has clearly recognized that its mandamus jurisdiction to review institution decisions is limited to colorable *constitutional* claims. Much of the petition addresses statutory grievances which are nonjusticiable in this mandamus action.

Petitioner's due-process complaints are equally unavailing. Petitioner cannot evade the limits on this Court's mandamus jurisdiction by simply putting a "due-process" label on its APA arguments. And even insofar as the petition identifies a constitutional due-process claim, Petitioner not only fails to establish a clear and indisputable right to relief, its arguments are baseless. Petitioner has no entitlement to either IPR institution or any particular set of criteria the agency might use to determine if it considers institution warranted—both matters that are entirely within the Director's discretion. And even if Petitioner could establish the type of entitlement that might support a constitutionally protected property interest, Petitioner received the due-process requisites of notice and the

3

opportunity to be heard; the USPTO afforded Petitioner multiple opportunities to make its case for institution under the Acting Director's guidance. Furthermore, neither the rescission of prior guidance to the Patent Trial and Appeal Board (Board) nor the issuance of new guidance regarding the Director's institution discretion implicates the presumption against retroactivity. And Petitioner's asserted reliance interest in the former Director's prior guidance was entirely unreasonable.

Petitioner similarly cannot satisfy the mandamus standard's other requirements. Petitioner says that it has no other avenue for relief because this Court has said that review of institution decisions is available only through mandamus. But that just highlights the fact that Petitioner is attempting to obtain judicial review of decisions this Court has recognized are within the USPTO's unreviewable discretion. Petitioner claims no independent harm from any asserted constitutional violation, asserting only a desire to invalidate patent claims in its preferred forum. In such circumstances, Petitioner has several "alternative avenues of relief" through which it may seek invalidation of

4

the challenged patent claims (should they ever be reinstated), as Petitioner remains free to avail itself of district court litigation or ex parte reexamination. Moreover, Petitioner has *already* obtained invalidation of the challenged claims in district court under 35 U.S.C. § 101. It is difficult to see how Petitioner lacks adequate alternative relief, when it has already obtained relief.

Finally, even apart from all other defects in its mandamus petition, Petitioner cannot show that mandamus relief would be appropriate. Congress gave the USPTO Director wide latitude to manage IPR proceedings, insulating institution decisions from appellate review. The guidance at issue here reflects the practical reality that each Director must balance requests for administrative review of patent claims against the other needs of the USPTO and the patent system more generally. When the then-Acting Director took office in February 2025, she faced a significantly different situation than existed in 2022: the backlog and pendency of ex parte appeals that the Board needed to address was higher, the number of Administrative Patent Judges was lower, and the agency was subject to a hiring freeze. Petitioner's request

for a judicial order forcing a subsequent Director to adhere to a prior Director's guidance concerning the exercise of institution discretion, issued under different circumstances, is not an "appropriate" use of the writ. That is particularly true here because the challenged claims had already been found invalid by a district court at the time of the institution decision.

## BACKGROUND

1. When Congress created inter partes review, it set out various statutory bars precluding the USPTO Director from instituting an IPR, but no set of circumstances in which institution is required. *See* 35 U.S.C. §§ 314(a), 315. Congress further provided that although the agency's final written decision with respect to patentability is subject to appeal in this Court, *see id.* §§ 318, 319, the determination by the Director whether to institute an IPR is "final and nonappealable," *id.* § 314(d). Both this Court and the Supreme Court have repeatedly made clear that the USPTO is under "no mandate to institute review" and the "decision to deny [an IPR] petition is a matter committed to the Patent Office's discretion." *Mylan*, 989 F.3d at 1382 (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)). Thus, "[t]he Director is

6

permitted, but never compelled, to institute an IPR," and "no petitioner has a right to … institution." *Id.*

2. The Director has delegated broad discretion over whether to institute IPR proceedings to the Board, *see* 37 C.F.R. § 42.4(a), and Directors have set out various criteria for the Board to use in employing that delegated authority, *see, e.g., General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (discussing discretionary factors for multiple IPR petitions). As relevant here, because IPR proceedings often coincide with parallel district court litigation, for years Directors have instructed the Board to consider a non-exhaustive list of factors when concerns are raised about redundancy or wastefulness. These factors are set forth in *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential), and instruct the Board to take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review," *id.* at *3.

On June 21, 2022, the prior USPTO Director issued a memorandum (June 2022 Memo) setting out "interim" guidance

regarding the Board's application of the *Fintiv* factors when exercising the institution discretion the Director delegated to it while the USPTO "explore[d] potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking." Appx22-23. The June 2022 Memo stated that it would "appl[y] to all proceedings pending before the [USPTO]" and would "remain in place until further notice." Appx30.

The June 2022 Memo directed the Board "not [to] rely on the *Fintiv* factors to discretionarily deny institution in view of parallel district court litigation where a petition present[ed] compelling evidence of unpatentability." Appx23. The June 2022 Memo also directed the Board to "not discretionarily deny institution [of an IPR] in view of parallel district court litigation where a petitioner [stipulates] not to pursue in a parallel [district court] proceeding the same grounds [as in the petition] or any grounds that could have reasonably been raised before the [Board]." Appx24. Such a stipulation is known as a *Sotera* stipulation. *Id.*; *see Sotera Wireless, Inc. v. Masimo Corp.*, No. IPR2020-01019, 2020 WL 7049373, at *4 (P.T.A.B. Dec. 1, 2020) (precedential as to II.A). The June 2022 Memo expressly noted that "even if the [Board]

8

does not deny institution under *Fintiv*, it retains the right to deny institution for other reasons" within the Board's discretion. Appx30.

On February 28, 2025, the then-Acting Director of the USPTO rescinded the June 2022 Memo (Rescission), noting that *Fintiv* and *Sotera* continued to provide applicable guidance. Appx39. On March 24, 2025, then-Chief Administrative Patent Judge Scott Boalick issued a memorandum providing additional guidance as to how the Board should proceed considering the Rescission. *See* Appx41-43. The memorandum explained that "the Interim Procedure's recission applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending." Appx42. It further noted that "[t]he Board will consider timely requests for additional briefing on the application of the Interim Procedure's recission on a case-by-case basis." *Id.* Finally, the memo emphasized that "strength of the merits" of an IPR petition would still be considered under *Fintiv*, but that "compelling merits

alone [would not be] dispositive in making" the discretionary decision on institution.[2] Appx43.

3. Prior to the Board's decisions to deny IPR institution here, the then-Acting Director issued a decision on a request for Director Review in *Hulu, LLC V. Piranha Media Distrib., LLC*, IPR2024-01252 & IPR2024-01253, Paper 27 (P.T.A.B. Apr. 17, 2025) ("*Hulu*"). In *Hulu*, the then-Acting Director determined that because "the district court" in a parallel infringement litigation "already had determined that the challenged claims [were] invalid under § 101 before the Board's Decision," "the efficiency and integrity of the patent system [as emphasized in *Fintiv* were] best served by denying institution." *Id.* at 3.

---

[2] Then-Acting Director Stewart updated the institution process in other ways as well, providing for a new briefing process in which the Director personally makes institution decisions that involve discretionary denials, including the application of the *Fintiv* factors and *Sotera* stipulations, in consultation with the Board. *See* Appx44-46 (Memorandum from Coke Morgan Stewart, Acting Under Sec'y of Com. for Intell. Prop. & Acting Dir. of the USPTO, to All PTAB Judges, Mar. 26, 2025). Director Squires has delegated that discretionary decisionmaking to the Deputy Director. *See* U.S. Patent and Trademark Office, *Delegation of Authority*, https://perma.cc/CMF5-7UW3. Because this new process applies only "where the deadline for the patent owner to file a preliminary response has not yet passed," Appx46, the guidance is not applicable to this matter.

The then-Acting Director also noted that the circumstances there did not "fit neatly" into the *Fintiv* framework that the Board applies to assess the impact of *ongoing* parallel litigation on the institution decision. *Id.* at 3. The *Hulu* Director Review decision was designated as "informative," pursuant to Board Standard Operating Procedure (SOP) 2 (Appx31-38) on May 7, 2025. *See* U.S. Patent and Trademark Office, *Precedential and Informative Decisions*, https://perma.cc/MM53-9NEQ. An "informative" decision is not binding but "set[s] forth Board norms that should be followed in most cases" and may provide guidance about, *inter alia*, "issues of first impression." Appx33, Appx37.

4. This mandamus petition concerns two IPR petitions filed by Petitioner HighLevel, Inc. challenging the claims of patents held by Etison LLC d/b/a ClickFunnels. *See* Appx8 (IPR2025-00234 documents cited as exemplary). On May 6, 2025, Etison filed a notice informing the Board that the district court in a parallel proceeding had concluded that the challenged claims are invalid under 35 U.S.C. § 101. *HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels*, IPR2025-00234, Paper 9 (P.T.A.B. May 6, 2025); *see also* Appx106. Etison argued that under the

informative *Hulu* decision, the district court's invalidity decision weighed in favor of denying Petitioner's IPR petition. *Id.* On May 13, 2025, Petitioner filed a response to the notice arguing that the reasoning in *Hulu* exceeded the USPTO's statutory authority under the AIA and application would be prejudicial due to the potential additional costs it would incur if it was necessary to assert its IPR invalidity arguments in district court instead. *HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels*, IPR2025-00234, Paper 10 (P.T.A.B. May 13, 2025); *see also* Appx105.

On June 2, 2025, the Board denied institution. Appx7-14. The Board reasoned that there was "no reason to deviate from the informative decision" because "[t]he relevant facts in this case are indistinguishable from those at issue in *Hulu*." Appx12. The Board noted that in the event that the district court's § 101 decision is reversed by this Court, Petitioner may raise the invalidity arguments from its IPR petition in the district court on remand. Appx13.

On July 2, 2025, Petitioner filed a petition for Director Review of the Board's decision denying institution of IPR. Appx47-63. Petitioner

argued that considering invalidity defenses that cannot be asserted in an IPR (*e.g.*, under § 101) in the discretionary institution decision violated the AIA and congressional intent. Appx56-58. Petitioner also argued that because the *Hulu* decision was made informative after the filing of its IPR petition, applying *Hulu*'s reasoning constituted improper retroactive rulemaking that violated Petitioner's due process rights. Appx58-62. Petitioner did not argue that it was deprived of notice of *Hulu* or the opportunity to address it prior to the Board's institution decision. *Id.* Petitioner made one passing reference to the June 2022 Memo and its compelling merits standard, but did not argue that it met that standard. Appx58-59. Etison filed a response to the petition for Director Review on July 15, 2025. Appx105.

On August 13, 2025, the Acting Director's delegee denied the petition for review. Appx1-2. Petitioner then filed its petition for mandamus in this Court.

## ARGUMENT

**I.    Petitioner's Statutory Complaints Are Barred By 35 U.S.C. § 314(d).**

In § 314(d), Congress expressly precluded judicial review of the Director's "determination … whether to institute an inter partes review," providing that the decision is "final and nonappealable." 35 U.S.C. § 314(d). While various statutory strictures preclude the Director from granting a petition to institute an IPR, *see, e.g.*, 35 U.S.C. § 315(a), (b), the Supreme Court in *Cuozzo* held that the "decision to *deny* a petition [for IPR] is a matter committed to the Patent Office's discretion," *Cuozzo*, 579 U.S. at 273 (emphasis added). Accordingly, "no petitioner has a right to … institution." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). And the Supreme Court further clarified in *Thryv, Inc. v. Click-to-Call Technologies, LP*, 590 U.S. 45 (2020), that § 314(d)'s bar on appeals from institution decisions means that there is no judicial review of the USPTO's compliance with even clear statutory provisions regarding IPR institution. *See id.* at 53-60.

This Court has recognized that § 314(d) does not bar this Court from "protect[ing] [its] prospective jurisdiction through mandamus" where the USPTO issues "[a] decision denying institution," which "prevents the Board from issuing any final decision that falls within [this Court's] direct appellate jurisdiction." *Mylan*, 989 F.3d at 1380. But importantly, this Court has recognized that its mandamus jurisdiction is limited by Congress's decision to commit the institution decision to the Director's discretion and to prohibit appeals of such decisions: "[T]here is no reviewability of the Director's exercise of [her] discretion to deny institution except for colorable constitutional claims." *Id.* at 1382. "Given the limits on [the Court's] reviewability," *ultra vires* or other statutory arguments "cannot be a basis for granting [a] petition for mandamus" over a decision denying IPR institution. *Id.* at 1382-83.

These principles foreclose Petitioner's mandamus petition insofar as it raises claims regarding statutory requirements, including those in the AIA and the APA. Whatever constitutional claims § 314(d) might permit litigants to raise regarding institution denial through a mandamus petition, they do not include "run-of-the-mill statutory

15

interpretation" questions reframed as constitutional violations. *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023); *see Mylan*, 989 F.3d at 1381-83 (rejecting two statutory challenges "[g]iven the limits on [the Court's] reviewability" through mandamus of decisions not to institute IPR).

Thus, Petitioner's claims that the Rescission and the application of *Hulu*'s reasoning violated the AIA and APA because they failed to go through notice and comment (Pet. 10-11), were arbitrary and capricious (Pet. 12), were impermissibly retroactive (Pet. 13-18), or were otherwise in violation of the agency's statutory authority (Pet. 9-10, 18-20) necessarily fail. Petitioner attempts to circumvent this conclusion by pointing to *In re Palo Alto Networks*, 44 F.4th 1369, 1374 (Fed. Cir. 2022), arguing that "this Court has recognized that mandamus is an appropriate mechanism for review of institution denials … where … *ultra vires* claims are raised." Pet. 8. But *Palo Alto* involved a *constitutional* challenge under the Appointments Clause—not a statutory-based argument—and nowhere suggested any disagreement with *Mylan's* clear limitation of mandamus review of institution denials

to constitutional claims; on the contrary, *Palo Alto* cites *Mylan* with approval. *See* 44 F.4th at 1374 (noting that this Court has "conclude[d] that judicial review is available in extraordinary circumstances by petition for mandamus"") (quoting *Mylan*, 989 F.3d at 1379-81); *see also Mylan*, 989 F.3d at 1379-82 (explaining that the "extraordinary circumstances" for which mandamus is available to review "a denial of institution" are limited to "colorable constitutional claims" regarding "the Director's exercise of his discretion to deny institution").

Petitioner's attempt (Pet. 10-11) to use a mandamus action to argue that the APA required the USPTO to proceed through notice-and-comment rulemaking is particularly misplaced. This Court has already held that such arguments may be raised through a district-court action where the plaintiff establishes standing to seek "prospective relief only," rather than relief in connection with any prior institution-related decision. *Apple*, 63 F.4th at 10; *see id.* at 14-17 (concluding plaintiff adequately demonstrated standing to bring a notice-and-comment challenge by showing "a substantial risk that the harm will occur in the future because of the instructions" it contended should have gone

through notice-and-comment procedures) (quotation marks omitted)).

Importantly, however, this Court reiterated that § 314(d) bars APA challenges to the contents of "the instructions given by the Director to the Board as delegatee." *Apple*, 63 F.4th at 13 (holding that the "IPR statute's preclusion of review … must encompass preclusion of review of the content-focused challenges to the [Director's] instructions" to the Board regarding institution). Here, Petitioner's notice-and-comment argument is raised in the wrong court, through the wrong type of action, seeking the wrong sort of relief.

## II.    To The Extent Petitioner Has Raised Cognizable Constitutional Claims, They Are Meritless.

To be eligible for mandamus relief, a petitioner must show a "clear and indisputable" right to relief. *In re Dominion Dealer Sols., LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (quotation marks omitted); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). Petitioner cannot establish a "clear and indisputable" constitutional violation warranting a writ of mandamus requiring the agency to revisit the then-Acting Director's decision to deny IPR institution under Petitioner's preferred instructions. To the contrary, Petitioner's

18

contentions that the USPTO violated due-process principles in exercising its discretion to deny the relevant IPR petitions are entirely without merit.

A. As an initial matter, although Petitioner references "HighLevel's Due Process Rights" in passing, Pet. 12, its arguments describe purported APA and AIA violations instead, *id.* at 12-20. Petitioner does not set forth basic predicates of a viable due-process argument, like whether petitioner was deprived of a protectable liberty or property interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). Such a "conclusory, skeletal argument" should be considered forfeited. *See In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022). Indeed, such a result would be particularly appropriate given that Petitioner's arguments fall so far short of carrying its burden of showing a "clear and indisputable right" to an extraordinary writ.

B. In any event, Petitioner's due-process argument is entirely without merit. To begin, it is far from clear that Petitioner has the requisite interest to support any sort of due-process challenge. The Due Process Clause protects against the deprivation "of life, liberty, or

property, without due process of law." U.S. Const. amend. V. The threshold "inquiry in every due process challenge is [therefore] whether the plaintiff has been deprived of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

The Supreme Court has explained that "[t]o have a property interest in a benefit," a person must "have a legitimate claim of entitlement to it," not just "an abstract need or desire" or "a unilateral expectation of" the benefit. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Roth*, 408 U.S. at 577). And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.*; *see also, e.g., Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) ("[W]hen a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise.") (collecting cases).[3]

---

[3] Similarly, the Supreme Court has stated that "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam); *see also, e.g., In re Miller*, 828 F. App'x 717, 718 (Fed. Cir. 2020) (applying *Allied* to petition re evidentiary decision); *In re Synthes (U.S.A.)*, 346 F. App'x

To the extent Petitioner argues that it has a property interest in having its IPR petitions considered under its preferred standard articulated in the June 2022 Memo (and without consideration of the informative *Hulu* decision), this argument lacks merit. Pet. 12-13. Contrary to Petitioner's suggestion, this case bears no resemblance to *PHH Corp. v. CFPB*, which addressed an agency's sanctions order "requiring PHH to pay $109 million for" past conduct to which the agency "retroactively appl[ied] its changed interpretation." 839 F.3d 1, 48 (D.C. Cir. 2016). The decision not to institute IPR is hardly a sanction, leaving both parties as they were before the petition was filed; the petitioner is not estopped from bringing future challenges to the

---

583, 584 (Fed. Cir. 2009) (applying *Allied* to petition re district court's stay of proceedings). The Board has been delegated broad discretion over IPR decisions. Nothing in the statute requires the Director to provide guidance on how the Board exercises that discretion. Petitioner does not contend that any of the criteria the then-Acting Director employed are constitutionally impermissible, instead basing their challenge entirely on matters within the USPTO Director's discretion. *See infra* pp. 27-29; *see also Cuozzo*, 579 U.S. at 273 (explaining the "decision to deny a petition [for institution of IPR] is a matter committed to the Patent Office's discretion"). It is thus unclear how Petitioner could satisfy the mandamus standard even if it could somehow make out a protected property interest in an institution decision the agency never has to grant.

patent claims in question, and the patent owner's rights are unaffected. *See* 35 U.S.C. §§ 315(e), 318(b).

Petitioner also errs in claiming that the June 2022 Memo created a reasonable expectation that there would be "no impact from its § 101 argument in the parallel district court proceeding." Pet. 13. Both granting IPR and articulating guidance about institution criteria are entirely discretionary matters and thus cannot support Petitioner's asserted interest. *See Mylan*, 989 F.3d at 1382 ("The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution."). Indeed, nothing in the statute requires the Director or his delegees to explain the decision whether to institute an IPR. To the contrary, "[n]othing in the unreviewability principle [of § 314(d)], … turns on whether the Director has provided an explanation." *Apple*, 63 F.4th at 13. "[T]he Supreme Court has rejected the notion that 'if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable.'" *Id.* (quoting *Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987)). Accepting Petitioner's asserted interest—to have its

petitions considered under a particular set of entirely discretionary criteria—would permit any litigant to transform an agency's transparency regarding its exercise of discretion into a constitutional entitlement through the simple expedient of artful framing. Petitioner has no protected interest in having its petitions resolved pursuant to any specific guidance by the Director about how the Board should weigh parallel district court proceedings under the *Fintiv* factors.

C. Even if Petitioner could demonstrate a protected property interest in the resolution of a petition the agency never has to grant, it still could not establish a due-process violation. "Once a property interest is shown, all due process requires is notice and an opportunity to be heard." *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Here, the USPTO gave notice of the disputed discretionary policies, and Petitioner had multiple briefing opportunities to be heard about the effects on its institution petition.

First, Petitioner had the opportunity to address the *Fintiv* factors after the Rescission of the June 2022 Memo in its Preliminary Reply.

Appx106; *HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels*, IPR2025-00234, Paper 7 (P.T.A.B. March 28, 2025). Next, Petitioner had the opportunity to address the *Fintiv* factors in view of the Rescission and the informative *Hulu* decision in its Reply to Etison's notice of the district court decision. App105-106; *HighLevel, Inc. v. Etison LLC d/b/a ClickFunnels*, IPR2025-00234, Paper 10 (P.T.A.B. May 13, 2025). Finally, Petitioner again had the opportunity to address both of these issues in its Director Review request. Appx47-63.

Accordingly, any due-process rights Petitioner had in the IPR institution process were satisfied. The relief Petitioner seeks is not to be heard on its institution petition in light of the Rescission and *Hulu*—because it was heard—but for the USPTO to apply a former Director's discretionary criteria and reach a different outcome. *See* Pet. 3. The Due Process Clause requires no such remedy and certainly does not guarantee Petitioner a specific outcome once heard.

D. Petitioner's invocation of retroactivity and reliance principles similarly fails. A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past

conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). As an initial factual matter, Petitioner is wrong to suggest that the Rescission or *Hulu* applied retroactively. Pet. 14-15. Because neither institution decision had been made by the Board at the time of the Rescission or *Hulu*'s designation, Appx7, Appx15, any application of their revised guidance to the institution decisions was necessarily prospective.

But even assuming the Rescission and *Hulu*'s designation as informative did operate retroactively with respect to Petitioner, this Court has made clear that the retroactivity analysis examines "not merely whether a change has occurred," but "the *nature and extent* of the change in the law," as well as "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (first quoting *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1363 (Fed. Cir. 2005); and then quoting *Landgraf*, 511 U.S. at 270).

Here, the application of the Acting Director's guidance to Petitioner's IPR petitions did not affect any of Petitioner's rights, because an IPR petitioner never has a right to institution, let alone a right to the application of any particular set of discretionary criteria regarding institution. *Cf. Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (concluding a rule change "would have impermissible retroactive effect if it would render invalid a notice" of appeal a litigant had a statutory right to file); Pet. 16-17 (discussing *Durr*). The IPR statute contains no such criteria for institution and the USPTO is "never compelled[] to institute an IPR." *Mylan*, 989 F.3d at 1382. Whether IPR is instituted or not, Petitioner's substantive rights and obligations are unchanged. The institution decision neither invalidates the challenged patent claims nor ends a petitioner's duty not to infringe a patent. Petitioner may prefer to challenge patent validity through IPR rather than in parallel district court proceedings, but the institution or non-institution of IPR does not impose any substantive legal consequences on Petitioner's conduct—past, present, or future.

Nor can Petitioner articulate any reasonable reliance interest in the former Director's discretionary guidance. To the extent Petitioner suggests that it altered its litigation strategy in expectation of a potential IPR, Pet. 14-15 & n.2, it does not explain why such considerations would be relevant to a retroactivity analysis, which focuses on the "rights or obligations of the parties," rather than which "tribunal … is to hear the case." *Landgraf*, 511 U.S. at 274 (explaining that rules that "take[] away no substantive right but simply change[] the tribunal that is to hear the case" are not subject to the presumption against retroactivity (quotation marks omitted)).

Moreover, such reliance would be unreasonable given the discretionary nature of IPR institution decisions. The fundamental and mistaken premise driving Petitioner's argument is, absent the Rescission and *Hulu*, it would have been entitled to institution of IPR. *See* Pet. 8 (contending Petitioner has a "clear and indisputable right to IPR under the AIA and APA"). But as explained above, "no petitioner has a right to … institution." *Mylan*, 989 F.3d at 1382.

Equally mistaken is Petitioner's repeated suggestion that it was entitled to rely on one Director's discretionary announcement about discretionary institution decisions because such an announcement was "binding" on the Director herself (and, in Petitioner's view, her successors). *See, e.g.*, Pet. 1, 3, 4, 5, 8, 14. The June 2022 Memo was "binding" on former Director Vidal's subordinates, *i.e.*, the Board; it did not purport to bind Vidal herself or any future Director. *See Apple*, 63 F.4th at 7 ("We have also made clear that any institution decision made by the Board as delegatee of the Director is subject to reversal by the Director."). On the contrary, the memo expressly stated that it was providing "*interim*" guidance, which was to "remain in place *until further notice*." Appx30 (emphasis added). The memo also explicitly provides that the policy embodied therein "applies to all proceedings pending before the Office," Appx30, making Petitioner's professed surprise that new Director guidance regarding institution could apply to pending institution petitions all the more puzzling. And Petitioner nowhere explains its apparent theory that one Director's articulation of

how she intended to exercise discretion could bind her successor's discretion as well.

Thus, Petitioner had no reasonable basis to assume that the June 2022 Memo would remain in place indefinitely or would apply to any IPR petitions it might file. Like guidance from earlier Directors that the June 2022 Memo updated—and like 2025 guidance now in place—the June 2022 Memo was not the subject of any justifiable reliance interests. As ever, the Director remains free to update his guidance to subordinates regarding how to exercise the discretion he has delegated to them in light of new circumstances or policy changes.

## III. Petitioner Cannot Satisfy The Remaining Mandamus Factors.

Even if it could meet the mandamus standard's demanding merits bar, Petitioner could not satisfy the remaining two factors: the absence of "adequate alternative means to obtain the relief" sought and a showing that "the writ is appropriate under the circumstances." *Dominion Dealer Sols.*, 749 F.3d at 1381 (quotation marks omitted); *see also Cheney*, 542 U.S. at 380-81.

### A. Petitioner Has Alternate Means Of Relief.

In a single sentence, Petitioner contends that it has no alternative means of relief because this Court has stated that "there is no avenue for direct appeal of decisions denying institution." Pet. 8 (quoting *Palo Alto*, 44 F.4th at 1379). But the only harm Petitioner claims as a result is the denial of one specific avenue for challenging (already invalidated) patent claims. Petitioner complains that it does not want to challenge those claims in district court, which Petitioner considers "a shallow alternative that results in a more time-consuming, expensive, and disadvantageous proceeding." Pet. 13. Not only does a desire for a particular forum fail to reflect a genuine defect in that alternative, but Petitioner's own conduct demonstrates its adequacy, having successfully prevailed on invalidity under § 101 at the district court. *See* Appx111.

In a hypothetical future case, a petitioner might contend that the USPTO violated the Constitution in the course of denying institution in a way that inflicted some independent harm, *e.g.*, by violating the Equal Protection Clause. But here, Petitioner asserts no such harms and is at base simply seeking a means to invalidate the challenged patent claims under 35 U.S.C. § 103—which it has, through either district court

litigation (should the patent claims' invalidation under § 101 be overturned on appeal) or ex parte reexamination. Although Petitioner may prefer to raise such challenges in an IPR, the fact that the alternate relief available is not a party's preferred type does not make that relief inadequate or support a grant of mandamus. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985); *Bryan v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015) (unpublished).

### B. Mandamus Relief Is Inappropriate Under the Circumstances.

Finally, "even if the first two prerequisites [for mandamus] have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. The circumstances here do not support issuance of the writ to allow Petitioner to potentially establish further defects in already-invalidated patent claims through one specific procedural route. For the reasons discussed above, (1) Petitioner did not develop its due-process argument and, even if it did, any constitutionally protected interest Petitioner could identify is marginal at best; (2) Petitioner had

notice and an opportunity to be heard after the rescission of the former Director's guidance and the designation of the *Hulu* decision as informative; and (3) Petitioner may still pursue its invalidity defenses in the district court litigation (should its § 101 arguments prove unsuccessful on appeal) or file ex parte reexamination requests.

But even beyond Petitioner's inadequate legal showing and multiple routes to continuing to surface challenges to already-invalidated patent claims, Petitioner seeks an inappropriate exercise of this Court's mandamus authority. Openly articulating policy arguments at odds with the decisions of the USPTO's leadership, *see, e.g.*, Pet. 18-20 (discussing Petitioner's view of efficiency and statutory purpose), Petitioner asks this Court to force the current USPTO leadership to adhere to a prior Director's view of how to exercise the broad discretion Congress entrusted to the USPTO Director. That discretion extends not only to IPR institution, but also how best to run the USPTO more generally, including such matters as whether agency resources should be devoted to determining whether patent claims that a district court has already declared invalid suffer from additional deficiencies. Issuing

the writ Petitioner requests would not only inappropriately trench on that statutory discretion, it would raise serious political-accountability concerns, hamstringing the current Director from responding to evolving conditions facing the agency and making his own policy judgments. *See United States v. Arthrex, Inc.*¸ 594 U.S. 1, 21 (2021). Nothing in these circumstances indicates that this is the sort of extraordinary situation that could warrant this Court's issuance of an extraordinary writ.

## CONCLUSION

The Court should deny the petition for a writ of mandamus.

NICHOLAS T. MATICH
  *Acting Solicitor*
ROBERT J. McMANUS
  *Acting Deputy Solicitor*
PETER SAWERT
FAHD PATEL
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and*
    *Trademark Office*

BRAD HINSHELWOOD
*s/ Laura E. Myron*
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, D.C. 20530*
  *(202) 514-4819*

September 30, 2025

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Director's Response to Petition for Writ of Mandamus complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 6,042 words, brief, excluding the table of contents, table of authorities, and signature block, as measured by the word-processing software used to prepare this filing.

Dated: September 30, 2025

s/Laura E. Myron
LAURA E. MYRON
